Daniel Jacobs
CA Bar No. 295494
P.O. Box 5273
Los Angeles, CA 90296
AttorneyJacobs@twc.com
Telephone: (310) 338-7415
Facsimile: (310) 338-2843
*Attorney for Plaintiff Lawrence P. Kalbers*

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LAWRENCE P. KALBERS, | )<br>)<br>) No. 2:18-CV-8439 FMO(PJWx)<br>) |
| Plaintiff, | ) |
| | ) MEMORANDUM IN SUPPORT OF |
| v. | ) MOTION FOR VAUGHN INDEX |
| | )<br>) |
| | ) Hearing: July 11, 2019, at 10:00 A.M. |
| U.S. DEPARTMENT OF JUSTICE, | )<br>) Honorable Fernando Olguin |
| Defendant | ) |

## INTRODUCTION

This is an action under the Freedom of Information Act ("FOIA" or "the Act"), 5 U.S.C. § 552 *et. seq.,* for injunctive relief requiring the U.S. Department of Justice ("Defendant" or "Government") to release records submitted to it by Volkswagen and an independent monitor/auditor arising out of civil and criminal

1

environmental enforcement actions against the company. The records are of considerable public interest.[1]

The FOIA request was submitted on June 20, 2018. One year later, Defendant has yet to release a single record notwithstanding its statutory obligation to "make the records promptly available to any person" upon request, 5 U.S.C. § 552(a)(3)(A), relying on inconsistent statutory bases for its failure to do so.

Plaintiff is Professor Lawrence Kalbers, who holds the Dreier Chair in Accounting Ethics at Loyola Marymount University in Los Angeles, and is the Associate Dean and Chair of the Accounting Department in its College of Business Administration.[2] Professor Kalbers is co-author of an article on Volkswagen's failure to comply with U.S. emissions standards that has been accepted for publication in the *CPA Journal*, and his ongoing research continues to focus on the subject.

The Complaint in this action was filed on October 1, 2018. In the Joint Rule 26(f) Report filed March 21, 2019 (doc. #31), the parties report conflicting positions on the necessity of a Vaughn Index, but the issue has not been briefed and no scheduling order has been issued.[3] To date, the Court has precluded Plaintiff from taking discovery. Minute Order, February 8, 2019 (doc. #21); Minute Order, April 1, 2019 (doc. #34).

---

[1] The *New York Times* has filed a FOIA request seeking the same records as Plaintiff, and, on February 14, 2019, a related FOIA action in the U.S. District Court for the Southern District of New York. The New York Times Company v. United States Department of Justice, No. 1:19-cv-01424 (S.D.N.Y.).

[2] Plaintiff's counsel is also a full-time professor at Loyola Marymount University. In representing Plaintiff in the instant matter, counsel is acting solely in his capacity as a member of the California Bar.

[3] In its contribution to the Joint 26(f) report, Plaintiff requested that Defendant be required to file a Vaughn Index and accompanying declarations by May 1, 2019. Defendant maintained that no Vaughn Index is required.

FACTUAL BACKGROUND

I. The FOIA Request and Defendant's Basis for Withholding

The FOIA request at issue here relates to Volkswagen's decade-long conspiracy to evade U.S. emissions standards and cover up its crimes, widely known as "Dieselgate." See Parloff, "How Volkswagen Paid $25 Billion for Dieselgate -- and Got Off Easy," Fortune, February 6, 2018. The narrowly-tailored request seeks: 1) the factual evidence relating to Dieselgate that was voluntarily submitted by Volkswagen to the Justice Department; (2) the reports submitted to the Justice Department by a monitor appointed under the terms of a criminal plea agreement; and 3) the reports submitted to the Justice Department by an independent compliance auditor appointed under the terms of the third partial consent decree in a civil enforcement action.[4] The request does not seek any of the Justice Department's own investigatory records.[5]

The FOIA Request was belatedly denied by the Justice Department on July 30, 2018, and the administrative appeal was belatedly denied by the Justice

---

[4] The verbatim request seeks:

(1) A copy of all reports submitted to the Justice Department by the Monitor under the Plea Agreement in *United States v. Volkswagen*, No. 16-CR-20394 (E.D. Mich.) and the Independent Compliance Auditor under *In Re Volkswagen "Clean Diesel,"* No. MDL 2672 (N.D. Cal.); and

(2) A copy of all "factual evidence" presented by Jones Day to the Justice Department as the term in used on p. 295 of Volkswagen's 2017 Annual Report.

[5] In its contribution to the Rule 26(f) Report, Defendant contends that it initially misconstrued Plaintiff's request narrowly only "to encompass records directly associated with a limited number of oral presentations Jones Day made on behalf of VW…" If Defendant's purported confusion continues, it runs seriously afoul of Yagman v. Pompeo, 868 F.3d 1075 (9th Cir. 2017) (FOIA requests are to be liberally construed) and Justice Department's own longstanding guidance to federal agencies on the duty of liberal construction. An agency has no right to resist a request without first making a good faith effort to assist the requester in clarifying any ambiguity, an agency cannot deny a request on the grounds on ambiguity simply because of its size, and the remedy for any alleged failure to reasonably describe the records is to be addressed in a Rule 12(b)(6) motion. Yagman, 868 F.3d at 1079-83.

3

Department on September 27, 2018.[6] The denials relating to the Volkwagen evidence and monitor's reports in the criminal case were predicated on the asserted application of Exemption 7(A) of FOIA, which excuses the Government from producing law enforcement records the release of which would interfere with law enforcement proceedings. 5 U.S.C. § 552(b)(7)(A).[7] No exemption was asserted, but no records produced under FOIA, with respect to the compliance auditor's reports in the civil case.

In its Answer filed November 20, 2018, Defendant asserted no exemptions whatsoever, and in a November 28, 2018 Rule 26(f) Conference of the Parties, agreed to produce a <u>Vaughn</u> Index. In its contribution to the Joint Rule 26(f) Report, however, Defendant asserted Exemptions 3, 4, 5, 6, 7(A), and 7(C), and maintained that it did not need to produce a <u>Vaughn</u> Index. Most recently, Defendant advised Plaintiff that Defendant is relying on Exemption 7(A) to withhold in its entirely each and every record, and that most, but not all, of the records fall under an additional exemption as well.

II. <u>Dieselgate and the Records at Issue</u>

Volkswagen's fake "clean diesel" vehicles produced 15-35 times the legal nitrogen oxide (NOx) emissions limit when tested in Southern California, <u>See</u> West Virginia University, Final Report, In-Use Emissions Testing of Light Duty Vehicles in the United States, May 15, 2014, Figure 4.4.

---

[6] Under FOIA, an agency has twenty business days in which to respond to an initial request and an administrative appeal of an initial denial. 5 U.S.C. § 552(b)(6)(A)(i) and (ii). The Justice Department missed both deadlines without explanation.

[7] Exemption 7(A) provides for the withholding of "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information…could be reasonably expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A).

4

  The crimes were not victimless. According to the U.S. Environmental Protection Agency ("EPA") Environmental Justice web page, approximately 2,000 premature deaths are associated with diesel emissions in the South Coast Air Basin (home to the worst air pollution in the country). https://www.epa.gov/environmentaljustice/los-angeles-area-environmental-enforcement-collaborative. At potentially highest risk are the residents living in the 15 cities and unincorporated areas along the I-710 corridor, inhabited by approximately 70% minority and low-income populations. Id. See also, Marshall, et al., "Prioritizing Environmental Justice and Equality: Diesel Emissions in Southern California.' 48 *Environ. Sci. Tech.* 4064 (2014).

  Although there are no publicly available studies of the direct effect of Volkswagens' diesel emissions on Southern California residents, published research spearheaded by MIT scientists predicts that the excess particulate matter (PM or soot) and NOx emissions produced by Volkswagen's fake clean diesel vehicles will lead to some 60 premature deaths in the United States. Barrett, et al. "Impact of the Volkswagen emissions control defeat device on US public health," *Environ. Res. Lett.* 10 (2015). Given that 14% of the vehicles were sold in California, https://ww2.arb.ca.gov/our-work/topics/vw-diesel-vehicles, and the state's pre-existing dangerous air pollution, it is reasonable to conclude its residents will account for at least that percentage of the projected premature deaths.

  The Justice Department's criminal and civil actions against Volkswagen both settled before trial. In the criminal case, Volkswagen agreed to plead guilty to Conspiracy to Defraud the United States, to Commit Wire Fraud, and to Violate the Clean Air Act; Obstruction of Justice; and Entry of Goods by False Statement. United States v. Volkswagen AG, No. 16-CR-20394-08 (E.D. Mich.), Plea

5

Agreement, March 10, 2018 (Doc. #68). The Court entered Judgment on April 21, 2017, noting that the company's offenses ended in September 2015. <u>United States v. Volkswagen AG</u>, No. 16-CR-20394-08 (E.D. Mich.), Judgment in a Criminal Case (Doc. #82). In the civil case, three partial consent decrees were filed, the last of which was entered on April 13, 2017. <u>United States v. Volkswagen AG et al.</u>, Case No. 26-cv-295 (N.D. Cal.), Third Partial Consent Decree (Doc. #3155). Under the terms of both the criminal and civil settlements, former Deputy Attorney General Larry Thompson was selected to monitor Volkswagen's compliance going forward.

Because neither case went to trial, much of the underlying evidence of the offenses has yet to become available to the public. This includes a large volume of records voluntarily submitted to the Justice Department by Volkswagen's counsel, Jones Day, which conducted an internal investigation of the scandal on Volkswagen's behalf after the U.S. Environmental Protection Agency (EPA) issued a Notice of Violation to the company on September 18, 2015. The Justice Department considered the production of this information part of the cooperation that enabled the company to receive a discount of approximately $3.4 billion on its criminal sentence, yielding a much-reduced fine of $2.8 billion. <u>United States v. Volkswagen AG</u>, No. 16-CR-20394-08 (E.D. Mich.), Plea Agreement (Doc. #68).

The "cooperating information" is described in part in the Plea Agreement between Volkswagen and the Justice Department as follows:

> [T]he Defendant cooperated with the Offices' investigation by, among other things, (i) gathering substantial amounts of evidence and performing forensic data collections in multiple jurisdictions; (ii) producing documents, including translations, to the Offices in ways that did not implicate foreign

6

data privacy laws' (iii) collecting, analyzing, organizing, and producing voluminous evidence and information; (iv) interviewing hundreds of witnesses in the United States and overseas; (v) providing non-privileged facts relating to individuals and companies involved in the criminal conduct; and (vi) facilitating and encouraging cooperation and voluntary disclosure of information and documents by current and former company personnel.

Id. § 3(A) (2).

The records encompassed by the "cooperating information" and Mr. Thompson's reports are at the heart of this case.

III. Necessity of Vaughn Index

FOIA "was enacted to facilitate public access to [g]overnment documents" and "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." Dept. of State v. Ray, 502 U.S. 164, 173 (1991) (citations and internal quotation marks omitted). The Government bears a heavy burden under FOIA to justify withholding records, as the Ninth Circuit recently stressed in an *en banc* decision: "Disclosure, not secrecy, is the dominant objective of FOIA….We construe narrowly FOIA's nine exemptions." Animal Legal Defense Fund v. FDA, 836 F.3d 987, 1107 (9th Cir. 2016) (*en banc*) [citation omitted].

Having asserted no exemptions whatsoever in its Answer, Defendant remarkably asserted six in its contribution to the Joint 26(f) Report. Yet, flouting 45 years of authority, including Wiener v. FBI, 943 F. 2d 972 (9th Cir 1991), cert denied, 505 U.S. 1212 (1992), a seminal Ninth Circuit FOIA case directly on point,

Defendant asserts that it need not produce the required Vaughn Index to justify any of its withholdings.[8]

In Wiener, which has remarkable parallels to the instant case, a UC Irvine history professor who had published a book on John Lennon, fought a two decade-long and ultimately successful legal battle to obtain FBI records about the musician. The Ninth Circuit noted the inherent litigative disadvantage suffered by FOIA plaintiffs because, unlike in others civil cases, "only the party opposing disclosure will have access to all the facts." 943 F.2d at 977. Id., citing Vaughn v. Rosen, 484 F.2d 820, 824 (D.C. Cir 1973) ("[t]his lack of knowledge by the party seeking disclosure seriously distorts the traditional adversary nature of our legal system."). As a result:

> The party requesting disclosure must rely upon his adversary's representations as to the material withheld, and the court is deprived of the benefit of informed advocacy to draw its attention to the weaknesses in the withholding agency's arguments. It is simply "unreasonable to expect a trial judge to do as thorough a job of illumination and characterization as would a party interested in the case."

Id., citing Vaughn v. Rosen, 484 F.2d at 824.

In Wiener, the Government asserted Exemptions 3 and 7(c) among others, two of the very same exemptions the Government asserts in the instant case. The Court held that courts require a Vaughn Index to help correct the imbalance and

---

[8] In its contribution to the Joint Rule 26(f) Report filed March 21, 2019 (doc. 31), Defendant states: "Defendant also maintain that no Vaughn Index is required to review an Exemption 7(A) determination in this case. In addition, Defendant maintains that the Court can also review Defendant's reliance on other FOIA exemptions on a categorical basis."

provide at least a modicum of information for purposes of an initial argument by plaintiff and review by the court:

> In recognition of this problem, government agencies seeking to withhold documents requested under FOIA have been required to supply the opposing party and the court with a "Vaughn Index," identifying each document withheld, the statutory exemption claimed, and a particularized explanation of how disclosure of the particular document would damage the interest protected by the claimed exemption. The purpose of the index is to "afford the FOIA requester a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding." The index thus functions to restore the adversary process to some extent, and to permit more effective judicial review of the agency's decision.

Id. at 977-78 [citations omitted].

The Government takes the position that no Vaughn Index is required when Exemption 7(A) is asserted, but the weight of authority in the Ninth Circuit is otherwise. In Lion Raisins, Inc. v. USDA, 354 F.3d 1072 (9th Cir. 2004), a case involving 7(A), the Court cited Wiener in holding that:

> Ordinarily, the government must submit detailed public affidavits identifying the documents withheld, the FOIA exemptions claimed, and a particularized explanation of why each document falls within the claimed exemption [citation omitted]. This submission is commonly referred to as a "Vaughn index."

354 F.3d at 1082.

The Lion Raisons holding is particularly significant in the instant case because there, as here, the Government sought, *inter alia*, to withhold on Exemption 7(A) grounds records that had originated from the target of the investigation itself. The Ninth Circuit rejected the assertion of Exemption 7(A) and summarily ordered (i..e, without remand or further opportunity for the defendant to justify withholding) those records produced forthwith. Id. at 1085.[9]

Notably, Defendant's own "Justice Department Guide to the Freedom of Information Act" relies on Lion Raisons to opine that "Exemption 7(A) ordinarily will not afford protection when the target of the investigation has possession of or has submitted the information in question." U.S. Department of Justice, "Justice Department Guide to the Freedom of Information Act," p. 549. https://www.justice.gov/sites/default/files/oip/legacy/2014/07/23/exemption-7A-2009.pdf

The Court in Lion Raisons also ordered a full Vaughn Index with respect to other records sought – investigatory reports prepared by USDA agencies also withheld on Exemption 7(a) grounds:

> [T]he USDA need only explain, publicly and in detail, how releasing each of the withheld documents would interfere with the government's ongoing criminal investigation. The submission must provide as much factual support for USDA's position as possible without jeopardizing the government's legitimate law enforcement interest in withholding the documents, and it

---

[9] "Because Lion already has copies of the documents it seeks from USDA, USDA cannot argue that revealing the information would allow Lion premature access to the evidence upon which it intends to rely at trial. See Dow Jones Co. v. FERC, 219 F.R.D. 167, 173-74 (C.D. Cal. 2003)." Id.

10

must be "detailed enough for the district court to make a de novo assessment of the government's claim of exemption." Id. at 1084 [citations omitted]. Compare Shannahan v. IRS, 672 F.3d 1142 (9th Cir. 2012) (noting district court had required a Vaughn Index of representative documents) with Lewis v. IRS, 823 F.2d 375 (9th Cir. 1987) ( upholding district court's denial of a Vaughn Index where taxpayers' counsel sought to use FOIA as an illegitimate means of obtaining premature discovery of the exact nature of the government's case against him).[10]

Here, the circumstances for a Vaughn Index are particularly compelling. Defendant's case on the merits for withholding all of the records at issue is profoundly weak on its face, relying primarily as it does on Exemption 7(A), the use of which has been rejected in a similar Ninth Circuit case directly on point. Defendant has played cat and mouse with the exemptions, asserting only Exemption 7(A) at the administrative level, no exemptions in its Answer, and then six exemptions in the 26(f) Report. See, Senate of Puerto Rico v. U.S. Department of Justice, 823 F.2d 574, 580 (D.C. Cir. 1987) (Ginsburg, J.) ("[F]airness to parties seeking disclosure ordinarily requires that they be accorded a full and concentrated opportunity to challenge and test comprehensively the agency's evidence regarding all claimed exemptions. We will not allow an agency 'to play cat and mouse.'") (citations omitted).

Thus far, Plaintiff has not been able to challenge and test the agency's evidence regarding the claimed exemptions through discovery. Thus, there is every

---

[10] Note that Lewis preceded Wiener and all of these cases preceded the *de novo* summary judgment standard of review enunciated in Animal Legal Defense Fund v. FDA, 836 F.3d 987, 1107 (9th Cir. 2016) (*en banc*).

reason that the Government should be ordered to promptly file on the record a complete Vaughn Index. Given the facial overreach of the Government both with respect to the number of exemptions asserted and the universe of withheld documents (all), it simply cannot be given the benefit of the doubt that anything less will enable the district court to fulfill its responsibilities under Wiener and Lion Raisins.

### IV. Necessity of Review and Release of Nonexempt Information

The Government is mandated by law to review each responsive record and release any part of it that is non-exempt. Under a longstanding provision of FOIA in effect at the time of the Wiener decision, "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b). The court in Weiner held that the district court "must make a specific finding that no information contained in each document or substantial portion of a document withheld is segregable". Wiener, 943 F.2d at 988

Moreover, the FOIA Improvement Act of 2016 includes provisions designed to limit the overzealous use of exemptions to withhold information. Thus, even if an exemption arguably may apply, it may now be asserted only if the agency reasonably foresees that disclosure would harm a protected interest. U.S.C. § 552(a)(8)(A)(i) [emphasis added]. The Government is also mandated to specifically "consider whether partial disclosure of information is possible…and to take reasonable steps to segregate and release nonexempt information in partial disclosures." U.S.C. § 552(a)(8)(A)(ii). By extension of Wiener, then, the district court must make a specific finding as to whether the Government has in good faith complied with the partial disclosure review and foreseeable harm standards.

Here, the Government has implausibly stated that the release of each and very document is barred by Exemption 7(A) and that there is no segregable material whatsoever. Even assuming Exemption 7(A) (or another exemption) could apply to records provided by a target of an investigation, it strains the imagination to suggest that it applies to all documents and that there is simply no segregable information in any of them. The recently-released report of Special Counsel Robert Mueller, III, provides an instructive comparison. There, "harm to ongoing matter," the equivalent of Exemption 7(A), was used to sparingly redact limited portions of a report containing highly sensitive information being used in ongoing proceedings. See "Report On The Investigation Into Russian Interference In The 2106 Presidential Election," March 2019. Certainly, 100% of the Volkswagen records need not be withheld if only 1% of the Mueller report needs to be withheld. Unfortunately, the Government's lack of candor in FOIA cases, including in this district, provide further reason to be skeptical. See Islamic Shura Council of Southern California v. FBI, 779 F. Supp. 2d 1114 (C.D. Cal. 2011) ("Contrary to the Government's suggestion, Subsections (a), (b), and (c) [of 5 U.S.C. § 552(b)] do not grant the Government license to lie to the Court.").

As a starting point for Plaintiff and the Court to evaluate the Government's astounding claims, Defendant should be required to promptly attest under oath that it has reviewed all of the documents and has complied with all of the specific requirements of FOIA, as amended by the FOIA Improvement Act, with respect to partial releases and segregability.

## CONCLUSION

One year following a FOIA request of considerable public interest, the Government continues to stonewall, most recently by declining to provide a Vaughn Index and otherwise comply with the requirements of FOIA. Plaintiff respectfully requests that Defendant be required to promptly file a complete Vaughn Index that complies with the letter and spirt of binding Ninth Circuit law, as well as all provisions of FOIA, as amended by the FOIA Improvement Act of 2016 -- amendments that ostensibly were intended to prevent just the type of conduct in which the Government is engaging in this case.

Dated: June 11, 2019                    Respectfully submitted,

/s/
Daniel Jacobs
CA Bar No. 295494
P.O. Box 5273
Los Angeles, CA 90296
AttorneyJacobs@twc.com
Telephone: (310) 338-7415
Facsimile: (310) 338-2843
*Attorney for Plaintiff Lawrence P. Kalbers*