**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LAWRENCE P. KALBERS,<br><br>    Plaintiff,<br><br>  v.<br><br>U.S. DEPARTMENT OF JUSTICE,<br><br>    Defendant. | Case No. CV 18-8439 FMO (PJWx)<br><br>**ORDER RE: PENDING MOTIONS** |

  Plaintiff Lawrence Kalbers ("plaintiff"), a professor at Loyola Marymount University in Los Angeles, California, filed the instant action against the Department of Justice ("DOJ"), seeking the release of certain records pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. 552, et seq. (See Dkt. 1, Complaint at ¶ 1). In July 2019, plaintiff co-authored an article regarding civil and criminal actions brought by the DOJ against car maker Volkswagen AG ("VW") for its conspiracy to evade U.S. emissions standards. See "The Volkswagen Diesel Emissions Scandal and Accountability," The CPA Journal, Vol. 89, No. 7 (2019). Although plaintiff submitted the FOIA request at issue in this case with the intent of including the requested information in his article, his research remains ongoing, and his request for records stands. (See Dkt. 71-9, Exh. 8, Email Correspondence Between Jacobs and ENRD Paralegal Rachel Counts ("Jacobs/Counts Email Correspondence") at 176).

  Having reviewed and considered all the briefing filed with respect to proposed intervenor VW's Motion to Intervene (Dkt. 47, "Motion to Intervene"), the DOJ's Motion for Summary Judgment (Dkt. 69, "MSJ"), and plaintiff's Motion to Strike and for Sanctions (Dkt. 72, "Motion to

Strike"), the court concludes that oral argument is not necessary to resolve the motions. See Fed. R. Civ. P. 78(b); Local Rule 7-15; Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 684 n. 2 (9th Cir. 2001).

## STATEMENT OF FACTS

I. THE DOJ'S ACTIONS AGAINST VW.

    A.    Civil Action.

The United States filed a civil action against VW in the Eastern District of Michigan on January 4, 2016, alleging that VW, in violation of the Clean Air Act, 42 U.S.C. §§ 7523, et seq., equipped certain vehicles with software to detect when the vehicle was being tested for compliance with EPA emissions standards and to turn on full emissions controls only during that testing process. See United States v. Volkswagen AG, CV 16-10006 LJM (SDDx), Dkt. 1, Complaint (E.D. Mich. 2016). The action was subsequently transferred to the Northern District of California, see id. at Dkt. 12, Notice of Transfer, where it was resolved through three consent decrees. In re: Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation, MDL No. 2672 (N.D. Cal. 2015); (see Dkt. 71-1, Declaration of Stacy R. Stoller ("Stoller Decl.") at ¶ 6). The third consent decree ("Consent Decree"), announced by the DOJ on January 11, 2017, required VW to retain an Independent Compliance Auditor ("Auditor") to oversee implementation of their obligations under the Consent Decree. (See id.); (Dkt. 71-3, Exh. 2, Consent Decree). The Consent Decree set deadlines for the Auditor to submit reports regarding VW's remedial measures during the term of the Consent Decree. (See Dkt. 71-1, Stoller Decl. at ¶ 19); (Dkt. 71-3, Exh. 2, Consent Decree ¶ 28.c)). The Auditor's reports are available to the public at www.VWCourtSettlement.com. (See Dkt. 71-15, Declaration of Michael A. Sullivan ("Sullivan Decl.") at ¶ 5); (Dkt. 71-1, Stoller Decl. at ¶ 19).

    B.    Criminal Action.

On January 11, 2017, VW was charged in the Eastern District of Michigan with: (1) conspiracy to defraud the United States, in violation of 18 U.S.C. § 371; (2) obstruction of justice, in violation of 18 U.S.C. § 1512; and (3) entry of goods by false statement, in violation of 18 U.S.C. § 542. See United States v. Liang, Case No. 16-20394 SFC (APPx), Dkt. 32, Third Superseding Information at ¶¶ 16-27 (E.D. Mich. 2016). In the same action, a federal grand jury returned

indictments charging eight individuals for their roles in the conspiracy.[1] (See Dkt. 71-1, Stoller Decl. at ¶¶ 11-12). Two of these individuals pled guilty, (see Liang, Case No. 16-20394 SFC (APPx) at Dkts. 24 and 97), and charges remain pending as to the other six. (See, generally, id.).

On March 10, 2017, VW pled guilty to three felony counts, including one count of conspiracy to defraud the United States. (See Dkt. 71-4, Exh. 3, Plea Agreement). Under the terms of the plea agreement between VW and the government, VW agreed to: (1) pay a $2.8 billion criminal penalty; (2) retain an independent compliance monitor ("Monitor") to oversee the company for three years; and (3) fully cooperate in the ongoing investigation and prosecution of individuals responsible for the same or related crimes. (See Dkt. 71-1, Stoller Decl. at ¶ 8). The Monitor's term was set to expire on June 15, 2020, but on October 17, 2019, VW announced that it voluntarily requested a 90-day extension of the Monitor's term. (See Dkt. 71-14, Declaration of Jennifer Leigh Blackwell at ¶ 27). Accordingly, the Monitor's term expired on September 13, 2020. (See id.).

II.   PLAINTIFF'S FOIA REQUEST.

On June 20, 2018, plaintiff and his counsel, Daniel Jacobs ("Jacobs"), sent the Environment and Natural Resources Division ("ENRD") of the DOJ a request seeking records under FOIA ("Request"). (See Dkt. 71-1, Stoller Decl. at ¶ 15); (Dkt. 71-8, Exh. 7, Request). The Request seeks copies of: (1) "all reports submitted to the [DOJ] by the Monitor under the Plea Agreement in *United States v. Volkswagen,* No. 16-CR-20394 (E.D. Mich.) and the [ ] Auditor under *In re Volkswagen 'Clean Diesel,'* No. MDL 2672 (N.D. Cal.)"; and (2) "all 'factual evidence' presented by Jones Day to the [DOJ] as the term i[s] used on p. 295 of [VW's] 2017 Annual Report." (Id.).

On July 30, 2018, ENRD responded to plaintiff's Request. (See Dkt. 71-1, Stoller Decl. at ¶ 17); (Dkt. 71-10, Exh. 9, July 30, 2018, Letter from Karen Wardzinski to Jacobs ("Wardzinski Letter")). According to ENRD, all responsive records in its possession were exempt from

---

[1] In separate actions in the same District, four other individuals were indicted on related conspiracy charges, (see United States v. Bauder, Case No. 19 CR-20033 SFC (APPx), Dkt. 1 (E.D. Mich. 2019)), and a fifth was charged via criminal complaint. See United States v. Pamio, Case No. MJ 17-30330, Dkt. 1 (E.D. Mich. 2017).

disclosure, (see id.), pursuant to Exemption 7(A) of FOIA.[2] (See Dkt. 71-1, Stoller Decl. at ¶ 18); (Dkt. 71-10, Exh. 9, Wardzinski Letter); 5 U.S.C. § 552(b)(7)(A). On August 17, 2018, plaintiff filed an administrative appeal with the Office of Information Privacy ("OIP"), (see Dkt. 71-12, Exh. 11, February 12, 2019, Email from Jacobs to Melanie Pustay at 190), which affirmed ENRD's decision to deny plaintiff's Request. (See Dkt. 71-13, Exh. 12, September 27, 2018, Letter from Christina Troiani to Jacobs at 192).

## **LEGAL STANDARD**

Rule 56(a) of the Federal Rules of Civil Procedure authorizes the granting of summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The standard for granting a motion for summary judgment is essentially the same as for granting a directed verdict. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511 (1986). Judgment must be entered "if, under the governing law, there can be but one reasonable conclusion as to the verdict." Id.

The moving party has the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each cause of action upon which the moving party seeks judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986). If the moving party fails to carry its initial burden of production, "the nonmoving party has no obligation to produce anything." Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1102-03 (9th Cir. 2000). However, "[w]here the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010); see Celotex, 477 U.S. at 325, 106 S.Ct. at 2554 (clarifying that "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case.").

---

[2] ENRD, however, did provide plaintiff with a copy of the publically-available Consent Decree and explained that the schedule set by the Consent Decree required VW to "publically post the annual reports, once finalized, on the website www.VWCourtSettlement.com." (Dkt. 71-1, Stoller Decl. at ¶ 19).

If the moving party has sustained its burden, the burden then shifts to the nonmovant to identify specific facts, drawn from materials in the file, that demonstrate that there is a dispute as to material facts on the elements that the moving party has contested. Celotex, 477 U.S. at 324, 106 S.Ct. at 2553; Anderson, 477 U.S. at 256, 106 S.Ct. at 2514 (A party opposing a properly supported motion for summary judgment "must set forth specific facts showing that there is a genuine issue for trial.").[3] A factual dispute is material only if it affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth. SEC v. Seaboard Corp., 677 F.2d 1301, 1305-06 (9th Cir. 1982). Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322, 106 S.Ct. at 2552; see also Anderson, 477 U.S. at 252, 106 S.Ct. at 2512 (parties bear the same substantive burden of proof as would apply at a trial on the merits).

In determining whether a triable issue of material fact exists, the evidence must be considered in the light most favorable to the nonmoving party. Barlow v. Ground, 943 F.2d 1132, 1134 (9th Cir. 1991), cert. denied, 505 U.S. 1206, 112 S.Ct. 2995 (1992). However, summary judgment cannot be avoided by relying solely on "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888, 110 S.Ct. 3177, 3188 (1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986) (more than a "metaphysical doubt" is required to establish a genuine issue of material fact). "The mere existence of a scintilla of evidence in support of the plaintiff's position" is insufficient to survive summary judgment; "there must be evidence on which the [fact finder] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252, 106 S.Ct. at 2512. Moreover, it is not the court's task "to scour the record in search of a genuine issue of triable fact." Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996) (internal quotation marks omitted). Rather, the nonmoving party must

---

[3] "In determining any motion for summary judgment, the Court will assume that the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the 'Statement of Genuine Issues' and (b) controverted by declaration or other written evidence filed in opposition to the motion." Local Rule 56-3.

"identify with reasonable particularity the evidence that precludes summary judgment." Id. (internal quotation marks omitted).

**DISCUSSION**

I. MOTION TO INTERVENE.

    A.    <u>Intervention as of Right</u>.

Under Rule 24(a)[4] of the Federal Rules of Civil Procedure, a court must permit any party to intervene in a lawsuit who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). The rule is broadly construed in favor of intervention. See <u>Cabazon Band of Mission Indians v. Wilson</u>, 124 F.3d 1050, 1061 (9th Cir. 1997). The Ninth Circuit employs four criteria to determine whether intervention under Rule 24(a) is appropriate: (1) the motion to intervene must be timely; (2) the applicant must have a significantly protectable interest related to the property or transaction that is the subject of the action; (3) the applicant must be situated such that the disposition of the action may impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest must not be inadequately represented by the existing parties. See <u>Arakaki v. Cayetano</u>, 324 F.3d 1078, 1083 (9th Cir. 2003). The burden falls on VW to show that all of the requirements for intervention have been met. See <u>United States v. Alisal Water Corp.</u>, 370 F.3d 915, 919 (9th Cir. 2004).

Here, plaintiff argues that VW's Motion to Intervene is untimely. (See Dkt. 64, Plaintiff's Memorandum in Opposition to [] Motion to Intervene at 10). "Timeliness is determined by the totality of the circumstances facing would-be intervenors, with a focus on three primary factors: (1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to the other parties; and (3) the reason for and length of delay." <u>Smith v. L.A. Unified Sch. Dist.</u>, 830 F.3d 843, 854 (9th Cir. 2016) (internal quotation marks omitted). "Timeliness is a flexible concept; its determination is left to the district court's discretion." <u>Alisal Water Corp.</u>, 370 F.3d at 921.

---

[4] All further "Rule" references are to the Federal Rules of Civil Procedure unless otherwise indicated.

6

The court, having considered all the circumstances, finds that VW failed to carry its burden of demonstrating that it timely filed its Motion to Intervene. See Smith, 830 F.3d at 853 ("[T]he [prospective intervenor] bears the burden of establishing the[ ] elements" for intervention, including that "the prospective intervenor's motion is 'timely[.]'"). First, under "[t]he 'stage of the proceedings' factor[, the court] focuses on what had already occurred by the time [VW] sought intervention." Chevron Environmental Management Co. v. Environmental Protection Corp., 335 F.R.D. 316, 322 (E.D. Cal. 2020) (internal quotation marks omitted). VW argues that "this case had not significantly progressed" by the time it filed its Motion to Intervene because: (1) the court granted "a stay due to lack of government appropriations (from December 2018 to January 2019)"; (2) there were "two preliminary discovery disputes"; and (3) the parties were required to attend "a mandatory settlement conference, which occurred in July 2019[.]" (Dkt. 65, Reply in Support of Motion to Intervene ("Motion to Intervene Reply") at 5).

Here, the stay was only for one month and thus short in duration. (See Dkt. 19, Court's Order of December 28, 2018). Further, there were no "preliminary discovery disputes" in this action because this case, like most FOIA actions, will be decided on summary judgment before plaintiff can conduct discovery. See Lawyers' Committee for Civil Rights of San Francisco Bay Area v. U.S. Dept. of the Treasury, 534 F.Supp.2d 1126, 1131 (N.D. Cal. 2008). Before VW filed its Motion to Intervene, the court granted in part and denied in part plaintiff's motion for a Vaughn index. (See Dkt. 46, Court's Order of September 16, 2019). The court's ruling directly addressed the merits of this action as the court's ruling on plaintiff's Motion for a Vaughn index provided the structure for the DOJ's compliance with its FOIA obligations. Finally, that the parties participated in settlement proceedings demonstrates that the case had "significantly progressed" by the time VW filed its Motion to Intervene. In other words, the fact that the parties "substantively - and substantially - engaged the issues in this case weighs heavily against allowing intervention as of right under Rule 24(a)(2)." League of United Latin American Citizens v. Wilson, 131 F.3d 1297, 1303 (9th Cir. 1997); see, e.g., Kukui Gardens Corp. v. Holco Capital Group, Inc., 261 F.R.D. 523, 529 (D. Haw. 2009) (affirming magistrate judge's denial of third party's motion to intervene where

1  third party waited one year to file its motion and the defendant had already filed an answer and
2  the parties had attended a scheduling conference and litigated a motion to dismiss).

3  Second, the main concern in evaluating prejudice is whether "relief from long-standing
4  inequities [will be] delayed." Alisal Water Corp., 370 F.3d at 922 (internal citation omitted); Lubocki
5  v. ZipRealty, Inc., 2009 WL 10670958, *5 (C.D. Cal. 2009). VW claims that its intervention would
6  not result in any prejudicial delay because it could file its motion for summary judgment within
7  three weeks of the granting of its Motion to Intervene. (See Dkt. 65, Motion to Intervene Reply at
8  8). VW's reassurance, however, "can[not] be dispositive of the timeliness issue[,]" Wilson, 131
9  F.3d at 1304, because, as a general rule, intervenors are permitted to litigate fully once admitted
10 to a suit. See Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, 7C Federal Practice and
11 Procedure § 1920 at 611 (3d ed. 2007) ("[T]he intervenor is entitled to litigate fully on the merits
12 once intervention has been granted."). VW's intervention will raise complicating issues beyond
13 those raised in this relatively straightforward FOIA action. Consequently, even if VW were to file
14 a motion for summary judgment within three weeks of the court allowing it to intervene, as it has
15 promised, and limit its motions to future issues, VW's intervention would raise additional
16 complicating issues and result in a second motion for summary judgment, which would inevitably
17 and unduly delay this action further by requiring a new briefing schedule and time for the court –
18 in the midst of a pandemic and significant judicial shortage – to consider the motion. "[I]n a case
19 like this one, in which [VW] waited [nearly a year] before seeking to interject itself into the case,
20 only to move the court for full-party participation[,]" "the additional delay caused by [VW's]
21 presence is indeed relevant to the timeliness calculus, and counsels against granting [VW's]
22 motion." Wilson, 131 F.3d at 1304. In short, there is no doubt that VW's admission as a party will
23 have the inevitable effect of unduly prolonging the litigation. See id.

24 Third, "[a] party seeking to intervene must act as soon as he knows or has reason to know
25 that his interests might be adversely affected by the outcome of the litigation." Cal. Dep't of Toxic
26 Substances Control v. Commercial Realty Projects, Inc., 309 F.3d 1113, 1120 (9th Cir. 2002)
27 (internal quotation marks omitted). "An applicant's desire to save costs by waiting to intervene
28 until a late stage in litigation is not a valid justification for delay. To hold otherwise would

encourage interested parties to impede litigation by waiting to intervene until the final stages of a case." Alisal Water Corp., 370 F.3d at 923-24.

As an initial matter, VW provides no sound reason for the delay in its moving papers, when it was incumbent upon it to satisfy its burden to demonstrate that intervention under Rule 24(a) was warranted. (See, generally, Dkt. 47-1, Memorandum of Law in Support of VW's Motion to Intervene ("Motion to Intervene Memo.") at 14-15). In any event, according to VW, the delay here was very short because it received "forma[]l notice[]" of the action on September 4, 2019, (see Dkt. 47-1, Motion to Intervene Memo. at 15), and the Motion to Intervene was filed on September 27, 2019. To support this contention, VW filed a declaration from its counsel, Laura Kabler Oswell ("Oswell") of Sullivan & Cromwell LLP, who attested to the authenticity of the September 4, 2019, "formal notice." (See Dkt. 48, Declaration of Laura Kabler Oswell at ¶ 2); (Dkt. 48-1, September 4, 2019, Letter from Jennifer Blackwell to Jason Weinstein).

"When the applicant appears to have been aware of the litigation but has delayed unduly seeking to intervene, courts generally have been reluctant to allow intervention." Wright, Miller & Kane, 7C Federal Practice and Procedure § 1916, at 539-40 (3d ed. 2007). Here, it is undisputed that VW became aware of this litigation a mere 16 days after it was filed on October 1, 2018. On October 2, 2019, shortly after VW filed its Motion to Intervene, and before plaintiff filed his Opposition, plaintiff's counsel requested additional information from the DOJ regarding any communications the DOJ had with VW regarding this action. (See Dkt. 64-1, Exh. A, October 2, 2019, Letter from Daniel Jacobs to Karen Wardzinski). Six days later, the DOJ responded, stating that "ENRD first provided written notice of this lawsuit to VW on September 4, 2019[.] Prior to that, ENRD counsel provided informal notice of the litigation to VW's criminal counsel via a telephone call, on or about August 2, 2019." (Dkt. 64-2, Exh. B, October 8, 2019, Letter from Alarice Medrano to Daniel Jacobs).

On October 16, 2019 – after plaintiff had filed his Opposition – the DOJ sent plaintiff another letter, claiming that it had "conduct[ed] a more thorough search[,]" which revealed two additional communications between the DOJ and VW: (1) an August 22, 2018, email from a DOJ attorney to VW's counsel, notifying VW of plaintiff's FOIA request and the DOJ's response; and

(2) an October 17, 2018, email from a DOJ attorney to VW's counsel, attaching plaintiff's Complaint and stating, "[w]e received a FOIA request . . . over the summer. The requestor has now sued." (Dkt. 67-2, October 16, 2019, Letter from Alarice Medrano to Daniel Jacobs at ECF 663; Dkt. 67-4, October 17, 2018, Email). In other words, the record is undisputed that VW was aware of plaintiff's FOIA Request on August 22, 2018, even before the lawsuit was filed, and aware of this lawsuit on October 17, 2018, a mere 16 days after it was filed. (See id.).

Ms. Oswell's statement that VW received "formal" notice of the lawsuit on September 4, 2019, is a red-herring that not only strains credulity, but is disingenuous as well. Sullivan & Cromwell provides no authority for the proposition that the timeliness factor under Rule 24(a) requires that some sort of "formal" notice be provided before a party's obligation to seek intervention is triggered. (See, generally, Dkt. 47-1, Motion to Intervene Memo.); (Dkt. 65, Motion to Intervene Reply). Further, the court is unpersuaded by VW's argument that its delay in filing its Motion to Intervene was because, "[b]efore September [2019], it was not clear that this case would proceed on the merits or that DOJ would permit any disclosure of the requested information." (Dkt. 65, Motion to Intervene Reply at 5). Plaintiff filed a federal lawsuit seeking to enforce his rights under FOIA. Clearly, the goal of the lawsuit is to obtain documents in the DOJ's possession that relate to VW's conduct in deceiving consumers. Absent a settlement, this case, like virtually all federal civil cases, will be decided on the merits. Thus, it strains credulity for VW to assert that it only learned on September 4, 2019, "that the case would proceed on the merits and that [VW's] confidential information could be disclosed." (Id. at 1).

Moreover, any claim by VW that "prior to DOJ's formal notification" on September 4, 2019, there was no reason to believe that its "unique interests," (Dkt. 65, Motion to Intervene Reply at 7), "would not be adequately protected by the" DOJ, (id. at 2), is utterly meritless. The government's interest in this action is complying with its obligations under FOIA, the purpose of which is to facilitate public access to documents in the government's possession. See Lahr v. Nat'l Transp. Safety Bd., 569 F.3d 964, 973 (9th Cir. 2009). According to VW, it has "unique interests" in this action which are to "protect its confidential commercial information from public disclosure." (See Dkt. 47-1, Motion to Intervene Memo. at 2); (Dkt. 67, Reply at 7); (Dkt. 47-2,

10

[Proposed] Answer of Intervenor Volkswagen AG at 7-8) (asserting five affirmative defenses). Given the DOJ's mandate to comply with FOIA, VW could never have reasonably believed that its "unique interests" would be adequately protected by the DOJ at any stage of the proceedings in this case. In other words, if VW wanted to protect against the disclosure of documents in the DOJ's possession, it should've sought to intervene as soon as it learned of the lawsuit.

In any event, the court is seriously troubled by Sullivan & Cromwell's conduct in this case. First, Ms. Oswell omitted from VW's Motion to Intervene any reference to the August 22, 2018, and October 17, 2018, emails that VW received from the DOJ, notifying VW of plaintiff's FOIA Request and the instant action. (See, generally, Dkt. 47-1, Motion to Intervene Memo.). Second, Sullivan & Cromwell was copied on the DOJ's October 16, 2019, letter, and thus knew that plaintiff, who had already filed his Opposition, had just become aware of the August 22, 2018, and October 17, 2018, emails. (See Dkt. 67-2, October 16, 2019, Letter from Alarice Medrano to Daniel Jacobs at ECF 663-64). Yet, in VW's Reply filed the next day, Sullivan & Cromwell still did not address the August 22, 2018, and October 17, 2018, emails, i.e., that VW learned of plaintiff's lawsuit a mere 16 days after it was filed. (See, generally, Dkt. 65, Motion to Intervene Reply). Instead, Ms. Oswell tried to walk back the very clear and unequivocal assertion she made in VW's Motion to Intervene that "Volkswagen was formally notified of this action on September 4[,]" (see Dkt. 47-1, Motion to Intervene Memo. at 15), by now claiming that VW was generally "aware of the existence of Plaintiff's FOIA request and this litigation" before it filed its Motion to Intervene. (Dkt. 65, Motion to Intervene Reply at 4). But Sullivan & Cromwell provided no indication in VW's Reply as to when VW became "generally aware" of the existence of plaintiff's Request and this litigation. (See, generally, id.).

It was not until plaintiff's counsel sent VW's counsel a letter on October 22, 2019 – after the briefing on the Motion to Intervene was complete – requesting that VW submit the DOJ's October 16, 2019, letter and its enclosures to the court that VW finally brought these communications to the attention of the court on October 24, 2019. (See Dkt. 67, Notice of Additional Information [ ]). But other than authenticating the October 16, 2019, letter as well as the October 17, 2018, email, Ms. Oswell made no attempt to explain her apparent lack of candor

11

with respect to when VW actually received notice of this action. (See, generally, Dkt. 67-1, Declaration of Laura Kalber Oswell). Just like "Congress apparently did not contemplate that [VW] would intentionally tamper with the emission control systems of its vehicles after sale in order to improve the functioning of a device intended to deceive the regulators[,]" In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litig., 959 F.3d 1201, 1206 (9th Cir. 2020), the court did not contemplate that VW's counsel would intentionally withhold and misrepresent evidence "in order to improve the" chances of VW succeeding on its Motion to Intervene. In short, the court rejects VW's representation that it learned of this case on September 4, 2019, and finds that VW was aware of the instant action on October 17, 2018, a mere 16 days after it was filed.

Based on the foregoing reasons, including VW's misrepresentation of the record and its failure to provide any reasons or otherwise justify its delay in seeking to intervene, the court will deny VW's Motion to Intervene.[5] See, e.g., Kukui Gardens Corp., 261 F.R.D. at 529 (affirming magistrate judge's denial of motion to intervene where applicant waited one year to file its motion and the defendant had already filed an answer and the parties had attended a scheduling conference and litigated a motion to dismiss); Alt v. U.S. E.P.A., 758 F.3d 588, 591-92 (4th Cir. 2014) (intervention denied as untimely when motion was filed approximately one year after action was filed, and applicant had known of litigation but made strategic decision to not devote resources to suit at earlier stage).

B. Permissive Intervention.

Where a party may not intervene as a matter of right under Rule 24(a), the court may consider whether permissive intervention under Rule 24(b) is appropriate. See Spangler v. Pasadena City Board of Education, 552 F.2d 1326, 1329 (9th Cir. 1977). Although both Rule 24(b)(1) and (b)(2) require timely application, see United States v. Washington, 86 F.3d 1499, 1503, 506 (9th Cir. 1996), the determination of timeliness is analyzed more stringently where

---

[5] "In light of [this court's] conclusion regarding timeliness, [the court] need not, and do[es] not, address the remaining three factors of the intervention-as-of-right standard." Wilson, 131 F.3d at 1307.

12

permissive intervention is sought. See United States v. Oregon, 745 F.2d 550, 552 (9th Cir. 1984). Under the circumstances, the court will deny plaintiff's request for permissive intervention for the same reasons that it denied plaintiff intervention as of right. See supra at § I.A.; see, e.g., Washington, 86 F.3d at 1503 ("A finding of untimeliness defeats a motion for permissive intervention."); Wilson, 131 F.3d at 1308 (denying permissive intervention as untimely because court previously denied proposed intervenor's motion for intervention as of right as untimely).

II. MOTION FOR SUMMARY JUDGMENT.

The DOJ asserts that it is entitled to summary judgment because it has fully complied with its obligations under FOIA. (See Dkt. 69, MSJ at 1-2). Specifically, the DOJ contends that it: (1) conducted a reasonable search in response to plaintiff's FOIA request; (2) properly withheld documents pursuant to certain FOIA exemptions; and (3) disclosed all reasonably segregable information that is not covered by a FOIA exemption. (See id.).

"Congress designed FOIA to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." Animal Legal Defense v. U.S. Dept of Agriculture, 935 F.3d 858, 861 (9th Cir. 2019) (internal quotation marks omitted). FOIA "was enacted to facilitate public access to Government documents." Lahr, 569 F.3d at 973. The goal of FOIA is to "ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." Id. (quotation omitted). At the same time, FOIA contemplates that the government may have legitimate reasons for withholding some information from the public. See id.

The agency bears the burden to show that it has complied with its obligations under FOIA. 5 U.S.C. § 552(a)(4)(B). To prevail on a motion for summary judgment in a FOIA action, "[a] defendant agency must show that its search for responsive records was adequate, that any claimed exemptions actually apply, and that any reasonably segregable, non-exempt parts of records have been disclosed after redaction of exempt information." Electronic Frontier Foundation v. United States Dep't of Justice, 376 F.Supp.3d 1023, 1028 (N.D. Cal. 2019). A federal agency may "demonstrate that it has conducted a search reasonably calculated to uncover all relevant documents[,]" Lahr, 569 F.3d at 986 (internal quotation marks omitted), through

"reasonably detailed, nonconclusory affidavits submitted in good faith." Id. (internal quotation marks omitted). "In evaluating the sufficiency of an agency's search, the issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." Id. at 987 (internal quotation marks omitted; emphasis omitted). A district court assesses the adequacy of an agency's search against a standard of reasonableness, construing all facts in the light most favorable to the FOIA requestor. Citizens Comm'n on Human Rights v. Food and Drug Admin, 45 F.3d 1325, 1328 (9th Cir. 1995).

Item two of plaintiff's FOIA request seeks: "A copy of 'all factual evidence' presented by Jones Day to the Justice Department as the term [is] used on p. 295 of Volkswagen's 2017 Annual Report." (Dkt. 71-8, Exh. 7, Request). Plaintiff contends that the DOJ failed to "conduct a search reasonably calculated to uncover all relevant documents" because it "cleverly" interpreted plaintiff's FOIA request as seeking only "records relating to six in-person meetings with Jones Day, reportedly held from May [to] October 2016[.]" (Dkt. 69, MSJ at 19-21). According to plaintiff, "[w]hen read correctly in context, it is clear that 'presented' means 'submitted' without regard to circumstances such as formal presentations." (Id. at 20).

The DOJ acknowledges in its Reply that it only produced "records in its possession that constituted or included 'evidence' Jones Day provided during six in-person presentations[.]" (Dkt. 75, Supplemental Brief in Support of Defendant's Motion for Summary Judgment ("Def. Supp. Br.") at 9). The DOJ contends that its interpretation of plaintiff's FOIA request was reasonable because "Plaintiff's revisions of his request suggest it was vague and 'poorly framed,' with 'limited specifics,' and so did not reasonably describe records or require production of any records beyond those the government has identified." (Id. at 10). The DOJ also contends that plaintiff did not show that "ENRD's interpretation was unreasonable or provide a reasonable, consistent alternative[,]" because, for example, plaintiff failed to use the words "voluntarily submitted" in his Request. (See id. at 9-10). The DOJ's contentions are unpersuasive.

First, the DOJ improperly attempts to shift the burden to plaintiff by arguing that plaintiff must show that the DOJ's search was unreasonable. The burden, however, rests on the agency

14

to demonstrate the adequacy of its search. See Lahr, 569 F.3d at 986 ("FOIA requires an agency responding to a request to demonstrate that it has conducted a search reasonably calculated to uncover all relevant documents.") (internal quotation marks omitted).

Second, and more importantly, the DOJ deliberately misconstrued the Request by giving it a highly technical and unfair reading. A FOIA request is vague where it fails to "enable[ ] a professional employee of the agency who is familiar with the subject area of the request to locate the record with a reasonable amount of effort." Marks v. United States, 578 F.2d 261, 263 (9th Cir. 1978) (internal quotation marks omitted). Here, the scope of plaintiff's Request is clear, specific, and involves no guesswork – the Request seeks all records provided to the DOJ by Jones Day that constitute factual evidence, as defined by VW's 2017 Annual Report.[1] (See Dkt. 71-8, Exh. 7, Request); see, e.g., Shapiro v. CIA, 170 F.Supp.3d 147,154-56 (D.C. Cir. 2016) (finding that FOIA request for all CIA files that mentioned Nelson Mandela was reasonably descriptive since "the scope of [the plaintiff's] request [wa]s clear" and "involve[d] virtually no guesswork") (footnote omitted).

Further, a FOIA request need not contain specific words (e.g., "voluntarily submitted") that the government agency believes are appropriate in order for the Request to be valid. See Lawyers' Committee, 534 F.Supp.2d at 1130-31 ("[A]n agency cannot withhold a record that is reasonably within the scope of the request on the grounds that the record has not been specifically named by the requester."). As the Ninth Circuit has stated, "a duty of liberal construction accords with the basic purpose of FOIA to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." Yagman v. Pompeo, 868 F.3d 1075, 1080 (9th Cir. 2017) (internal quotation marks omitted). "Liberal construction is warranted to achieve the core purpose of FOIA: allowing the public to find out 'what their government is up to.'" Id. (emphasis omitted). Indeed, the DOJ's own

---

[1] Page 295 of VW's 2017 Annual Report states: "The global law firm Jones Day was instructed by Volkswagen AG to carry out an extensive investigation of the diesel issue in light of the DOJ's and the Braunschweig public prosecutor's criminal investigations as well as other investigations and proceedings which were expected. Jones Day was instructed by Volkswagen AG to present factual evidence to the DOJ. (See Dkt. 71-21, Exh. 18A, VW 2017 Annual Report).

guidance – which it apparently has decided not to follow in this instance – advises federal agencies on the duty to liberally construe FOIA requests. (See Dep't of Justice, Office of Info. Privacy, FOIA Update, Vol. XVI, No. 3, at 4 (1995)) ("[A]gencies should interpret FOIA requests 'liberally' when determining which records are responsive to them.") (quoting Nation Magazine, Washington Bureau v. U.S. Customs Service, 71 F.3d 885, 890 (D.C. Cir. 1995)); (see also Dep't of Justice, Office of Info. Privacy, Department of Justice Guide to the Freedom of Information Act: Procedural Requirements 27) ("[A]n agency 'must be careful not to read [a] request so strictly that the requester is denied information the agency well knows exists in its files, albeit in a different form from that anticipated by the requester.'") (quoting Hemenway v. Hughes, 601 F.Supp. 1002, 1005 (D.D.C. 1985)).

In Lawyers' Committee, the plaintiff requested the following information from the U.S. Treasury ("Treasury"): (1) "[t]he number and nature of inquiries made to the OFAC compliance hotline by companies regarding a possible name match to the [Specially Designated Nationals ('SDN')] list or other watchlist[;]" (2) "[t]he number and nature of complaints from individuals whose names were flagged as similar to a name on the SDN list or other watchlist and any [Office of Foreign Assets Controls ('OFAC')] responses to such complaints[;]" and (3) "[t]he number and nature of complaints from individuals whose credit reports contained an alert regarding a possible name match to the SDN list or other watchlist, and any OFAC responses to those complaints." 534 F.Supp.2d at 1128-29. The Treasury interpreted these requests as limited to "records that aggregate[d] or compile[d] more than one written inquiry, complaint, or response to a complaint, rather than . . . copies of each individual inquiry, complaint, or response." Id. at 1133. The court rejected the Treasury's interpretation, finding that, "given the mandate that FOIA requests be interpreted liberally and the fact that an agency cannot withhold a record that is reasonably within the scope of the request[,]" the Treasury should have disclosed copies of individual inquiries, complaints and responses to the plaintiff. See id. at 1136. The court thus denied the Treasury's summary judgment motion with respect to these requests. See id. at 1137.

Like the Treasury's interpretation of the Lawyer's Committee requests, the DOJ's interpretation of the word "present" is inconsistent with the "mandate that FOIA requests be

interpreted liberally[.]" See Lawyer's Committee, 534 F.Supp.2d at 1136. The DOJ's interpretation uses "present" to mean "to make a presentation." (See Dkt. 75, Supp. Def. Br. at 9-10). However, "present" more commonly means to "bring to the attention of" someone. See Merriam-Webster Dictionary Online (defining "present," when used as transitive verb, to mean, among other variations: (1) to give or bestow formally; (2) to bring or introduce into the presence of someone especially of superior rank or status; (3) to offer to show; or (4) to bring to one's attention). Given the Ninth Circuit's mandate and the DOJ's own guidance requiring liberal construction of FOIA requests, the DOJ should have searched for and disclosed all "'factual evidence,' . . . as the term i[s] used on p. 295 of [VW's] 2017 Annual Report[,]" (Dkt. 71-8, Exh. 7, Request), submitted to or otherwise brought to the attention of the DOJ by Jones Day. See Yagman, 868 F.3d at 1080 ("Liberal construction is warranted to achieve the core purpose of FOIA: allowing the public to find out 'what their government is up to.'") (emphasis omitted); (Dep't of Justice, Office of Info. Privacy, FOIA Update, Vol. XVI, No. 3, at 4 (1995)) ("[A]gencies should interpret FOIA requests 'liberally' when determining which records are responsive to them."). Because ENRD gave plaintiff's Request an unduly narrow and therefore improper interpretation, its search for records responsive to the Request was inadequate. See, e.g., Our Children's Earth Foundation v. National Marine Fisheries Service, 85 F.Supp.3d 1074, 1084 (N.D. Cal. 2015) (denying in part National Marine Fisheries Service's motion for summary judgment where its search for records responsive to plaintiffs' FOIA requests was inadequate). The DOJ's Motion for Summary Judgment is therefore denied.[7]

---

[7] Because the court denies the MSJ on the basis of the ENRD's inadequate search, the court need not address whether "any claimed exemptions actually apply, and [whether] any reasonably segregable, non-exempt parts of records have been disclosed after redaction of exempt information." Electronic Frontier Foundation, 376 F.Supp.3d at 1028 (internal quotation marks omitted).

III. MOTION TO STRIKE AND FOR SANCTIONS.

Although plaintiff's Motion to Strike and for Sanctions can be denied on procedural grounds, see Fed. R. Civ. P. 11(c)(2) (requiring a motion for sanctions to specifically describe the conduct that allegedly violates Rule 11(b) and, after serving the motion under Rule 5, not file the motion if the challenged contention is corrected within 21 days after service); (Dkt. 38, Court's Order of June 26, 2019, at 3) ("All necessary evidentiary objections shall be made in the relevant section(s) of the joint brief."), the court is not satisfied, given the court's conclusions set forth above, that the DOJ prepared the Vaughn index in good faith. The court will deny the Motion to Strike without prejudice and direct the parties to meet and confer regarding the format and the specific information to be included in the Vaughn index.

**This Order is not intended for publication. Nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

## CONCLUSION

Based on the foregoing, IT IS ORDERED THAT:

1. The DOJ's Motion for Summary Judgment **(Document No. 69)** is **denied**. Unless covered by an applicable FOIA exemption, the DOJ shall search for and produce all documents, records, notes that relate, refer or pertain to "all 'factual evidence' presented by Jones Day to the [DOJ] as the term i[s] used on p. 295 of [VW's] 2017 Annual Report." The term "presented by Jones Day" shall mean all documents, records, notes, etc., that were submitted, conveyed, produced, delivered, or transmitted in any manner and at any time to the DOJ during the relevant time period..

2. VW's Motion to Intervene **(Document No. 47)** is **denied**.

3. Plaintiff's Motion to Strike and for Sanctions **(Document No. 72)** is **denied without prejudice**.

4. The parties shall, no later than **October 30, 2020**, meet and confer telephonically or in person regarding the format and categories of information that shall be included in the Vaughn index. The parties shall file a joint proposed Vaughn index in the format the parties have agreed to no later than **November 6, 2020.** In the event the parties are unable to reach agreement on

the proposed format of the <u>Vaughn</u> Index, then each side shall file a "Notice of Proposed <u>Vaughn</u> Index Format" by **November 6, 2020**.  Each side may attach a memorandum of points of authorities not to exceed five pages which shall explain why the court should adopt that party's proposed format.  After the court approves of the format and categories of information to be included in the <u>Vaughn</u> index, the court will set a deadline for the DOJ to submit an amended <u>Vaughn</u> index that is inclusive of all documents responsive to plaintiff's Request.

Dated this 9th day of October, 2020.

/s/<br>Fernando M. Olguin<br>United States District Judge