Daniel Jacobs
CA Bar No. 295494
ENENSTEIN PHAM & GLASS LLP
12121 Wilshire Blvd., Suite 600
Los Angeles, CA 90025
Telephone: (310) 899-2070
Facsimile: (310) 496-1930
*Attorneys for Plaintiff Lawrence P. Kalbers*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAWRENCE P. KALBERS,<br><br>        Plaintiff,<br><br>        v.<br><br>U.S. DEPARTMENT OF JUSTICE,<br><br>        Defendant,<br><br>        v.<br><br>VOLKSWAGEN AG,<br><br>        Intervenor | No.  2:18-CV-8439 FMO (PJWx)<br><br>PLAINTIFF'S RESPONSE TO OBJECTIONS TO SPECIAL MASTER'S REPORT AND RECOMMENDATION RE DEFENDANT'S PETITIONS<br><br>Honorable Fernando Olguin<br>United States District Judge<br><br>Honorable Suzanne Segal<br>Special Master |

# TABLE OF CONTENTS

INTRODUCTION. ....................................................................................... 1

BACKGROUND ......................................................................................... 1

I.   The FOIA Request and the District Court's Orders ..................................... 1

II.  The Jones Day Documents ........................................................................ 6

III. The Public Interest in the Records............................................................. 8

ARGUMENT............................................................................................... 10

I.   DOJ has misused Rule 6(e) to circumvent FOIA ....................................... 10

    1.  DOJ misuses Rule 6(e)(3)(F) .............................................................. 11

    2.  The court lacks authority to issue a "non-disclosure" order under
       Rule 6(e)(3)(F) ................................................................................... 12

    3.  Rule 6(e) is inapplicable because DOJ has not shown that the
       records constitute "grand jury material" ............................................. 13

II.  The Petitions should be denied on the merits ............................................. 14

    A.  The Law of the Case Doctrine ............................................................ 14

    B.  Sixth Circuit law is inapplicable ......................................................... 15

    C.  The Jones Day records are not "grand jury material" .......................... 17

    D.  Sanctions should not be imposed against DOJ..................................... 20

CONCLUSION............................................................................................ 24

# TABLE OF AUTHORITIES

**Cases**

Animal Legal Defense Fund v. UDA,
  935 F.3d at 873 ................................................................ 4, 12

Gizzie v. Las Vegas Metro Police Dep't,
  2020 U.S. Dist. LEXIS 22001 (D. Nev. 2020) ................................. 14

Gonzalez v. Arizona,
  677 F.3d 383, 389 n.4 (9th Cir. 2012) ........................................ 14

GTE Sylvania v. Consumers Union of United States,
  445 U.S. 375 (1980) ............................................................ 15

Hill v. Volkswagen,
  914 F.3d at 636 (9th Cir. 2019) .............................................. 7

Ibrahim v. DHS,
  912 F.3d at 1180 ................................................... 21, 22, 23

In re Application of USA for an Order Pursuant to 28 U.S.C. § 1651(a),
  2019 LEXIS 163505 (D.D.C. 2019) ............................................ 13

In re Optical Disk Drive Antitrust Litigation,
  801 F.3d 1072 (9th Cir. 2015) ........................................... 15, 18

Lahr v. Nat'l Transp. Safety Board,
  569 F.3d 964, 973 (9th Cir. 2009) ........................................... 12

Poulsen v. DOD,
  994 F.3d 1046 (9th Cir. 2021) ............................................... 23

Rosenfeld v. United States,
  859 F.2d 717, 725 (9th Cir. 1988) ........................................... 23

Senate of Puerto Rico v. DOJ,
  823 F.2d 574, 584 (D.C. Cir. 1987) ...................................... 18, 20

The New York Times Company v. United States Department of Justice,
  No. 1:19-cv-01424 (S.D.N.Y.) ................................................. 8

U.S. v. Dynavac, Inc.,
  6 F.3d 1407 (9th Cir. 1993) .............................................. 15, 18

Washington Post v. DOJ,
  863 F.2d 96, 100 (D.C. Cir. 1988) ........................................... 19

Wiener v. FBI,
  No. CV-83-1720-RMT (C.D. Cal.) and 943 F.2d 972 (9th Cir. 1991) ........... 22

iii

**Statutes**

5 U.S.C. § 552(a)(4)(B) ........................................................................ 12
5 U.S.C. § 552(b)(7(A) .......................................................................... 1

**Treatises**

*Grand Jury Law and Practice* § 5:6 (2d ed. 2018)……………………………….20

**Other Authorities**

Ewing, Faster, Higher, Farther: the Volkswagen Scandal,
   W.W. Norton (2017) ............................................................................ 10
Marshall, et al., "Prioritizing Environmental Justice and Equality: Diesel
   Emissions in Southern California.'
   48 *Environ. Sci. Tech.* 4064 (2014) ................................................... 9
Parloff, "How Volkswagen Paid $25 Billion for Dieselgate -- and Got Off Easy,"
   Fortune, February 6, 2018................................................................... 10
*Sci. Adv.*
   (November 4, 2020) ............................................................................. 9

**Rules**

DOJ Manual § 9-11.254 (4) .................................................................. 14
Justice Manual, § 9-11.254(3.a)....................................................... 6, 22

iv

**INTRODUCTION**

The petitions before the court are disturbingly unique in the annals of the Freedom of Information Act (FOIA). This court has twice ordered the U.S. Department of Justice ("DOJ") to produce records and a <u>Vaughn</u> index responsive to plaintiff's FOIA request for evidence relating to Volkswagen's fake "clean diesel" conspiracy. Instead of complying, DOJ has attempted to circumvent those orders by filing what is in essence a reverse FOIA action in the Eastern District of Michigan ("EDMI") under the guise of Rule 6(e)(3)(F), Fed. R. Crim. P. DOJ sought to have the EDMI court rule that the responsive records are secret "grand jury material," and thereby reverse this court's earlier ruling on that very issue.

The petitions should be summarily dismissed as improvidently filed, or, in the alternative, denied. Sanctions should be imposed.

**BACKGROUND**

I.   <u>The FOIA Request and the District Court's Orders</u>

Item two of plaintiff's FOIA request ("Request"), the portion relevant to the petitions, seeks: "A copy of all 'factual evidence' presented by Jones Day to the Justice Department as the term i[s] used on p. 295 of Volkswagen's 2017 Annual Report." (<u>See</u> Dkt. 79, Order, at 14; Dkt. 71-8). Contrary to its duty to represent the public interest, DOJ has made a mockery of its FOIA obligations and the orders of this court by producing not a single one of these records – or even a valid <u>Vaughn</u> index – in over three years since this lawsuit was filed on October 1, 2018. (<u>See</u> Dkt. 1, Complaint).

The Request was first submitted to DOJ on June 20, 2018. (<u>See</u> Dkt. 71-8). DOJ belatedly claimed both on initial review and administrative appeal that all responsive records were exempt from disclosure, relying solely on Exemption 7(A) of FOIA, 5 U.S.C. § 552(b)(7(A), the law enforcement records exemption. (<u>See</u> Dkt. 79, Order, at 3-4; Dkt. 71-10; Dkt. 71-13). Having properly exhausted his

administrative remedies, plaintiff filed his Complaint. (See Dkt. 1). In its Answer, DOJ asserted no exemptions whatsoever. (See Dkt. 14).

After promising to provide the Vaughn index customary in FOIA cases, DOJ reneged on that representation, necessitating the filing of Plaintiff's Motion for Vaughn Index. (See Dkt. 35). In opposing the motion, DOJ once again relied exclusively on the law enforcement records exemption. (See Dkt. 36, Def. Opp. to Vaughn; Dkt. 79, Order, at 3-4).

The court granted plaintiff's motion in part, ordering DOJ to file a Vaughn index in a specified format no later than ten days prior to initiation of summary judgment proceedings. (See Dkt. 46, Order, at 2-3). Blatantly disregarding the court's order, DOJ deliberately filed an index that was quantitatively and qualitatively deficient. (See Dkt. 51-1). The index listed only a self-selected subset of 281 records (of the vastly higher number of records DOJ reported) and provided fake information about them.[1]

DOJ asserted a veritable kitchen sink of exemptions (Exemptions 3, 4, 5, 7(a), 6/7(c), and 7(d)) in the *faux* Vaughn index (see id.), and proceeded to move for summary judgment on the basis of all of them. (Dkt. 69) The validity of the exemptions was extensively briefed by both parties in the joint summary judgment brief and separate supplemental briefs, including the Exemption 3 claim based on Rule 6(e), Fed. R. Crim. P. (See Dkts. 69, 74, and 75). The court denied the motion, holding that in self-narrowing the Request to 281 records, DOJ had "deliberately misconstrued the Request by giving it a highly technical and unfair reading." (See Dkt. 79, Order of October 9, 2020, at 15). Further, the court held that "[b]ecause ENRD gave plaintiff's Request an unduly narrow and therefore improper

---

[1] For example, DOJ listed "Jones Day" as the author, and "CRM Fraud" as the recipient, of each of the 274 Jones Day records listed. (See Dkt. 51-1, *passim*).

interpretation, its search for records responsive to plaintiff's FOIA requests was inadequate." (Id. at 17). Having denied DOJ's summary judgment motion on the basis of the inadequate search, the court did not reach any of DOJ's asserted exemptions. (See Id. at 17, n. 7).

The court ordered DOJ to search for and produce all responsive records, making clear the scope of the request. (Id. at 18). Holding that the *faux* index had not been prepared in good faith, the court generously allowed DOJ not only a full "redo," but also input on the format of the new Vaughn index. (See Id. at 18-19). DOJ took the opportunity to feign ignorance with respect to the court's order on the scope of the request and to re-advance its Rule 6(e) argument. (See Dkt. 82).

In its February 5, 2021, order (Dkt. 98) (i.e., the second of two orders that specifically addressed the content of the Vaughn index), the court took umbrage at DOJ's supposed lack of understanding of its prior order and strongly disagreed with its interpretation of Rule 6(e). First, to set the record straight and "avoid any future motions for reconsideration and/or clarification," the court clarified the scope of the Request (Dkt. 98, Order, at 4). The court held that "all records and materials…transmitted by Jones Day to the DOJ on VW's behalf fall within the meaning and scope of plaintiff's FOIA request, *regardless of whether they were produced in response to a grand jury subpoena or other court-ordered process.*" (Id.) (emphasis added).

Second, the court carefully considered and soundly rejected DOJ's argument that the Jones Day records are necessarily shielded by FOIA Exemption 3 through Rule 6(e). Applying binding Ninth Circuit law, the court found DOJ's assertion of Exemption 3 to be "overly broad and based on an unreasonable interpretation of Rule 6(e)," as well as "troubling" due to the absence of supporting evidence. (Dkt. 98, Order, at 5-6). To be clear, the court did not preclude DOJ from asserting Exemption 3 in its Vaughn index, but did impose strict parameters for the

3

substantiation of any such claim given DOJ's wholesale assertion of the exemption and the absence of any supporting evidence. (See Id. at 7-8).

The court also took note of DOJ's attempt to "relitigate issues that have already been resolved by the court," warning the agency that as the "enforcement arm" of FOIA, Animal Legal Defense Fund v. UDA, 935 F.3d 858, 873 (9ᵗʰ Cir. 2019), the court would consider equitable relief and other remedies if DOJ failed to respond to the Request in a "thorough and timely manner." (Id. at 3, 8). Due to DOJ's intransigence, the court also determined that it would be necessary to appoint a special master to assist with its enforcement duties. (See id. at 11-12).

When DOJ opposed the appointment of a special mater (see Dkt. 101), the court noted that the agency "has resisted – on a largely wholesale basis -- all efforts to comply with its FOIA obligations and the court's orders" (Dkt. 107, Order Re: Appointment of Special Master, at 3). The court justified the appointment by reference to the government's misconduct, including it having "deliberately misconstrued [plaintiff's FOIA] Request by giving it a highly technical and unfair reading," its "position that all responsive documents are exempt from disclosure," and its failure "to produce a valid Vaughn index." Id. [citations omitted].

Thus, the court's order appointing the special master was the third consecutive order in which the court held that DOJ had failed to conduct itself in good faith in this public interest FOIA case. (See id. at 4; Dkt. 79, Order of October 9, 2020 at 18; Dkt. 98, Order of February 5, 2021 at 11).[2] The court admonished

---

[2] The court referred specifically to the "government's willingness to raise objections to the production of documents it never reviewed" as "yet another example of the government's lack of good faith in complying with this court's orders and its obligations under FOIA." (Id. at 4). The court also found the government's proposed method and sampling proposal "unacceptable," and rejected its proposal for additional summary judgment briefing. Id. at 4-5.

that "the only thing left at this point is for the government to comply with its FOIA obligations and the court's orders." (Id. at 5).

Not to be deterred and in bold defiance of the court's warning, DOJ proceeded to solicit a new forum without jurisdiction over the instant matter to trump the court's ruling on the tenuous Rule 6(e) argument. On May 24, 2021, DOJ took the unprecedented step of filing highly-irregular 38-page sealed and unsealed petitions in the EDMI, captioning them with pre-existing case names involving Volkswagen and its employees, and filing them on both the criminal and civil docket of the judge who oversaw the Volkswagen matters. (See Dkt. 111-1, Defendant's Notice of Lodging, Exh. A).[3]

The petitions were transferred by the EDMI to the Central District of California by means of a sealed order, and then to this court, which ordered them consolidated with the instant matter and referred to the Special Master. (See Dkt. 125).[4] The Special Master subsequently vacated the production deadline in the court's February 5, 2021, Order (see Dkt. 113, Order Vacating June 7, 2021 Production Deadline []) and stayed all deadlines pending her ruling on the petitions. (See Dkt. 124, Order Re: Schedule for Production of Documents and Vaughn Index, at 2).

After having "thoroughly reviewed (and considered) the 110 or so pages of briefs submitted by both sides," on November 5, 2021, the Special Master issued

---

[3] The three DOJ prosecutorial units whose signature blocks appear on the petitions are the same that appear on the plea agreement in the Volkswagen criminal matter in that court. (See id. at 38; Dkt. 71-4, Plea Agreement, at 34). Thus, these are the very units whose work could be scrutinized were DOJ to release the Jones Day documents as ordered.

[4] Plaintiff objects to DOJ's filing of secret pleadings in this FOIA case and respectfully requests that they be stricken. Plaintiff also requests that the sealed transfer order be unsealed, without opposition by DOJ. (See Dkt. 129-1).

a Report and Recommendation recommending that the petitions be denied. (See Dkt. 152 at 3 n. 3 and 8).[5] She then set a schedule for objections and a response thereto. (See Dkt. 156-1). Under Rule 53(f), Fed. R. Civ. P., the district court reviews objections to the Special Master's Report and Recommendation *de novo*.

## II.   The Jones Day Documents

The records at issue in the petitions relate to the Volkswagen fake "clean diesel" conspiracy that came to public light in 2015 and ultimately lead to both criminal and civil enforcement actions against Volkswagen. See In re Volkswagen "Clean Diesel" Marketing, Sales, Practices, and Products Liability Litigation, 959 F.3d 1201, 1208-09 (9th Cir. 2020). To circumvent new emission control regulations, "beginning in 2006, Volkswagen employees developed and installed two defeat devices that would enable its diesel engine vehicles to pass federal emission tests, even though the vehicles could not actually meet the emission standards while being driven on the street." Id. at 1207. With the defeat devices installed, the cars emitted up to approximately 40 times the legally permissible limit of NOx. Id. at 1208. Volkswagen misled regulators by falsely certifying that 585,000 such vehicles sold in the United States met emissions control standards, and misled consumers by falsely marketing them as "clean diesel" and

---

[5] The Special Master's page count includes only one petition (not the four filed) and also is exclusive of the other *eight* other briefs filed from 2019-20 in which the parties previously addressed DOJ's Exemption 3/Rule 6(e) argument at least in part. (See Dkts. 69, 72-1, 73, 74, 75, 76, 81, and 82). Adding the 76 pages now before the court brings the 2021 page count alone on the argument to nearly 200 pages. By contrast, DOJ's Justice Manual succinctly covers the issue in a single sentence, to be discussed herein. See Justice Manual, *Guidelines for Handling Documents Obtained by the Grand Jury* ("Justice Manual") § 9-11.254(3.a).

"environmentally-friendly." Id.[6]

After finally discovering the conspiracy some nine years later, EPA issued a Notice of Violation (NOV) to Volkswagen. See Hill v. Volkswagen, 914 F.3d at 636 (9th Cir. 2019). Shortly thereafter, Volkswagen hired Jones Day to conduct an internal investigation. (See Dkt. 71-19). According to Volkswagen's 2017 Annual Report, "Jones Day was instructed by Volkswagen AG to carry out an extensive investigation of the diesel issue in light of the DOJ's and the Braunschweig public prosecutor's criminal investigations as well as other investigations and proceedings which were expected. *Jones Day was instructed by Volkswagen AG to present factual evidence to the DOJ.*" (Dkt. 79, Order at 15 n. 1, citing Dkt. 71-21, Exh. 18A, VW 2017 Annual Report) (emphasis added).[7]

The Jones Day records, at the heart of this FOIA case, apparently were deemed very valuable to the government.[8] In Volkswagen's plea agreement with DOJ, the agency expressly acknowledged the extensive evidence provided to it, deeming the company's "cooperation" worthy of a discount of approximately $3.4 billion off its criminal sentence (20% off the bottom of the U.S. Sentencing Guidelines fine range), yielding a much-reduced fine of $2.8 billion**. (**See Dkt. 71-14, United States v. Volkswagen, Plea Agreement, at 13).

---

[6] The false marketing was so effective that in 2008 Volkswagen won the "Green Car of the Year" award at the LA auto show for the Jetta TDI model equipped with the defeat device. (See https://www.reuters.com/article/us-autos-greencar/volkswagen-diesel-car-wins-green-car-of-the-year-idUSTRE4AJ7S120081120).

[7] The reference to the factual evidence in Volkswagen's Annual Report inspired plaintiff to submit his FOIA request.

[8] The factual evidence appears to have been equally valuable to German authorities, who obtained a court order to seize the Jones Day evidence from its Munich office. The seizure was upheld by the German Constitutional Court. (See Dkt. 71-19).

Like the Volkswagen annual report, the plea agreement reflects that the Jones Day records were produced not as a result of a grand jury subpoena, but rather as part of Volkswagen's "cooperation" with the government. So, too, do the transcripts of the plea and sentencing hearings. (See Dkt.129- 2, United States v. Volkswagen, Plea Hearing transcript, *passim;* Dkt. 129 3, United States v. Volkswagen, Sentencing Hearing transcript *passim*). Indeed, the transcripts contain repeated references by the prosecutor and defense counsel to the company's "cooperation," including with respect to the production of documents.[9]

To contradict the evidence that the Jones Day records were produced as part of a cooperative agreement, DOJ rests primarily on evidence that the records bear a label (apparently affixed by Jones Day) bearing the wording "FOIA Confidential – Produced Pursuant to Rule 6(e)" (Dkt. 71-1, Stoller Decl., ¶ 85).

### III.    The Public Interest in the Records

Volkswagen's crimes were not victimless. Indeed, the substantial public interest in the Jones Day records is attributable in part to the dire public health consequences of the excess emissions, a subject of extensive study.[10] (See Mansur, et al., "Damages and Expected Deaths Due to Excess NOx Emissions from 2009 to 2015 Volkswagen Diesel Vehicles," 50 *Environ. Sci. Technol.* 1111 (2015); Wang, et al., "Estimating $PM_{2.5}$-associated mortality increase in California due to

---

[9] AUSA Neal, who signed the petition, states "that terms of that cooperation are spelled out in the agreement [] requires [] the corporation produce documents upon request." (Exh. 2 at 26). Defense counsel Weinstein states "Volkswagen directed its – the law firm that did the independent investigation to provide information essentially in realtime to the government….to help the government do its work more quickly." (Id. at 44).

[10] *The New York Times* has brought a related FOIA action in the Southern District of New York. The New York Times Company v. United States Department of Justice, No. 1:19-cv-01424 (S.D.N.Y.).

the Volkswagen emission control defeat device," 144 *Atmos. Environ.* 68 (2016);
Barrett, et al. "Impact of the Volkswagen emissions control defeat device on US
public health," *Environ. Res. Lett.* 10 (2015); Alexander and Schwandt, "The
Impact of Car Pollution on Infant and Child Health: Evidence from Emissions
Cheating," https://doi.org/10.21033/wp-2019-04 *(2019).*[11] It is also scientifically
plausible that the types of health effects proven in the studies to be attributable to
the excess emissions from the Volkswagen fake clean diesel vehicles can carry
over to increased complications from COVID-19 in heavily polluted counties like
Los Angeles. (See Wu, et al., "Air pollution and COVID-19 mortality in the United
States: Strengths and limitations of an ecological regression analysis," *Sci. Adv.*
(November 4, 2020)).

According to EPA's Environmental Justice web page, approximately 2,000
premature deaths are associated with diesel emissions in the South Coast Air Basin.
https://www.epa.gov/environmentaljustice/los-angeles-area-environmental-
enforcement-collaborative. Thus, its residents likely bear the brunt of a
disproportionately large share of the added projected California premature deaths
and illness caused by Volkswagen's excess emissions. At potentially highest risk
are the residents living in the 15 cities and unincorporated areas along the I-710
corridor, inhabited by approximately 70% minority and low-income populations.
(See id.; Marshall, et al., "Prioritizing Environmental Justice and Equality: Diesel
Emissions in Southern California.' 48 *Environ. Sci. Tech.* 4064 (2014)).

---

[11] While there is no available evidence suggesting that Volkswagen studied the
health effects of the excess diesel emissions on humans, there is evidence that
Volkswagen (among other German automakers) did study the effects of excess
diesel emissions on animals. See Ewing, "Ten Monkeys and a Beetle: Inside VW's
Campaign for 'Clean Diesel.'" *New York Times*, January 25, 2018.

Because the government's cases never went to trial (at which time all evidence would have become public, unless sealed), little evidence of Volkswagen's fraud has reached the public domain. The still-secret Justice Department records remain of considerable interest both to researchers and the general public, including in Southern California which bore the greatest impact of Volkswagen's crimes. Among those researchers is the plaintiff, Professor Lawrence Kalbers, who holds the Dreier Chair in Accounting Ethics at Loyola Marymount University and is the Associate Dean of its College of Business Administration. Kalbers is the co-author of a cover story about the conspiracy published by a leading accounting trade journal. See "The Volkswagen Diesel Emissions Scandal and Accountability: Where Were the Auditors and Attorneys during the Sustainability Charade?" The CPA Journal, Vol. 89, No. 7 (2019).[12]

## ARGUMENT

DOJ's petitions are just the latest in a well-documented pattern or practice of litigation misconduct on its part that is designed to defeat FOIA in this case and others. DOJ has resubmitted a baseless argument that violates its own manual, was frivolous in the first instance, and was already soundly rejected by the court. The petitions constitute a cunning attempt to hijack the case to another court in an effort to obtain a more favorable ruling.[13] This, DOJ should not be permitted to do with

_____

[12] Although plaintiff originally submitted the Request with the intent of including the requested information in the article he co-authored, his request for the records stands. (See Dkt. 79, Order, at 1). See also Ewing, Faster, Higher, Farther: the Volkswagen Scandal, W.W. Norton (2017); Parloff, "How Volkswagen Paid $25 Billion for Dieselgate -- and Got Off Easy," Fortune, February 6, 2018.

[13] DOJ's petitions also constitute both an improper second summary judgment motion in violation of the court's April 16, 2021 order (Dkt. 107), and an improper request for reconsideration of the court's February 5, 2021 order. Under L.R. 7-18, C.D. Cal., DOJ was obliged to file any motion for reconsideration within 14 days

impunity.

The petitions should be dismissed or denied, and sanctions should be imposed against DOJ both for its misconduct and to compel its long-delayed compliance with the court's orders.

I.    DOJ has misused Rule 6(e) to circumvent FOIA

DOJ purported to file the petitions under Rule 6(e)(3)(F), Fed. R. Crim. P., a provision that is part of a broader rule designed to protect against prosecutorial abuse. (See Advisory Comm. notes to Rule 6(e) *passim*). Rule 6(e)(3)(F) allows a court to order the disclosure of a grand jury matter. There are at least three fatal flaws with DOJ's reliance on the rule in the instant case: (1) DOJ seeks to misuse the rule to trump FOIA; (2) the text of the rule applies only to petitions to disclose, not to bar disclosure; and (3) the rule applies only to grand jury material as such. The court should hold that Rule 6(e)(3)(F) cannot be used in the illicit manner in which DOJ employs it and decline to consider the petitions, lest DOJ be emboldened to use such an extreme tactic in another FOIA case.

(1) DOJ misuses Rule 6(e)(3)(F)

Without citing to any on-point authority whatsoever or, for that matter, any other FOIA case in which it has filed a Rule 6(e)(3)(F) petition, DOJ boldly asserts that such a petition must be filed when the records being sought under FOIA allegedly were provided under grand jury subpoena. Acceptance at face value of this remarkably unfounded proposition would set a very dangerous precedent indeed because it would wreak havoc on FOIA enforcement.

_____

of the order that is the subject of the motion and meet enumerated requirements. Under L.R. 7-17, DOJ was obliged to seek any further relief before the same judge or to file a declaration attesting to the basis for seeking relief before another judge. DOJ failed to comply with the local rules both before and after the petitions were transferred here.

DOJ's cunning and misguided argument seeks to amend over five decades of FOIA law. If adopted, DOJ could routinely seek to divert jurisdiction in virtually any FOIA case involving criminal records from the court in which the case was brought to the court under whose authority the grand jury subpoena allegedly was issued. The governing law would concomitantly change in two respects: (1) the body of law governing FOIA requests would be supplanted by that governing Rule 6(e) petitions; and (2) the body of law applicable in the jurisdiction where the case was filed would be supplanted by that of the jurisdiction in which the subpoena was issued.

Congress never intended such a result. Congress vested authority in the courts to enforce FOIA in one of three venues: the district in which the plaintiff resides; the district in which the records are situated, or in the District of Columbia. See 5 U.S.C. § 552(a)(4)(B). As the "enforcement arm" of FOIA, the court in which the case is brought has "the responsibility of ensuring the fullest responsible disclosure." Animal Legal Defense Fund v. UDA, 935 F.3d at 873. And under FOIA, the burden falls squarely on the agency to demonstrate that an exemption applies. Lahr v. Nat'l Transp. Safety Board, 569 F.3d 964, 973 (9th Cir. 2009).

Here, this court plainly has jurisdiction because the plaintiff resides in the district (see Dkt. 1, Complaint, at 2), whereas the EDMI lacks jurisdiction because the plaintiff does not reside there and the records are not situated there.[14] Even if the records were located in the EDMI, Congress has not provided the government with the unilateral option to change the venue of a FOIA case to suit its whim, including for a certain court, judge, and/or body of law, and not by misusing the

---

[14]  According to DOJ, the records are situated "in a Relativity database maintained by the Department of Justice Criminal Division," (see Dkt. 104-1, Decl. of Amanda Jones, at 2) a DOJ component located in Washington, D.C.

Rule 6(e) petition process. Rule 6(e) petition law and Sixth Circuit law are inapplicable here.

    (2) <u>The court lacks authority to issue a "non-disclosure" order under Rule 6(e)(3)(F)</u>

Even assuming that this court were inclined to consider the petitions despite DOJ's misuse of Rule 6(e)(3)(F), the court lacks authority to grant the relief sought by DOJ under the rule. Just as the text of FOIA provides only for civil actions *against* government agencies to *compel disclosure*, not civil actions by government agencies to *preclude disclosure*, the text of Rule 6(e)(3)(F) only authorizes courts to issue *disclosure* orders, not *non-disclosure* orders.

The text of the rule refers to a "petition to disclose a grand jury matter." Rule 6(e)(3)(F). Although there is relatively little jurisprudence on reverse 6(e) petitions, there is a recent persuasive decision on point by the chief judge of the District of Columbia district (a court that handles a large percentage of the FOIA cases filed across the country). In <u>In re Application of USA for an Order Pursuant to 28 U.S.C. § 1651(a)</u>, 2019 LEXIS 163505 (D.D.C. 2019), the court drew on Supreme Court and recent D.C. Circuit precedent to hold that the provisions of Rule 6(e)(3) are exclusive and do not give latitude to courts to issue non-disclosure orders. Indeed, in a July 10, 2020, letter to the Chair of the Subcommittee on Rule 6(e) of the Advisory Committee on the Criminal Rules, DOJ's Criminal Division (whose lawyers signed the petition) cited that same influential decision in formally proposing that the rule be amended to authorize non-disclosure petitions. (<u>See</u> Dkt. 129-4 at 5-6).

The rule remains unchanged to this date, and DOJ is obliged to follow it.

    <u>Rule 6(e) is inapplicable because DOJ has not shown that the records constitute "grand jury material"</u>

Even assuming DOJ could use Rule 6(e) to trump FOIA, such use of the rule

presupposes that the records are "grand jury material," the ultimate issue here. There is no creditable evidence in the record that they are.[15]

As noted, the Request is for the Jones Day records. It makes no mention of grand jury records. Under the provisions of the DOJ Manual governing documents obtained by grand jury subpoena, "no grand jury marking or stamp should be affixed to the original documents themselves." DOJ Manual § 9-11.254 (4). DOJ should not have accepted documents labelled in violation of the Manual and is estopped from now claiming that they are exempt from FOIA because it did.[16]

In sum, the court should consider the petitions a legal nullity and strike them as the rogue pleadings that they are. See Gizzie v. Las Vegas Metro Police Dep't, 2020 U.S. Dist. LEXIS 22001 (D. Nev. 2020) (striking rogue pleading).

II.    The Petitions should be denied on the merits

A. The Law of the Case Doctrine

DOJ has resubmitted in its petitions (see Defendant's Petition at 14-23), the same baseless argument on which the district court ruled in its February 5, 2021 order. (See Dkt. 98, Order, at 4-8). Thus, based on the law of the case doctrine, the court need not reconsider the issue. See Gonzalez v. Arizona, 677 F.3d 383, 389

_____

[15] DOJ initially placed great stock in the labels it says Jones Day placed on the records. DOJ's belated attempt to file additional self-serving declarations to buttress its febrile argument violated L.R. 7-5, and the Special Master properly excluded them under L.R. 7-12.

[16] DOJ now claims that Jones Day was "VW's criminal counsel," (Dkt. 159, Defendant's Objections, at 3). But the Plea Agreement reflects that Jones Day was not among the three law firms that represented Volkswagen in the criminal proceeding. (See Dkt. 71-4 at 36). Although it is possible that Volkswagen's criminal counsel produced under subpoena some or all of the same records as did Jones Day, plaintiff's FOIA request covers only the Jones Day records. Conspicuous by its absence is a firsthand declaration by Jones Day that it produced the records under grand jury subpoena (and the subpoena itself).

n.4 (9th Cir. 2012) (*en banc*) (courts "generally refuse to reconsider an issue that has already been decided by the same court or a higher court in the same case").

In its February 5, 2021, ruling, the court relied, as it should, on the two seminal Ninth Circuit cases that construe Rule 6(e), U.S. v. Dynavac, Inc., 6 F.3d 1407 (9th Cir. 1993) and In re Optical Disk Drive Antitrust Litigation, 801 F.3d 1072 (9th Cir. 2015) (See Dkt. 98, Order, at 4-8). The district court began its analysis by reference to the Ninth Circuit's examination in Dynavac of the underlying purpose of Rule 6(e)(2)'s general prohibition on government attorneys from disclosing "a matter occurring before the grand jury." (Id. at 5.) Next, the court turned to a verbatim quotation from Optical Disk, reaffirming the key holding in Dynavac that "the fundamental purpose of Rule 6(e) is 'only to protect against disclosure of what is said or takes place in the grand jury room….Thus, if a document is sought for its own sake rather than to learn what took place before the grand jury, and its disclosure will not compromise the integrity of the grand jury process, Rule 6(e) does not prohibit its release.'" (Id.) [emphasis added].

The district court's analysis, which DOJ ignores, was faultless. Under the law-of-the case doctrine, the court should decline to reconsider its ruling

## B. Sixth Circuit law is inapplicable

DOJ contends, without on-point authority, that Sixth Circuit law should be applied to its petitions because they were filed in the EDMI. As discussed above, this is plainly wrong. Indeed, there would have no basis even for the EDMI court to apply Sixth Circuit law even if it had heard the petitions because it lacked jurisdiction not just under FOIA but also under Article III. Thus, Sixth Circuit law cannot apply to the petitions once transferred to this court.

Under the teachings of GTE Sylvania v. Consumers Union of United States, 445 U.S. 375 (1980), the EDMI court lacked jurisdiction because in neither of the two docketed cases in which they were filed was there a *bona fide* case or

controversy. <u>GTE Sylvania</u> is very instructive on the question of jurisdiction -- as well as compliance with court orders -- in FOIA cases where two separate and competing cases have been brought. There, in the first filed case (a reverse FOIA action), a third-party submitter of information successfully obtained a preliminary injunction barring its release. <u>Id.</u> at 378. In the second filed case (an affirmative FOIA action) a public interest group seeking release of the information, argued that it should not be bound by the earlier case to which it was not a party. <u>Id.</u> at 383-84.

In the appeal of the second case before the Supreme Court, the agency took the position that the injunction imposed by the first court barred it from releasing the records. The Court held that there was a case or controversy because the public interest group and the agency sharply disagreed on the question of whether it could withhold the records on the basis of the first court's order. <u>Id.</u> at 383. The Court ruled in the agency's favor, holding that "persons subject to an injunctive order by a court with jurisdiction are expected to obey that decree until it is modified or reversed." <u>Id.</u> at 387.

Here, the fact pattern is reversed. Plaintiff obtained an order from this court requiring DOJ to release all responsive documents by a date certain and to justify any exemptions through a detailed <u>Vaughn</u> index in a prescribed fashion. (<u>See</u> Dkt. 98, Order). In defiance of the order, DOJ sought a competing ruling from the EDMI district court preventing the release of the records.

In so doing, DOJ essentially brought a reverse FOIA action. The fatal flaw with DOJ's strategy is that an agency cannot sue itself. DOJ cleverly, but improperly, tried to avoid the insurmountable obstacle of the absence of an adverse party by filing its petitions in the EDMI under the pre-existing criminal case numbers of the <u>Bauder</u> and <u>Liang</u> actions as well with the same caption under

miscellaneous case numbers.[17] At the point in time when the civil matters were transferred to the Central District of California, no attorney appearances had been made other than by DOJ. Once transferred, Volkswagen entered an appearance in the <u>Liang</u> action, but DOJ remained the only party in the <u>Bauder</u> action.

Notwithstanding the improprieties, assuming that DOJ's petitions were to have been entertained in the EDMI, DOJ would have been unable to overcome the case or controversy obstacle. As evidenced by the pleadings, there simply is no disagreement between DOJ and Volkswagen in <u>Liang</u> with respect to the sole issue raised by the petition -- whether the Jones Day documents are *per se* to be considered grand jury records under Rule 6(e). DOJ and Volkswagen agree that they are. Hence, there would have been no case or controversy had the petitions been heard by the EDMI court, which would have been compelled to dismiss them under <u>GTE Sylvania</u> for lack of jurisdiction. Likewise, there is no case or controversy in <u>Bauder</u> because there is only one party. Thus, Sixth Circuit law never would have come into play because the court could not have heard the cases.

That said, if this court does choose to consider Sixth Circuit law, the result is the same: the petitions should are denied. The result is unchanged because, as the Special Master held, and as discussed next, this court's earlier reasoning holds true regardless of the body of law that is to be applied. (<u>See</u> Dkt. 152 at 6-7).

### C. The Jones Day records are not "grand jury material"

In its February 5, 2021, order, the court soundly rejected the notion that the Jones Day documents must be considered "grand jury material" within the meaning

---

[17] The case-specific filing appears to be judge shopping in violation of EDMI LCrR 6.1(e) which provides in pertinent part that "[a]ll miscellaneous matters regarding grand juries sitting in Detroit shall be assigned *by random method* to District Judges in active service in Detroit." (emphasis added).

of under Rule 6(e). There is no reason for the court to reconsider its ruling, which is firmly based on binding Ninth Circuit precedent.

The court held that "the production of all material responsive to plaintiff's FOIA Request 'would not establish that any or all of those materials were ever presented to the grand jury, much less shed light on its inner workings.' In Re Optical Disk Drive, 801 F.3d at 1077." (Id. at 6 and 7). The court also characterized the government's reliance on Rule 6(e) as "troubling" due to the absence of evidence of any ongoing grand jury investigation. (Id. at 6). "What's more," the court pointed out, drawing from U.S. v. Dynavac, Inc., 6 F.3d 1407, 1412 (9th Cir. 1993),"'[t]he fear of compromising future grand jury proceedings is further reduced when the request is for business records created for purposes independent of grand jury investigations, which have legitimate uses unrelated to the substance of the grand jury proceedings." (Id. at 7).

The court's reliance on Dynavac and Optical Disk is well-placed, and remains unrebutted by DOJ in its opposition. (See Dkt. 159 at 23-25). In its petitions, DOJ attempted to twist both the facts of Dynavac and this case beyond recognition by cleverly analogizing stickers on grand jury exhibits to the labels Jones Day is said to have placed on the records. (See Dkt. 111-1 at 18 n. 6) The analogy is unavailing. Neither this case nor Dynavac had anything to do with grand jury exhibits.[18]

Because DOJ points to no countervailing Ninth Circuit precedent, there is little need for additional argument or consideration of out-of-circuit authority. In

---

[18] The D.C. Circuit has held that even when a FOIA request specifically seeks grand jury exhibits, among other evidence, the presentation of the material to the grand jury, standing alone, does not automatically exempt the material. See Senate of Puerto Rico v. DOJ, 823 F.2d 574, 584 (D.C. Cir. 1987).

an abundance of caution, however, plaintiff will briefly summarize why DOJ's position is so tenuous with reference to the two seminal Ninth Circuit cases, two seminal D.C. Circuit cases written by legendary jurists that directly construe Rule 6(e) in the FOIA context, and a treatise written by one of the nation's top grand jury scholars.

First and foremost, Rule 6(e)(2), Fed. R. Crim. P., only prohibits disclosure of "a matter occurring before the grand jury." The Request refers only to the Jones Day documents, and plaintiff had no knowledge of any grand jury proceeding. Thus, because he clearly sought the records for their own sake, they do not constitute a "matter occurring before the grand jury." <u>U.S. v. Dynavac, Inc.</u>, 6 F.3d at 1411.

Second, under <u>Optical Disk</u>, the Jones Day records do not become magically cloaked with grand jury secrecy even if they were also subpoenaed (or even viewed) by the grand jury. "The mere fact that a particular document is reviewed by a grand jury does not convert it into a 'matter occurring before the grand jury' within the meaning of Rule 6(e)." 801 F.3d at 1078. (citations omitted).

DOJ's baseless argument was not just recently rejected by this court, but also long ago by the D.C. Circuit. In <u>Washington Post v. DOJ</u>, 863 F.2d 96, 100 (D.C. Cir. 1988), the court held that an agency cannot immunize itself from FOIA simply by publicizing the nexus between the documents sought and the grand jury, chastising DOJ for making such a "questionable at best" argument. Yet, that is precisely what DOJ has done here by repeating the highly disfavored argument and publicizing the ostensible nexus between the Jones Day records and the grand jury. (<u>See</u> Dkt. 71-1, Decl. of Stacy R. Stoller, ¶ 86) ("As such, many of these records were presented to the grand jury or were central to the materials that the prosecution team developed to present to the jury.")

Taking DOJ's extreme argument to its logical conclusion, the disclosure that

some of the Jones Day documents were shown to the grand jury, if true, itself could be said to be a violation of Rule 6(e). Defendant's argument, if accepted, also would mean that the public would never be able to see the evidence of what could be the most audacious and deadly environmental crime in American history.

An earlier decision written by then judge Ruth Bader Ginsburg, also demonstrates how far-fetched DOJ's position is. She opined:

> We have never embraced a reading of Rule 6(e) so literal as to draw "a veil of secrecy…over all matters occurring in the world that happen to be investigated by a grand jury." There is no per se rule against disclosure of any and all information which has reached the grand jury chambers; as the district court correctly observed, the touchstone is whether disclosure would "tend to reveal some secret aspect of the grand jury's investigation."

Senate of Puerto Rico v. DOJ, 823 F.2d at 582. Here, disclosure would revel no secret aspect of the grand jury's investigation.

Similarly, Professor Sara Beale has written that "memorandums and physical evidence that are the product of an independent investigation – and not generated by the grand jury –fall outside the reach of Rule 6(e), even if the independent investigation leads to a grand jury investigation that covers much of the same ground." Beale, et al, *Grand Jury Law and Practice* § 5:6 (2d ed. 2018). Here, Jones Day conducted an internal investigation, the product of which it turned over to the Justice Department. That product is simply not covered by Rule 6(e).

Disregarding the definitive jurisprudence and scholarly commentary, DOJ makes the unbounded leap from a label placed by defense counsel on records provided to DOJ to the grand jury room. That leap is not supported by any rational interpretation of Rule 6(e), let alone case law in the Ninth Circuit or the D.C. Circuit (responsible for the vast majority of FOIA appeals in the country). As this court previously noted, the disclosure of the Jones Day records would reveal

nothing about the grand jury's inner workings.

D. <u>Sanctions should be imposed against DOJ</u>

DOJ has repeatedly crossed the good faith line in this public interest FOIA case, so far with impunity. This time, DOJ has truly outdone itself by using an utterly inappropriate procedural mechanism in an attempt to forum shop a truly baseless argument, and presenting it for the *fourth time* despite the court having already rejected it as "unreasonable" and "troubling." (Dkt. 98, Order, at 5-6). DOJ's conduct shows stunning disrespect for the rule of law and the court.

The filing of the Rule 6(e) petitions should be sanctioned, not only because they lack a good faith basis, but also because they have been interposed for purposes of delay.[19] Due to DOJ's repeated insistence before the Special Master that the petitions raised a "threshold issue," this *case has been stalled from June to the present*: first the court's February 5, 2021 production order was vacated, then it was effectively stayed indefinitely pending the Special Master's ruling, and finally, it was effectively stayed indefinitely pending the district court's review of the Special Master's ruling. (<u>See</u> Dkts. 113, 124, 156-1). Meanwhile, DOJ reports that it is searching for potentially responsive records that it is progressing at the snail's pace of 500 pages per month. (<u>See</u> Dkt. 116 at 5).[20] At this rate, based on

---

[19] Plaintiff's earlier Motion for Sanctions (Dkt. 72), based in part on DOJ's lack of good faith basis in initially asserting the Exemption 3/Rule 6(e) argument, was denied without prejudice. (<u>See</u> Dkt. 79, Order at 18).

[20] By contrast, judging by the pleadings and appearances before the Special Master, DOJ now has lawyers in no fewer than three litigating divisions and two major U.S. Attorney's Offices defending this case. Volkswagen, joining forces with DOJ in supporting its petitions, is now represented by nine lawyers associated with two law firms in four different cities. Plaintiff is represented largely by a single lawyer who is of counsel to a small firm and has yet to be compensated for any work in this public interest FOIA case. <u>See</u> <u>Ibrahim v. DHS</u>, 912 F.3d at 1179 (observing

DOJ's estimate of the number of records, it would take some 2,000 years for DOJ to complete a search that should have been accomplished over three years ago. Clearly DOJ has put the full force of its unbounded resources to bear in thwarting its FOIA obligations and this court's orders, rather than in complying with them, as is its duty.

DOJ's duty in this case was to adhere to it official position on Rule 6(e) as set out in the Justice Manual: **"Rule 6(e) does not cover documents, even subpoenaed documents, that are sought for the information they contain, rather than to reveal the direction or strategy of the grand jury."** Justice Manual, § 9-11.254(3.a) (emphasis added). Its position here is also inconsistent with the Justice Department FOIA Guide, which, like the Manual, cites both Senate of Puerto Rico Senate of Puerto Rico and Washington Post for the same purposes for which they are cited above. (See DOJ FOIA Guide, Exemption 3, at 18-23). Neither the Justice Manual nor the FOIA Guide instruct DOJ attorneys to file a petition under Rule 6(e)(3)(F) in the district in which a grand jury subpoena was issued.

DOJ's failure to comply with own published rules should be considered in assessing whether DOJ has acted in bad faith. This case would have been over long ago had DOJ just complied with those rules and the court's orders. Instead, the agency is engaging in the type of delay tactics it used in a FOIA case on the docket of the Central District of California for *23 years* after a professor sought FBI records on John Lennon. See Wiener v. FBI, No. CV-83-1720-RMT (C.D. Cal.) and 943 F.2d 972 (9th Cir. 1991). DOJ's scorched earth litigation and no-holds barred defense tactics are also akin to those used against an academic wrongfully

---

disparity of resources in civil rights fee award case where professor was represented by a small firm).

put on the "Do Not Fly" list. See Ibrahim v. DHS, 912 F.3d at 1180. Judging by its misconduct in this case, DOJ has learned nothing from those landmark cases.

To ensure full and faithful compliance going forward, the court should reinstate the provisions of its February 5, 2021, order vacated by the Special Master, and require by a date certain (with no extensions permitted) that DOJ be required to produce the 281 records that DOJ identified as responsive over two years ago and a Vaughn index to support any withholdings.[21]

Sanctions should be imposed both to punish DOJ for its unrelenting bad faith and to compel prospective compliance.[22] The punitive sanctions, at a minimum, should include DOJ payment of plaintiff's legal fees for each of its briefs on the baseless Exemption 3/Rule 6(e) argument. See Ibrahim v. DHS, 912 F.3d at 1182-83 (resubmission by the government of baseless arguments factors into bad faith calculus). The coercive sanctions (of which the court warned in its February 5, 2021, Order) should be applied to the attorney's fees due plaintiff, who clearly has prevailed in this action. See Poulsen v. DOD, 994 F.3d 1046 (9th Cir. 2021) (plaintiff is prevailing party in FOIA case where court has ordered production of

_____

[21] Given the number of extensions for which DOJ has successfully argued in informal proceedings before the Special Master (including for a *full month* to prepare an earlier reply brief in support of the very petitions being argued again here), the court should order that there be no more extensions of any deadlines without District Court approval upon a properly noticed motion. DOJ also should be ordered to provide a court reporter at its expense for all further proceedings before the Special Master.

[22] DOJ represented before the Special Master that the petitions were approved by the Office of the Associate Attorney General. Under the circumstances, the court may wish to consider issuing an Order to Show Cause to the Associate Attorney General. See Cobell v. Babbitt, 37 F. Supp. 2d 6 (D.D.C. 1999) (holding the Secretaries of Interior and Treasury in contempt for DOJ litigation misconduct); See also Cobell v. Babbitt, 188 F.R.D. 122 (D.D.C. 1999) (awarding plaintiffs expenses and attorney's fees of $624,643.50 for the misconduct).

responsive records by a date certain); <u>Rosenfeld v. United States</u>, 859 F.2d 717, 725 (9th Cir. 1988) (court affirmed interim fee award after agency withheld all documents for three years, reasoning that FOIA's express purpose would be contravened if agency could achieve unjustified withholding because of its financial capacity to outlast statute's intended beneficiaries).

## CONCLUSION

DOJ's attempt to abuse its power to contravene FOIA and the rules and orders of this court should not be countenanced. For all of the reasons stated above, the petitions should be dismissed or denied and sanctions should be imposed.

Dated: December 6, 2021                    Respectfully submitted,


                                           /s/_____
                                           Daniel Jacobs
                                           CA Bar No. 295494
                                           ENENSTEIN PHAM & GLASS LLP
                                           12121 Wilshire Blvd., Suite 600
                                           Los Angeles, CA 90025
                                           Telephone: (310) 899-2070
                                           Facsimile: (310) 496-1930
                                           *Attorneys for Plaintiff Lawrence P. Kalbers*

24