Honorable Suzanne H. Segal (Ret.)
Signature Resolution
633 W. 5th Street, Suite 1000
Los Angeles, CA 90071

Special Master

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAWRENCE KALBERS, | No. 2:18-CV-8439 FMO (PJWx) |
| Plaintiff, | SPECIAL MASTER'S REVISED REPORT AND RECOMMENDATION RE DEFENDANT'S PETITIONS REGARDING GRAND JURY MATERIAL SOUGHT IN FOIA LITIGATION |
| v. | |
| U.S. DEPARTMENT OF JUSTICE, | |
| Defendant. | |

This Revised Report and Recommendation is submitted to the Honorable Fernando M. Olguin, United States District Judge, pursuant to Federal Rule of Civil Procedure 53. This revision follows the District Judge's October 2022 Order requiring the Special Master to address additional issues in this Freedom of Information Act ("FOIA") case as well as the Special Master's orders requiring the parties to provide further briefing. Following review of the supplemental briefs, the Special Master continues to recommend that the Petitions be denied and that the Department of Justice ("Defendant" or "DOJ") be ordered to produce documents responsive to Plaintiff's FOIA request or provide a sufficient *Vaughn* index justifying each withholding of information. The Special Master notifies the parties

ATTACHMENT

that objections to this Revised Report and Recommendation are due within fourteen (14) days of the date of the Report.

**BACKGROUND**

 **A. "Dieselgate"**

This FOIA action arises from "Dieselgate," the Volkswagen ("VW") "clean diesel" emissions scandal that led to numerous criminal and civil enforcement actions.  In two criminal proceedings in the United States District Court in the Eastern District of Michigan (*U.S. v. Liang*, Case No. 16-CR-20394, and *U.S. v. Bauder*, Case No. 19-CF-20033), the Department of Justice obtained indictments against VW and several of its subsidiaries, as well as twelve individuals.  In January 2017, VW and two individuals pleaded guilty to various charges.  One additional company has also pleaded guilty.  The balance of the indictments remain pending.

VW's plea agreement (the "Plea Agreement") resolves all criminal charges against VW arising from Dieselgate.  (Dkt. No. 71-4, Plea Agreement.)  In addition to a fine and other requirements, the agreement requires VW to cooperate with DOJ's ongoing criminal investigation and provides for an independent compliance monitor to be appointed for a three-year term.  (*Id.*)

In the early stages of the criminal investigation, VW hired the law firm Jones Day to conduct an internal investigation and then "to present factual evidence to the DOJ."  (Dkt. No. 71-1 at 11-12, Decl. of Stacy Stoller ¶ 35.)  That investigation resulted in the collection of 6.5 million documents (the "Jones Day documents"), which were provided to the DOJ pursuant to a grand jury subpoena.  (Dkt. No. 71-1 at 9-10, Stoller Decl. ¶ 34; Dkt. No. 47-2 at 7 ¶ 35, Answer of Intervenor Volkswagen AG.)

## B. The FOIA Request

Plaintiff Lawrence Kalbers ("Plaintiff") is a professor who is writing an article on the civil and criminal actions brought by DOJ against VW based on its use of defeat devices and investigating what he suggests may have been a "sweetheart" plea deal for VW. Relevant here, Professor Kalbers's FOIA request seeks "all 'factual evidence' presented by Jones Day to the [DOJ] as the term i[s] used . . . [in] of [VW's] 2017 Annual Report."

Defendant has, from the start, resisted efforts to produce the Jones Day documents. Defendant insists that FOIA Exemption 3 applies because all the documents are protected by grand jury secrecy under Federal Rule of Criminal Procedure 6(e)(2) since the DOJ obtained them pursuant to a grand jury subpoena.

## C. The Petitions

The District Judge assigned to the FOIA matter previously issued several rulings adverse to Defendant, including the Court's February 5, 2021 order ("Order re: *Vaughn* Index") requiring Defendant to produce all responsive documents and provide an amended *Vaughn* index as to all withheld documents. The Court expressly found that Defendant repeatedly refused to comply with its FOIA obligations and this Court's orders in good faith. Defendant responded to the Order re: *Vaughn* Index by filing two substantially identical "Petition[s] Regarding Grand Jury Material Sought in Freedom of Information Act Litigation" (one sealed, one not) in connection with each of the two (resolved) criminal cases — the *Liang* and *Bauder* matters — filed in the United States District Court for the Eastern District of Michigan, for a total of four petitions (collectively, the "Petitions").

The thrust of the Petitions, which are brought under Rule 6(e)(3)(E)(i), is that: (1) the Eastern District of Michigan is where the grand jury was impaneled and where the documents are located; (2) a petition to disclose information protected by Rule 6(e) must be filed "in the district where the grand jury convened" (Fed. R. Civ.

P. 6(e)(3)(F)); (3) the documents at issue are protected from disclosure by principles of grand jury secrecy; and (4) consequently, Defendant must have the Eastern District of Michigan resolve the matter in order not to run afoul of Defendant's obligations under Rule 6(e)(2)(B) (subject to exceptions, "an attorney for the government" "must not disclose a matter occurring before the grand jury"). The briefs in support of the Petitions relied heavily on Sixth Circuit law as to what constitutes "a matter occurring before the grand jury" under Rule 6(e).

## D. The Special Master's Initial Report and Recommendation

Via a sealed order, District Judge Sean F. Cox (who presided over the *Liang* and *Bauder* matters) transferred the Petitions to this Court. This Court then consolidated the Petitions with the FOIA action. Plaintiff filed a response. VW filed a 20-page response in support of the Petitions. Defendant filed reply briefs in support of the Petitions ("Defendant's Reply"). Relying on Sixth Circuit authority, the Special Master recommended denial of the Petitions.[1] In the intervening period, the Ninth Circuit issued a decision permitting VW to intervene in this action.

## E. The District Judge's Order Re: Governing Law

The parties filed objections to the Special Master's Report and Recommendation. The District Judge issued an order on August 31, 2022, addressing the objections. In that Order, the District Judge stated:

> The Special Master shall direct the parties to address the governing law for determining whether the documents at issue are protected from disclosure under rule 6(e) of the Federal Rules of Criminal Procedure. Finally, the United States shall – by a deadline to be set by the Special Master – show via a revised *Vaughn* Index that the documents at issue are protected from disclosure under Rule 6(e). *See*

---

[1] This Order addresses only the arguments and issues determinative of the transferred Petitions. Simply because an argument or issue is not mentioned in this ruling does not mean that the Special Master has not considered it. Rather, she has thoroughly reviewed (and considered) briefs submitted by all parties but endeavors to keep this Order straightforward and concise.

*United States v. Dynavac, Inc.*, 6 F.3d 1407, 1412 (9th Cir. 1993) ("[W]e think that the disclosure of business records independently generated and sought for legitimate purposes, would not seriously compromise the secrecy of the grand jury's deliberations.") (internal quotation marks omitted).

(Dkt. No. 190.)

The Special Master took no action on this matter while various motions were pending before the District Judge. When the District Judge resolved the motions in December 2022, the Special Master requested a status update from the parties.

### F. The Special Master's Order for Further Briefing

In supplemental briefs (and responses thereto), the parties agreed that Ninth Circuit authority should be applied to the resolution of the Petitions. However, Defendant and VW argued that the Ninth Circuit's governing law mandates granting the Petitions whereas Plaintiff argued that Ninth Circuit law mandates denial of the Petitions. The Special Master found that the Ninth Circuit provides the governing law for the pending Petitions but concluded that she required further record development to address whether the withheld materials qualify as "materials presented to the grand jury" within the meaning of Rule 6(e), which records fall outside of that designation, and which records, if any, should be disclosed after considering all the factual circumstances. (Dkt No. 228.)

After conferring with the parties, the Special Master ordered further briefing on the following outstanding legal issues:

1. The parties shall address the issue of whether the records at issue constitute "agency records" within the meaning of FOIA.

2. How is Rule 6(e) construed when records are requested under FOIA?

a. When records that the government obtained under grand jury subpoena are responsive to a FOIA

request, does the fact that they are sought under FOIA—rather than under an agency subpoena or through civil discovery—affect the analysis of whether the records are protected by Fed. R. Crim. P. 6(e)?

b. If so, what is the proper standard for determining when Rule 6(e) protects grand jury-subpoenaed records from public disclosure under FOIA? Is any further factual development on such matters needed to resolve the Petitions?

c. Is further factual development regarding the relationship between the records at issue and the grand jury process necessary to resolve the Petitions?

3. Is the FOIA Request, interpreted to seek millions of records, unduly burdensome? What are the methods or techniques that can be utilized to mitigate the burden?

4. Has release of the records already been authorized under Rule 6(e)? Does the Court have the authority to revise any of its earlier determinations?

5. Should materials sealed by Judge Cox be unsealed? Can the records be unsealed and produced for a limited purpose pursuant to another Court's protective order? If sealed records are not publicly disclosed, does an order requiring release under a protective order violate the seal? Because Judge Cox transferred the petitions to the Central District, may the District Judge in the Central District unseal the materials previously sealed by Judge Cox?

(Dkt. No. 239.)

This Revised Report and Recommendation follows receipt of the parties' briefs regarding these outstanding legal issues.

1    **DISCUSSION**

2    A. <u>**Issue No. 1**</u>: **Do the records at issue constitute "agency records" within the meaning of FOIA?**

3    FOIA mandates that "each agency, upon any request for records which (i)

4    reasonably describes such records and (ii) is made in accordance with published

5    rules stating the time, place, fees (if any), and procedures to be followed, shall make

6    the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). A threshold

7    inquiry is whether the records sought are "agency records" within the meaning of

8    FOIA. *U.S. Dept. of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989). "The burden

9    is on the agency to demonstrate, not the requester to disprove, that the materials

10   sought are not 'agency records' or have not been 'improperly' 'withheld.' " *Id.* at

11   142 n.3.

12   The Supreme Court has provided a two-prong test to determine if a document

13   is an agency record: (1) the agency "either create[d] or obtain[ed] the requested

14   materials," and (2) the agency is "in control of the requested materials at the time

15   the FOIA request is made." *Tax Analysts*, 492 U.S. at 144–45 (internal quotation

16   marks omitted).

16   a. **The Parties' Contentions**

17   Plaintiff argues that "it is undisputed that DOJ obtained the requested records

18   (from Volkswagen) and was in control of the requested records at the time the FOIA

19   request was made. Thus, it is beyond cavil that the records requested in this case

20   constitute agency records." (Dkt. No. 240 at 5.)

21   As for DOJ, it "is not arguing that the records at issue here are not agency

22   records. Rather, DOJ maintains that this case should be disposed of on [other]

23   grounds . . . ." (Dkt. No. 241 at 19.) It contends that, "[b]ecause DOJ is largely

24   unable, both practically and legally, to determine or publicly explain the ways in

25   which each of the millions of records at issue here were in fact used or controlled,

1   DOJ is not advancing an argument that any of the records at issue are not agency

2   records." (*Id.* at 20.)

3          VW argues that "the only 'agency-related business' DOJ has identified as

4   relevant to the millions of VW documents it possesses is DOJ's role in grand jury

5   proceedings. DOJ has restricted access to VW's documents for that limited use. To

6   the extent that VW's records would not reveal anything about DOJ's official duties

7   and work in connection with the grand jury, those records necessarily would be

8   'unrelated to agency business,' and thus 'not agency records' subject to FOIA."

    (Dkt. No. 242 at 7.)

9          **b. Analysis**

10         Since there does not appear to be a dispute as to the first prong of the *Tax*

11  *Analysts* test, the Special Master focuses on the second prong: whether DOJ was "in

12  control" of the files when the FOIA request was made.  The Supreme Court has

13  clarified that, "[b]y control we mean that the materials have come into the agency's

14  possession in the legitimate conduct of its official duties" or "in connection with the

    transaction of public business." *Tax Analysts*, 492 U.S. at 145-46.

15         In the Ninth Circuit, "court[s] may consider a range of evidence to determine

16  whether specified records are in the agency's possession in connection with agency-

17  related business, or instead involve personal matters not related to the agency's

18  'transaction of public business.' " *Rojas v. Fed. Aviation Admin.*, 941 F.3d 392, 409

19  (9th Cir. 2019).  "[E]vidence relating to the agency's use of documents (including

20  its system for preserving, retrieving, or disposing of the documents, and any reliance

21  on the documents by agency employees) may be relevant to this inquiry."  *Id.*

22         As noted, it is DOJ's burden to show that the records sought are not "agency

23  records" within the meaning of FOIA.  As to this, DOJ has declined to argue either

24  way, though it does note that the documents "were all loaded into a DOJ database

    accessible to the prosecution team."  (Dkt. No. 241 at 20.)

25

VW, on the other hand, vehemently denies that the documents it produced pursuant to the grand jury subpoena are agency records.  It advances three arguments in support.  First, it contends that, "if VW's documents subpoenaed by the grand jury were not used by DOJ or the grand jury such that they would 'reveal what occurred before the grand jury' (and [thus] not subject to Rule 6(e)), then those documents are not DOJ agency records.  Rather, VW's records would be nothing more than VW's 'personal materials' that happen to be in DOJ's possession but are 'unrelated to agency business' and therefore not agency records subject to FOIA."  (Dkt. No. 242 (citation omitted).)  This argument is unavailing for the simple reason that DOJ "cannot easily ascertain the extent to which prosecutors reviewed or used the overwhelming majority of the millions of records in this vast collection."  (Dkt. No. 241 at 20.)

Citing *McErlean v. U.S. Dept. of Justice*, 1999 WL 791680, at *11 (S.D.N.Y. Sept. 30, 1999), VW next argues that its documents are not agency records because DOJ has restricted access to them for the limited purpose of the grand jury investigation.  In *McErlean*, a source provided certain records to two prosecutors but retained control over their dissemination via an agreement with those attorneys.  *Id.* Pursuant to that agreement, the source limited the use of the work files to the two attorneys and prohibited the integration of the files "into the agency's record system or files."  *Id.*  By contrast,  there is no evidence here of a pre-existing agreement between DOJ and VW giving the latter similar control over the documents' dissemination.  Moreover, while the documents in *McErlean* were limited to the use of the two prosecutors, the Jones Day documents in this case are accessible to DOJ's Criminal Division, other members of the prosecution team, and their support staff. Accordingly, the Special Master finds that the limitations imposed by the source in *McErlean* are simply not present here.

Lastly, VW argues that, although DOJ possesses the Jones Day documents, it is not at liberty to "use and dispose of the record[s] as it sees fit," *see Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 218 (D.C. Cir. 2013), because VW retains a property interest in them.  However, VW presents no evidence that it produced the documents to DOJ pursuant to a contract, license or agreement that restricted the government's right to use, transfer, or dispose of the records.  *Cf. Tax Analysts v. U.S. Dept. of Justice*, 913 F. Supp. 599 (D.D.C. 1996), aff'd without opinion, 107 F.3d 923 (D.C. Cir. 1997), cert. denied, 522 U.S. 931 (1997) ("*Tax Analysts II*") (holding that, "although DOJ certainly possessed the West-provided data, its right to use, transfer and/or dispose it was greatly restricted [due to a licensing agreement], and thus DOJ did not 'control' the data in any common sense reading of that word."); *Gilmore v. U.S. Dept. of Energy*, 4 F. Supp. 2d 912, 918 (N.D. Cal. 1998) (holding that, as in *Tax Analysts II*, the U.S. Department of Energy's possession of a video conferencing software did not amount to 'control' for purposes of FOIA because it only possessed a limited license to use it).  In the absence of such evidence, there is no basis to find that DOJ's control of the records was limited in any way.

Having determined that DOJ obtained the requested materials in the legitimate conduct of its official duties — i.e., the grand jury investigation — and because neither DOJ nor VW has made a sufficient showing that DOJ lacked control over the documents, the Special Master finds that the Jones Day documents are agency records within the meaning of FOIA.

**B.  <u>Issue No. 2</u>: FOIA and Federal Rule of Criminal Procedure 6(e)**

The Special Master next considers the government's duty to disclose records when a FOIA request implicates Federal Rule of Criminal Procedure 6(e).  Plaintiff insists that all Jones Day documents must be disclosed because his FOIA request was neutral on its face, making no mention of a grand jury, and, as such, would not disclose matters occurring before a grand jury.  DOJ argues "when records that the

government obtained under grand jury subpoena are sought *under FOIA*, and release would publicly disclose that fact, no 'competing interests' come into play: Courts have uniformly held that Rule 6(e) bars the public release of grand jury-subpoenaed records, like those at issue here, under FOIA."  (Dkt. No. 241 at 8 (emphasis in original).)   VW argues "[w]here, as here, a FOIA plaintiff requests materials and information that are in DOJ's possession solely because a grand jury subpoenaed them, their disclosure by DOJ would necessarily reveal 'matters occurring before a grand jury,' and thus Rule 6(e) prohibits such disclosure. [Citation.] No further analysis of the purpose of the FOIA request is needed because the exceptions to Rule 6(e)—including whether the requester has some 'particularized need' for the documents in another proceeding—do not apply in the FOIA context. [Citation.]" (Dkt. No. 242 at 7.)

### a.  FOIA Exemptions to be "Narrowly Construed"

"The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed."  *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978) (internal citation omitted).  FOIA "was enacted to facilitate public access to [g]overnment documents" and "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny."  *Dept. of State v. Ray*, 502 U.S. 164, 173 (1991) (citations and internal quotation marks omitted).

FOIA contains nine exemptions from disclosure.  *See* 5 U.S.C. § 552(b)(1)-(9).  While FOIA is intended to promote government transparency, its exemptions are "intended to have meaningful reach and application."  *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989).  This is because Congress has recognized that "public disclosure is not always in the public interest," *C.I.A. v. Sims*, 471 U.S. 159, 167 (1985), as "legitimate governmental and private interests could be harmed by release of certain types of information," *F.B.I. v. Abramson*, 456 U.S. 615, 621

(1982).  Through the exemptions, Congress sought to reach a "workable balance" between the public's right to know and the government's need to protect confidential information.  *John Doe Agency*, 493 U.S. at 152.  Still, "these limited exemptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act."  *Dept. of Air Force v. Rose*, 425 U.S. 352, 360 (1976).  Therefore, the exemptions "must be narrowly construed."  *Id.*

### b.  FOIA Exemption 3 and Federal Rule of Criminal Procedure 6(e)

In declining to disclose the Jones Day documents, DOJ relies on Exemption 3, which concerns information that is "specifically exempted from disclosure by statute."  5 U.S.C. § 552(b)(3).  The relevant statute here is Rule 6(e) of the Federal Rules of Criminal Procedure, which prohibits disclosure of "a matter occurring before the grand jury."  *See Lopez v. U.S. Dept. of Just.*, 393 F.3d 1345, 1349 (D.C. Cir. 2005) (quoting Fed. R. Crim. P. 6(e)(2)(B)) ("[R]equests for documents related to grand jury investigations implicate FOIA's third exemption, because Rule 6(e) of the Federal Rules of Criminal Procedure prohibits government attorneys and others from 'disclosing a matter occurring before the grand jury.' ").

Although Rule 6(e) is a FOIA exemption, it is not a categorical bar to disclosure.  *United States v. Dynavac, Inc.*, 6 F.3d 1407, 1411 (9th Cir. 1993*)*.  That is, Rule 6(e) does not "draw 'a veil of secrecy ... over all matters occurring in the world that happen to be investigated by a grand jury.' "  *Senate of the Com. of Puerto Rico on Behalf of Judiciary Comm. v. U.S. Dept. of Just.*, 823 F.2d 574, 582 (D.C. Cir. 1987) (quoting *SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1382 (D.C. Cir. 1980) (en banc)); .  *"*The legislative history and cases construing the rule indicate that it was intended to preserve the traditional rule of grand jury secrecy with certain limited exceptions.*"  Fund for Const. Gov't v. Nat'l Archives & Recs. Serv.*, 656 F.2d 856, 869 (D.C. Cir. 1981) (citations omitted).  Thus, it " 'is intended only to protect against disclosure of what is said or takes place in the grand jury room ... it

is not the purpose of the Rule to foreclose from all future revelation to proper authorities the same information or documents which were presented to the grand jury.' " *Dynavac*, *supra*, at 1411 (citation omitted); *Bagwell v. Dep't of Justice*, 588 F. Supp. 3d 58, 68 (D.D.C. 2022) ("The Rule [6(e)] does not prohibit the disclosure of information coincidentally before the grand jury [which can] be revealed in such a manner that its revelation would not elucidate the inner workings of the grand jury." (internal citations omitted)).

The agency resisting public disclosure has "the burden of proving the applicability of an exception." *Minier v. Central Intelligence Agency*, 88 F.3d 796, 800 (9th Cir. 1996) (citing 5 U.S.C. § 552(a)(4)(B)).   Nonetheless, "unlike actions under other FOIA exemptions, agency decisions to withhold materials under Exemption 3 are entitled to some deference." *Church of Scientology Int'l v. U.S. Dept. of Just.*, 30 F.3d 224, 235 (1st Cir. 1994).

### c.  Scope of Court's Analysis

The scope of a court's analysis when the government invokes Rule 6(e) depends on the context in which disclosure is sought and the identity of the entity or person seeking disclosure.  In certain contexts, discussed below, courts will attempt to balance the competing interests of disclosure and secrecy.  In other contexts, like that presented here, courts simply focus on whether the materials sought are directly associated with the grand jury process and/or reveal the inner workings of the grand jury.

### i.  Balancing Competing Interests: Disclosure Versus Secrecy

Courts will attempt to balance the competing interests of disclosure and secrecy when a government investigation is being conducted parallel to a criminal investigation.  For instance, in *Dresser*, *supra*, 628 F.2d at 1370, the Securities and Exchange Commission ("SEC") issued a subpoena duces tecum to Dresser Industries, Inc. ("Dresser") seeking documents relevant to SEC's investigation into

the company's alleged illegal use of corporate funds. At the time, Dresser was also being criminally investigated for the same conduct. *Id.* Dresser resisted the subpoena, arguing, among other things, that Rule 6(e) prohibited the production of the documents because many or all of them had already been produced pursuant to a grand jury subpoena. *Id.* at 1381-82. The appellate court rejected this argument, noting that the purpose of Rule 6(e) was "to protect the identities of witnesses, or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations or questions of the jurors, and the like." *Id.* at 1382. Because the SEC's investigation was related to its enforcement of the securities laws, and further because Dresser's documents were independently created for a business purpose and "not directly related to the prospect of a grand jury investigation," the court held that the documents were not protected from disclosure. *Id.* at 1383.

Similarly, in *Dynavac*, the Internal Revenue Service ("IRS") issued administrative summonses to Dynavac and three individuals seeking the company's business book and records. 6 F.3d at 1410. Like in *Dresser*, the Dynavac respondents resisted on the grounds that the documents were previously submitted to the grand jury as part of a criminal investigation. *Id.* Unpersuaded, the Ninth Circuit held that Rule 6(e) " 'is intended only to protect against disclosure of what is said or takes place in the grand jury room . . . it is not the purpose of the Rule to foreclose from all future revelation to proper authorities the same information or documents which were presented to the grand jury.' " *Id.* at 1412 (citing *U.S. v. Interstate Dress Carriers, Inc.*, 280 F.2d 52, 54 (2d Cir. 1960)). "Thus, if a document is sought for its own sake rather than to learn what took place before the grand jury, and if its disclosure will not compromise the integrity of the grand jury process, Rule 6(e) does not prohibit its release." *Dynavac*, *supra*, at 1411-12. "In sum, we think that the disclosure of business records independently generated and

13

sought for legitimate purposes, would not 'seriously compromise the secrecy of the grand jury's deliberations.' " *Id.* at 1412 (citations omitted).

Courts also balance the competing interests of disclosure and secrecy in cases where a civil litigant attempts to obtain grand jury materials through discovery. In such cases, the Supreme Court has held that "[p]arties seeking grand jury transcripts under Rule 6(e) must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed." *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 222 (1979); *Dennis v. United States*, 384 U.S. 855, 869 (1966). Even when the grand jury proceedings have concluded, the Court highlighted the need to protect "the functioning of future grand juries." *Id.* Thus, "disclosure is appropriate only in those cases where the need for it outweighs the public interest in secrecy, and that the burden of demonstrating this balance rests upon the private party seeking disclosure. It is equally clear that as the considerations justifying secrecy become less relevant, a party asserting a need for grand jury transcripts will have a lesser burden in showing justification." *Id.* at 223.

In *In re Optical Disk Drive Antitrust Litigation*, 801 F.3d 1072, 1074 (9th Cir. 2015), the Ninth Circuit considered a motion to quash a subpoena issued by Dell, Inc. (and others) to the Department of Justice, Antitrust Division, in a civil antitrust suit. Dell sought certain tape recordings and transcripts of conversations made by the FBI as part of a criminal antitrust investigation. Two months after Dell's request, the recordings were provided to a grand jury pursuant to a subpoena. *Id.* One of the individuals on the recordings, John Doe, moved to quash Dell's subpoena pursuant to Rule 6(e) because the recordings had been turned over to the grand jury. *Id.* The district court denied the motion to quash after concluding that the recordings are not "a matter occurring before the grand jury." *Id.*

On appeal, the appellate court first rejected the suggestion that it adopted the " 'effect' test"[2] used in other jurisdictions to determine whether a matter occurred before the grand jury. *Optical Disk*, 801 F.3d at 1077. Nonetheless, the court noted that certain factors relevant to the "effect" test can help determine whether a particular item will reveal some aspect of the inner workings of the grand jury. *Id.* The court observed that the Dell subpoena sought "only to discover 'recordings of conversations in which a present or former officer, director or employee of [Defendant] was one of the participants,' not what took place before the grand jury." *Id.* Further, "[t]he mere fact that the subpoenaed recordings were created as part of a criminal investigation using a cooperating witness acting under the FBI's supervision does not automatically trigger Rule 6(e) protection." *Id.* at 1078. Because the recordings were made two months before they were turned over to the grand jury, it was "theoretically possible that a grand jury might never have been empaneled." *Id.* The Ninth Circuit thus affirmed the district court's order denying Doe's motion to quash, holding that "Doe has not demonstrated that the tape recordings and transcripts were a product of the grand jury's investigation, much less that their revelation would compromise the integrity of the grand jury's deliberative process." *Id.* (citation omitted).

### ii.  The Inner Workings of the Grand Jury

In the FOIA context, "[t]he motive for a[ ] FOIA request is not relevant to whether the information must be disclosed." *John Doe Corp. v. John Doe Agency*, 850 F.2d 105, 108 (2d Cir. 1988), judgment rev'd on other grounds, 493 U.S. 146 (1989), reh'g denied, 493 U.S. 1064 (1990). Instead, courts consider whether the materials are "directly associated with the grand jury process, such as affidavits and

---

[2]  "The 'effect' test determines whether disclosure of a particular requested item will reveal some secret aspect of the inner workings of the grand jury." *See Dynavac*, 6 F.3d at 1413.

deposition transcripts" or whether they are "from business records or similar documents 'created for purposes independent of grand jury investigations, which have legitimate uses unrelated to the substance of the grand jury proceedings.' " *Id.* at 109 (citing *Dynavac, supra*, 6 F.3d at 1412); *see also Bagwell*, 588 F. Supp. 3d at 68. This Court must examine whether the materials here are "associated with the grand jury process," or "created for independent purposes."

### d. Analysis

Applying these legal principles, the Special Master is unpersuaded that materials produced pursuant to a grand jury subpoena are necessarily barred from disclosure. DOJ and VW rely, in part, on *Fund for Const. Gov't v. National Archives and Records Service*, 656 F.2d 856 (D.C. Cir. 1981), for this assertion. There, the plaintiff sought approximately 500,000 pages of documents generated in the course of six investigations conducted by the Watergate Special Prosecution Force. *Id.* at 860. The government opposed the request on several grounds, including Rule 6(e). *Id.* at 868-69. On appeal, the court determined that none of the enumerated exceptions to Rule 6(e)'s prohibition on disclosure were applicable, meaning that the "general rule and not its exceptions" governed the case. *Id.* at 868. "Specifically, the present inquiry does not require the Court to balance the interest in continued secrecy against the particular interest in disclosure, *see Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 223, 99 S.Ct. 1667, 1675, 60 L.Ed.2d 156 (1979), but rather requires a determination of whether disclosure would, in the language of the rule, 'disclose matters occurring before the grand jury.' " *Id.* at 869. Because the documents at issue in the case "were not obtained for any independent purpose but were obtained for use in grand jury investigations[, . . . ] their disclosure would reveal matters occurring before the grand jury." *Id.* at 870.

The Special Master declines to adopt the *Fund for Constitutional Government*'s approach under the facts presented here. As an initial matter, courts

have routinely rejected the *per se* rule advanced by DOJ and VW. *See Dynavac*, 6 F.3d at 1412 (Rule 6(e) " 'is intended only to protect against disclosure of what is said or takes place in the grand jury room . . . it is not the purpose of the Rule to foreclose from all future revelation to proper authorities the same information or documents which were presented to the grand jury.' "); *Senate of P.R.*, 823 F.2d at 582 ("There is no *per se* rule against disclosure of any and all information which has reached the grand jury chambers...."); *Church of Scientology Int'l*, 30 F.3d at 236 ("It cannot be that exposure to the grand jury immunizes information from future disclosure, regardless of its impact on the interest underlying Rule 6(e).").

Moreover, the facts of *Fund for Constitutional Government* are distinguishable. In the *Fund*, the Watergate Special Prosecution Force was created and directed by the Attorney General to investigate and prosecute violations of the law arising from the Watergate scandal. *See United States v. DeMarco*, 401 F. Supp. 505, 507 (C.D. Cal. 1975), aff'd, 550 F.2d 1224 (9th Cir. 1977). The documents sought were thus the result of the investigation and directly linked to criminal prosecution. They included names of grand jury witnesses, quotes or summaries of grand jury testimony, evaluations of testimony, discussions regarding the scope, focus, and direction of the grand jury investigations, documents considered by the grand jury, and the grand jury's conclusions. *See Fund for Const. Gov't*, 656 F.2d at 869. Here, the VW Supervisory Board retained "Jones Day to conduct an extensive, independent, and comprehensive investigation" into two Notices of Violation it received in September and November 2015 from the Environmental Protection Agency. (Dkt. No. 180-1, Decl. of Jason M. Weinstein ¶¶ 2–3.) "Jones Day's responsibilities included collecting, reviewing, and producing documents to DOJ at the direction of Volkswagen in response to [an October 2015] grand jury subpoena." *Id.*, Weinstein Decl. ¶ 6. Thus, while the Jones Day documents consist of VW's business records that were collected and produced in response to the grand

jury subpoena, they were "*created* for purposes independent of grand jury investigations, [and] have legitimate uses unrelated to the substance of the grand jury proceedings." *Dynavac*, 6 F.3d at 1412 (emphasis added).

The Special Master therefore finds that DOJ has failed "to offer some support for its claim that release of the sought-after documents would compromise the secrecy of the grand jury process." *Church of Scientology Int'l*, 30 F.3d at 236. It continues to remain unclear which of the millions of records were actually presented to and/or considered by the grand jury, rendering it virtually impossible for the public to glean any information about the grand jury's investigation or deliberation. There has also been no showing that there is something inherent in the documents — e.g., witness lists, summaries of grand jury testimony, copies of subpoenas, and the like — that would reveal any information about the grand jury. Because neither the DOJ nor VW has made a sufficient showing that the records would somehow "elucidate the inner workings of the grand jury," *Senate of P.R.*, 823 F.2d at 582, the Special Master recommends that the Jones Day documents be produced in their entirety, subject to the restrictions to address burdensomeness concerns. These restrictions are to be determined following the submission of recommended protocols, as discussed in the conclusion of this Report.

## C. <u>Issue No. 3</u>: Is the FOIA Request unduly burdensome? What are the methods or techniques that can be utilized to mitigate the burden?

The Special Master next asked the parties to address whether Plaintiff's FOIA request is unduly burdensome and, if so, what methods or techniques could be used to mitigate the burden. In response, DOJ argues that "Plaintiff's FOIA request is fatally flawed because it imposes such an unreasonable burden that DOJ has no legal obligation to respond to it. Indeed, DOJ is not aware of any case that has required the processing of so many documents in response to a FOIA request. The burdensomeness of Plaintiff's request is an independent ground to dismiss his

claims. That is because, as multiple courts have recognized, 'there are limits to the lengths to which an agency must go in responding to a FOIA request,' *Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657, 664 (D.C. Cir. 2003), and a request that requires an agency to process more than 69 million pages of records steps well beyond those limits. *See Nat'l Sec. Couns. v. CIA*, 969 F.3d 406, 410 (D.C. Cir. 2020) (holding that an agency can 'decline to process' a request that would require it to conduct 'an unreasonably burdensome search')." (Dkt. No. 241 at 17-18.)

VW joins the DOJ's argument, but "adds that one particularly burdensome aspect is the need for both VW and DOJ to address the confidential commercial and financial information as well as personal information of VW employees (or those of VW's affiliates) contained in each of those documents." (Dkt. No. 242 at 18.)

Plaintiff cites both procedural and substantive reasons to deny DOJ's argument. First, Plaintiff contends that the issue of burdensomeness should have been raised in a properly noticed motion before the District Court. Plaintiff next argues "that DOJ's burdensomeness defense fails for at least four reasons: (1) DOJ failed to assert the defense in its Answer; (2) DOJ failed to assert the defense in its summary judgment motion; (3) the District Court has already ordered DOJ to produce all responsive records; and (4) the Ninth Circuit has not recognized such a defense to a FOIA action." (Dkt. No. 246 at 6.) As a final point, Plaintiff has expressed his willingness to "voluntarily exclude[ ] all [3.3-4.3 million] untagged records from the scope of the Request. According to the numerical data that DOJ has provided, that reduction should bring the number of records down to a more manageable 12-22% of the original 5.9 million record estimate." (*Id.* at 9-10.)

### a. Legal Principles

Although FOIA is intended to facilitate public access to government documents, courts have recognized certain limits to such requests. For instance, FOIA "only gives a right of access to agency records in existence. It does not confer

a right to have the government generate agency records, either by creation, subpoena or contract demand." *Forsham v. Califano*, 587 F.2d 1128, 1136 (D.C. Cir. 1978), aff'd sub nom. *Forsham v. Harris*, 445 U.S. 169 (1980); *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 161-62 (1975) (FOIA "does not compel agencies to write opinions in cases in which they would not otherwise be required to do so.").

The vagueness of a plaintiff's FOIA request may also be grounds to deny it. In *Yagman v. Pompeo*, 868 F.3d 1075, 1081 (9th Cir. 2017), the court held that the plaintiff's request was too vague for defendants to know what records would be responsive. However, in a footnote, the court explained that the "request [did not] fail[ ] simply because it may encompass a large number of documents":

> "[T]he number of records requested appears to be irrelevant to the determination whether they have been 'reasonably described.' " *Yeager v. DEA*, 678 F.2d 315, 326 (D.C. Cir. 1982); *see also* Dep't of Justice, Office of Info. Privacy, FOIA Update Vol. IV, No. 3, at 5 (1983) ("The sheer size or burdensomeness of a FOIA request, in and of itself, does not entitle an agency to deny that request on the ground that it does not 'reasonably describe' records within the meaning of 5 U.S.C. § 552(a)(3)(A)"). Indeed, "[t]he statute itself 'puts no restrictions on the quantity of records that may be sought.' " *Shapiro v. CIA*, 170 F. Supp. 3d 147, 155 (D.D.C. 2016) (quoting *Tereshchuk v. Bureau of Prisons*, 67 F. Supp. 3d 441, 454 (D.D.C. 2014), aff'd sub nom. *Tereshchuk v. Bureau of Prisons, Dir.*, No. 14-5278, 2015 WL 4072055 (D.C. Cir. June 29, 2015)). "Rather, it explicitly contemplates unusually large requests, affording reviewing agencies additional time 'to search for ... a voluminous amount of separate and distinct records which are demanded in a single request.' " *Id.* (quoting 5 U.S.C. § 552(a)(6)(B)(iii)(II)).

*Id.* at 1081 n.6.

1   Courts have also declined to deny a FOIA request on grounds that it is too

2   costly for the agency to comply.  In *Long v. I.R.S.*, 596 F.2d 362, 367 (9th Cir. 1979),

3   the Ninth Circuit held that the estimated $160,000 in costs associated with editing

4   documents to ready them for disclosure did not invalidate the plaintiff's FOIA

5   request.  It explained its holding as follows:

> In order to put this matter in perspective, it is useful to note
> how costly the FOIA can be generally for agencies. In
> 1976, the FBI assigned 191 full-time employees to the sole
> task of processing its FOIA requests, *see Open America v.
> Watergate Special Prosecution Force*, 178 U.S. App. D.C.
> 308, 316, 547 F.2d 605, 613 (1976), and that agency
> estimated that in 1977 the cost to it alone of complying
> with the FOIA would be $2,675,000. *See id.* 178 U.S. App.
> D.C. at 315, 547 F.2d at 612. In one case Judge Green of
> the United States District Court for the District of
> Columbia ordered the Justice Department to comply
> within three months to a FOIA request from the son of
> Julius and Ethel Rosenberg for information concerning the
> trial and execution of his parents. *Meeropol v. Levi*, No.
> 75-1121 (D.D.C. order issued Aug. 27, 1975). Compliance
> with that order required the agency to assign 65 full-time
> and 21 part-time employees solely to processing that one
> request. *See Open America*, 178 U.S. App. D.C. at 316
> n.15, 547 F.2d at 613 n.15. Despite the massive expenses
> that can be involved in even a single request, Congress has
> not limited access under the Act. Whether such
> expenditures are good policy is not a question for us to
> decide. Congress has determined that access to
> government records is an important objective. We
> therefore cannot conclude that the costs of editing
> involved in this case are so extreme that segregation of
> revealable material is unreasonable as a matter of law.

22   *Id.*  Still, *Long* declined to reach the question of whether "at some point the costs of

23   segregation might be so extreme that the request would have to be dismissed as

24   unreasonable."  *Id.*

25

Courts have also declined to deny a FOIA request as unduly burdensome when a responding agency is required to develop new protocols and train staff to respond to the request. *See Public.Resource.org v. Internal Revenue Service*, 78 F. Supp. 3d 1262, 1266-67 (9th Cir. 2015) ("If that was a valid excuse, anytime there was a request for production in a format that the agency has not accommodated before, the agency could argue undue burden.").

In an analogous context, the Supreme Court considered whether a FOIA request may be denied on the ground that it imposes an "insurmountable burden[ ]" on the agency responding it. *Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102 (1980) ("*Sylvania*"). In that case, the Consumer Product Safety Commission (the "Commission") received a FOIA request for accident reports submitted to them in confidence by television manufacturers. *Id.* at 106. In response to the request, the Commission decided to simply release the confidential accident reports notwithstanding § 6 of the Consumer Product Safety Act ("CSPA"), 15 U.S.C. § 2051 *et seq.*, which requires the Commission to notify the manufacturers at least 30 days before public disclosure and give them a reasonable opportunity to submit comments regarding the information. *Id.* The lower courts enjoined the Commission from releasing the accident reports as contrary to the CSPA. *Id.* Before the Supreme Court, the Commission argued, among other things, that requiring it to comply with § 6 of the CSPA would impose "insurmountable burdens on the agency." *Id.* at 123. The Court rejected this argument:

> In making this claim, petitioners state that the Commission receives nearly 8,000 FOIA requests annually. The extent to which these requests will present problems of fairness and accuracy with respect to the information released by the Commission is entirely speculative. And in light of the fact that [FOIA] Exemption 3 is applicable to the disclosure of information controlled by § 6(b)(1), we do not think these burdens will prove to be unbearable. Most

importantly, our interpretation of the language and
legislative history of § 6(b)(1) reveals that any increased
burdens imposed on the Commission as a result of its
compliance with § 6(b)(1) were intended by Congress in
striking an appropriate balance between the interests of
consumers and the need for fairness and accuracy with
respect to information disclosed by the Commission.
Thus, petitioners' claim that the Commission's
compliance with the requirements of § 6(b)(1) will impose
undue burdens on the Commission is properly addressed
to Congress, not to this Court.

*Id.* at 123-24.

### b. Analysis

DOJ supports its claim of undue burden with a declaration from Judy Harvey, the Assistant Chief of the Law and Policy Section ("LPS"), Environment and Natural Resources Division ("ENRD"). (Dkt. No. 241-1.) Ms. Harvey sets forth the ENRD's internal processes for responding to its approximately 180 requests and consultations from other agencies per fiscal year. (*Id.* ¶ 9.) Ms. Harvey states that, "[u]nless a record can be readily classified as not responsive to a request, appropriate for release, or withheld in full, a line-by-line or page-by-page review of records is typically undertaken to meet FOIA's obligation to release reasonably segregable material from a record that includes some information that is exempt from disclosure." (*Id.* ¶ 15.) To comply with its FOIA obligations, ENRD routinely uses Relativity, an e-Discovery platform to review records located in searches and to exclude duplicate records (a process called "de-duplication"). (*Id.* ¶¶ 17, 29.) Nonetheless, Ms. Harvey states that readying the documents for disclosure in this case would be unduly burdensome because of ENRD's limited staff availability and inexperience with similarly voluminous or sensitive FOIA requests (*id.* ¶ 36); the overall number of responsive records, approximately half of which are in languages other than English (*id.* ¶ 35); the need for DOJ and VW to review the records for

confidential business information protected from disclosure under Exemption 4 (*id.*
¶ 38); and the need for DOJ and VW to review the records for privacy information
protected from disclosure under Exemptions 6 and 7(c) (*id.* ¶ 41).  (*See also* Dkt.
No. 241-2, Decl. of Christina Butler, Chief of the FOIA / Privacy Act Unit in the
DOJ's Criminal Division.)  According to Ms. Harvey, it would take *hundreds* of
years and millions of dollars to process Plaintiff's FOIA request.  (Dkt. No. 241-1,
Harvey Decl. ¶¶ 53-54.)

The Special Master recognizes that Plaintiff's FOIA request imposes a burden
on DOJ (and, to some extent, VW).  This burden does not arise from any purported
vagueness as to the FOIA request that prevents DOJ from identifying responsive
records.  Nor does it arise from searching for responsive records.  Rather, the alleged
burden is associated with readying the records for disclosure.  But as the Ninth
Circuit explained in *Fiduccia v. U.S. Dept. of Justice*, 185 F.3d 1035, 1041 (9th Cir.
1999), "[t]hough FOIA doubtless poses practical difficulties for federal agencies,
federal agencies can educate Congress on the practical problems they have, and
attempt to persuade Congress to change the law or provide additional funds to
achieve compliance. So long as the Freedom of Information Act is the law, we
cannot repeal it by a construction that vitiates any practical utility it may have."  *See
also Sylvania*, *supra*, 447 U.S. at 109 ("Thus, petitioners' claim that the
Commission's compliance with the requirements of § 6(b)(1) will impose undue
burdens on the Commission is properly addressed to Congress, not to this Court.").

The Special Master observes that DOJ's burden can be lessened in several
ways.  First, Plaintiff has already agreed to limit his request by excluding all
untagged records.  According to Ms. Harvey, there are approximately 3.3–4.3
million untagged records, leaving between 720,000 to 1.3 million tagged records to
process. (Dkt. No. 241-1, Harvey Decl. ¶ 30.)  This is a significant reduction in the
number of records responsive to Plaintiff's FOIA request.  Second, the Relativity

software can reduce the burden by conducting an initial review of the records and by limiting the number of records using the "family-based" de-duplication method, which de-duplicates based on an algorithm that recognizes "family" groupings of "parent" files and corresponding attachments.  (*Id.*, Harvey Decl. ¶ 29.)  Third, Relativity provides an automated translation tool that would generate a computerized word-for-word translation of the non-English records.  (*Id.*, Harvey Decl. ¶ 46.)  While this is not the equivalent of the work of a human translator (*see id.*), it would greatly reduce the millions of dollars estimated for human translation (*id.*, Harvey Decl. ¶ 50).  DOJ also has the option of hiring additional staff and/or outside contractors to process the documents.  *See, e.g.*, *Washington v. Public Buildings Reform Board*, 2022 WL 823548, at *5 (W.D. Wash. Mar. 18, 2022).  In addition, representative sampling can be used "to reduce a voluminous FOIA exemption case to a manageable number of items that can be evaluated individually through a *Vaughn* index."  *Bonner v. United States Dept. of State*, 928 F.2d 1148, 1151 (D.C. Cir. 1991) ("Representative sampling . . . involves a trade-off between the high degree of confidence that comes from examining every item for which exemption is claimed, and the limitations of time and resources that constrain agencies, courts, and FOIA requesters alike.").  Neither party has adequately addressed the option of sampling or creating categories of documents for review as potential methods for reducing the burden.  Defendant has not offered any showing that these additional methods of reducing the burden of reviewing and producing records are not available in the present case.

**D.  Issue No. 4: Has release of the records already been authorized under Rule 6(e)? Does the Court have the authority to revise any of its earlier determinations?**

The parties were also asked to address whether the Court has already authorized the release of the Jones Day documents.  Plaintiff contends that the Court

DocuSign Envelope ID: 47500A1BD-3958-49PA-82C5-69D23DC7AB55

ordered release in the Order re: *Vaughn* Index. (*See* Dkt. No. 98 at 12 ("No later than April 5, 2021, the government shall produce all responsive documents to plaintiff's FOIA Request. For any document or portion of a document that the government withholds, the government shall, no later than the date set forth above, produce a *Vaughn* index" that includes "a detailed description of each document; (7) the exemption(s) claimed; and (8) a detailed and specific explanation(s) for each exemption(s) claimed.").)

DOJ argues, "[n]either this Court nor any other has 'authorized' release of the records at issue under Rule 6(e). (*See generally* ECF 142 at 26-27.) The Court has twice referred the Petitions to the Special Master, most recently for supplemental briefing on whether Rule 6(e) protects the records at issue. (ECF 190; ECF 125.) In any event, it is unquestionable that the Court has broad authority to revisit and modify any of its earlier determinations at its discretion. *See, e.g.*, *United States v. Smith*, 389 F.3d 944, 948 (9th Cir. 2004) (law of the case doctrine is 'discretionary [and] highly flexible' and does not limit court's authority to reconsider prior rulings while it retains jurisdiction)." (Dkt. No. 241 at 2, n.2.)

VW argues that the "Court has not ordered the release of any VW records under FOIA. Instead, on October 9, 2020, the Court ordered the release of 'all responsive documents' 'unless covered by an applicable FOIA exemption' (ECF No. 98, at 10-12), and the Court has not made any findings about which responsive documents are subject to Rule 6(e). The Special Master was appointed to address the various categories of responsive records. (Order re: Appointment of Special Master (ECF No. 107), at 5-6.) Furthermore, the parties have not litigated the applicability of any exemption other than Exemption 3, which remains in dispute. Therefore, to date, this Court has made no determinations with respect to the applicability of any

1  FOIA exemption or Rule 6(e) to records responsive to Plaintiff's FOIA request that

2  are subject to reconsideration." (Dkt. No. 242 at 20.)

3      On review, the Special Master concludes that the Court has already authorized

4  release of the Jones Day documents subject to DOJ's invocation of exemptions to

5  be asserted in a *Vaughn* index, and that the Special Master has been "appointed to

6  assist the court in examining documents and evaluating the government's exemption

7  objections." (Dkt. No. 98 at 12.) As there is no need to revise any of the Court's

8  earlier determinations, the Special Master finds it unnecessary to address whether

9  the Court has the authority to do so.

**E. <u>Issue No. 5</u>: Should materials sealed by Judge Cox be unsealed? Can the records be unsealed and produced for a limited purpose pursuant to another Court's protective order? If sealed records are not publicly disclosed, does an order requiring release under a protective order violate the seal? Because Judge Cox transferred the petitions to the Central District, may the District Judge in the Central District unseal the materials previously sealed by Judge Cox?**

      Finally, there is the issue of unsealing Judge Cox's transfer order and the Petitions, which Plaintiff requests in his brief. (Dkt. No. 240 at 11.) "DOJ does not oppose a request to unseal these records or disclose them under protective order." (Dkt. No. 241 at 7, fn. 1.) Likewise, "VW would not oppose Plaintiff's request to unseal those filings." (Dkt. No. 242 at 16.) Because no party is opposed to unsealing the transfer order and the Petitions, the Special Master will recommend that Plaintiff's request to unseal be granted.

27

**RECOMMENDATIONS**

Based on the foregoing, it is respectfully recommended that the pending Petitions be DENIED.  In addition, the Special Master recommends as follows:

1. The parties be directed to meet and confer and submit a joint statement within thirty days from the adoption of these recommendations, as to the methods for reviewing and producing the responsive records. The parties shall propose a Joint Protocol designed to reduce the burden on the producing and reviewing parties.  If the parties cannot agree on a Joint Protocol, the parties may submit separate protocols.  The protocols shall be submitted as a Proposed Order in Word.

2. Plaintiff's request to unseal Judge Cox's transfer order and attachments be GRANTED pursuant to a protective order.

3. The parties' Objections to this Report are due within 14 days of the date of the Report.

IT IS SO RECOMMENDED.

DATED: 11/28/2023

Hon. Suzanne Segal (Ret.)
2B739185DE71459...

Hon. Suzanne H. Segal (Ret.)
Special Master