E. MARTIN ESTRADA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section
ALARICE M. MEDRANO (Cal. Bar No. 166730)
Assistant United States Attorney
    Federal Building, Suite 7516
    300 North Los Angeles Street
    Los Angeles, California 90012
    Telephone: (213) 894-0460
    Facsimile: (213) 894-7819
    E-mail: Alarice.Medrano@usdoj.gov

Attorneys for Defendant, United States
Department of Justice

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| LAWRENCE P. KALBERS,<br><br>        Plaintiff,<br><br>        v.<br><br>v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE,<br><br>        Defendant | No. 2:18-cv-08439-FMO-PJW<br><br>DEFENDANT DOJ'S OBJECTIONS TO THE SPECIAL MASTER'S REVISED REPORT AND RECOMMENDATION [ECF 253-1]<br><br>Honorable Fernando Olguin<br>United States District Judge<br><br>Hon. Suzanne H. Segal (Ret.)<br>Special Master |

**Table of Contents**

Page(s)

MEMORANDUM ..................................................................................................1

I.    PROCEDURAL HISTORY ..........................................................................1

      A.    The Underlying Grand Jury Investigation and Criminal Case Against
            VW ......................................................................................................1

      B.    Summary Judgment Briefing ..............................................................2

      C.    Referral of This Case to the Special Master......................................3

      D.    Filing of Petitions and Further Proceedings......................................3

II.   THE COURT SHOULD GRANT THE PETITIONS....................................4

      A.    Rule 6(e) and FOIA ............................................................................5

      B.    Rule 6(e) Protects the Subpoenaed Records from Release Under
            FOIA....................................................................................................6

III.  PLAINTIFF'S FOIA REQUEST IS UNREASONABLY BURDENSOME.......11

      A.    A FOIA Request May Be Overly Burdensome Based on Processing
            Burdens.............................................................................................11

      B.    The Revised R&R Erred in Analyzing Burdens ...........................14

      C.    Plaintiff's Other Arguments Are Meritless .................................19

IV.   CONCLUSION.............................................................................................20

i

# Table of Authorities

**Page(s)**

## Cases

*ACLU Found. of Ariz. v. DHS,*
  2017 WL 8895339 (D. Ariz. Jan. 26, 2017) ................................................. 12

*ACLU of N. Cal. v. Dep't of Just.,*
  2014 WL 4954121 (N.D. Cal. Sept. 30, 2014) ............................................ 13

*Am. Fed'n of Gov't Emps., Loc., 2782 v. Dep't of*
  Com. ("AFGE"), 907 F.2d 203 (D.C. Cir. 1990) ................................... 12, 15

*Church of Scientology Int'l v. DOJ,*
  30 F.3d 224 (1st Cir. 1994) ........................................................................... 7

*Consumer Product Safety Commission v. GTE Sylvania, Inc.,*
  447 U.S. 102 (1980) ..................................................................................... 14

*Ctr. for Immigr. Stud. v. USCIS ("CIS"),*
  628 F.Supp.3d 266 (D.D.C. 2022) .................................................... 12, 16, 17

*Davin v. DOJ,*
  60 F.3d 1043 (3d Cir. 1995) ........................................................................ 19

*Fiduccia v. DOJ,*
  185 F.3d 1035 (9th Cir. 1999) ..................................................................... 14

*Fund for Const. Gov't v. Nat'l Archives & Records Serv.,*
  656 F.2d 856 (D.C. Cir. 1981) .................................................................. 5, 7

*Grynberg v. DOJ,*
  302 F.Supp.3d 532 (S.D.N.Y. 2018) ............................................................. 9

*Grynberg v. DOJ,*
  758 Fed. Appx. 162 (2d Cir. 2019) ............................................................. 11

*Halpern v. FBI,*
  181 F.3d 279 (2d Cir. 1999) ........................................................................ 12

*Hiss v. DOJ,*
  441 F.Supp. 69 (S.D.N.Y. 1977) ................................................................... 5

ii

*In re Grand Jury Disclosure*,
   550 F.Supp. 1171 (E.D. Va. 1982) ................................................................. 10

*In re Grand Jury Impaneled October 2, 1978 (79-2)*,
   510 F.Supp. 112 (D.D.C. 1981) ....................................................................... 8

*In re Grand Jury Proceedings*,
   851 F.2d 860 (6th Cir. 1988) ......................................................................... 10

*In re Optical Disk Drive Antitrust Litigation*,
   801 F.3d 1072 (9th Cir. 2015) ......................................................................... 5

*In re U.S. Dep't of*,
   *Def.*, 848 F.2d 232 (D.C. Cir. 1988) .............................................................. 18

*Kalbers v. DOJ*,
   22 F.4th 816 (9th Cir. 2021) ................................................................. 2, 15, 19

*Kuzma v. DOJ*,
   692 Fed. Appx. 30 (2d Cir. 2017) .................................................................... 5

*Labow v. Department of Justice*,
   831 F.3d 523 (D.C. Cir. 2016) ...................................................................... 8, 9

*Labow v. DOJ*,
   278 F.Supp.3d 431 (D.D.C. 2017) ................................................................... 9

*Long v. IRS, Long*,
   596 F.2d 362 (9th Cir. 1979) ......................................................................... 14

*Marks v. DOJ*,
   578 F.2d 261 (9th Cir. 1978) ......................................................................... 12

*McDonnell v. United States*,
   4 F.3d 1227 (3d Cir. 1993) .............................................................................. 5

*Middle E. Forum v. DHS*,
   297 F.Supp.3d 183 (D.D.C. 2018) ................................................................. 17

*Nat'l Day Laborer Org. Network v. ICE*,
   2017 WL 1494513 (S.D.N.Y. Apr. 19, 2017) ............................................... 16

*Nat'l Sec. Couns. v. CIA*,
   960 F.Supp.2d 101 (D.D.C. 2013) ................................................................ 12

iii

*Public.Resource.org v. IRS,*
   78 F.Supp.3d 1262 (N.D. Cal. 2015) ................................................................. 14

*Senate of Puerto Rico v. DOJ,*
   823 F.2d 574 (D.C. Cir. 1987) ........................................................................ 7, 8

*Solar Sources, Inc. v. United States,*
   142 F.3d 1033 (7th Cir. 1998) ........................................................................... 12

*United States v. Davis,*
   702 F.2d 418 (2d Cir. 1983) ............................................................................... 11

*United States v. Dynavac,*
   6 F.3d 1407 (9th Cir. 1993) ........................................................................ 5, 6, 10

*Vietnam Veterans of Am. Conn. Greater Hartford Ch. 120 v. DHS,*
   8 F.Supp.3d 188 (D. Conn. 2014) ..................................................................... 13

*Weirich v. Bd. of Governors of Fed. Rsrv. Sys.,*
   2010 WL 4717211 (E.D. Wash. Nov. 15, 2010) ............................................... 13

*Yagman v. Brennan,*
   2020 WL 4341592 (C.D. Cal. June 9, 2020) ..................................................... 13

*Yagman v. Haspel,*
   769 Fed. App'x. 484 (9th Cir. 2019) ................................................................. 13

*Yagman v. Pompeo,*
   868 F.3d 1075 (9th Cir. 2017) ........................................................................... 13

**Statutes**

5 U.S.C. § 552(b)(3) ................................................................................................. 5

**Rules**

Fed. R. Civ. P. 53 ................................................................................................ 3, 20

Fed. R. Crim. P. 6(e)(2)(B) ...................................................................................... 4

Fed. R. Crim. P. 6(e)(3)(E)(i) .................................................................................. 3

**Regulations**

C.F.R. § 16.7 .......................................................................................................... 15

iv

## MEMORANDUM

The Department of Justice ("DOJ") respectfully objects to the Special Master's Revised Report and Recommendation ("Revised R&R") and moves for its modification as follows:

1) The Report errs in recommending that the Petitions (ECF 111-1) be denied and DOJ moves that the Court modify it and grant the Petitions.

2) The Report errs in recommending that the parties develop "protocols" to mitigate the extreme burdens imposed by parsing *millions* of corporate records for FOIA-exempt information, when no meaningful mitigation is possible, and DOJ moves that the Court modify it and find that Plaintiff's FOIA request is overly burdensome and need not be processed.

*See* Revised R&R, filed November 28, 2023 (ECF 253-1).[1]

## I.   PROCEDURAL HISTORY

The relevant procedural history is summarized below.

A.   <u>The Underlying Grand Jury Investigation and Criminal Case Against VW</u>

In or about 2015, DOJ investigated and prosecuted Volkswagen ("VW") for its conspiracy to sell diesel vehicles that used defeat devices to evade federal and state emissions testing. During the course of the investigation, VW's criminal counsel, including Jones Day, produced millions of records on VW's behalf in response to a federal grand jury subpoena (the "Subpoenaed Records" or "Records"). (ECF 71-1, at 9-11 ¶ 34.; ECF 111-1, at 3-4 ¶ 6.) Jones Day also met with the prosecution team on several occasions to update DOJ on its internal investigation of defeat device issues; at these meetings, Jones Day referenced a subset of the Subpoenaed Records. (*Id.*)

The criminal charges were resolved in March 2017 through a Plea Agreement that

_____

[1] DOJ has no objection to the Report's recommendation on unsealing. Revised R&R at 28. DOJ notes that the Revised R&R addressed other issues as to which it made no recommendations. DOJ's positions on these issues remain as stated in its prior papers, which are incorporated but not reiterated here as they are not presently before the Court.

required VW to pay a $2.8 billion penalty and implement an effective compliance program, under the auspices of an independent monitor. (ECF 71-4.) In its 2017 Annual Report, VW stated that it had instructed Jones Day to investigate "the diesel issue in light of the DOJ's [and other] criminal investigations" and to "present factual evidence to the DOJ." (ECF 71-21.) The Annual Report also stated that VW had "resolve[d] US criminal law charges" through a plea agreement.

     B.   Summary Judgment Briefing

On June 20, 2018, Lawrence Kalbers (along with his now-counsel, Daniel Jacobs) sent a FOIA request to the DOJ Environmental and Natural Resources Division ("ENRD") seeking, in relevant part, copies of all "factual evidence" that Jones Day presented to DOJ "as the term [is] used on p. 295 of Volkswagen's 2017 Annual Report." (ECF 71-8 (the "Request").)

The instant action, filed on October 1, 2018, challenges DOJ's withholding of records. (ECF 1.) VW moved to intervene on September 27, 2019 (ECF 47), and DOJ moved for summary judgment on November 7, 2019 (ECF 69-71). In its summary judgment papers, DOJ explained that it understood the 2017 VW Annual Report to reference the "factual evidence" that Jones Day provided in its meetings with DOJ prosecutors rather than the millions of records produced under grand jury subpoena. (ECF 71-1, at 11-12 ¶ 35.) Plaintiff moved to strike the declarations supporting DOJ's summary judgment motion and for sanctions on November 14, 2019. (ECF 72.)

On October 9, 2020, the District Court issued an Order denying all of the above motions. (ECF 79.)[2] That Order concluded that DOJ had misread the Request, which sought *all* records Jones Day provided to DOJ, denied "the MSJ on the basis of the ENRD's inadequate search," and so did "not address whether any claimed exemptions actually apply." ECF 79, at 17 n.7 (citation omitted).

---

    [2] VW appealed the District Court's denial of its motion to intervene, and, on December 28, 2021, the Court of Appeals reversed that decision and allowed VW to intervene. *Kalbers v. DOJ*, 22 F.4th 816 (9th Cir. 2021).

C.   <u>Referral of This Case to the Special Master</u>

On April 1, 2021, this Court issued an Order Re: Appointment of Special Master ("SM"), finding that the Court did not have the time or resources to address the volume of documents and issues that it expected to arise in this case. (ECF 107 at 2 n.1.) In that same Order, the Court criticized DOJ's suggestion that further summary judgment briefing would be needed in light of the expanded set of responsive records. (*Id.* at 4-5.) The Court granted the SM broad authority to "regulate all proceedings" pursuant to Fed. R. Civ. P. 53(c)(1). (ECF 107 at 5-6 [¶¶ 2, 3, 5].)

D.   <u>Filing of Petitions and Further Proceedings</u>

On May 24, 2021, DOJ filed Petitions in the United States District Court for the Eastern District of Michigan, linked to the criminal cases for which the grand jury had subpoenaed VW records, seeking a determination of whether the Subpoenaed Records could be released under Fed. R. Crim. P. 6(e)(3)(E)(i) in response to Plaintiff's FOIA action. (ECF 111-1.) The Petitions were transferred to this Court, consolidated with the FOIA case, and referred to the SM. (ECF 125.) The SM set a schedule that allowed the Petitions to be addressed first, as a threshold issue, followed by a series of production, briefing, and review deadlines, to include briefing on burdensomeness, to resolve DOJ's withholdings under FOIA. (ECF 131.)

On November 5, 2021, the SM issued an initial Report & Recommendation ("R&R") regarding the Petitions. (ECF 152.) After the parties briefed objections to the R&R (ECF 159, 161, 162, 179, 180), the Court issued an Order Re: Objections to Special Master's R&R (ECF 190) on August 31, 2022, referring the Petitions back to the SM for further proceedings. On October 17, 2022, the SM issued a Second Amended Scheduling Order, which followed the same general sequencing as the original Schedule, but added deadlines for the supplemental briefing required by the District Court (ECF 190; ECF 204-1.)

On March 6, 2023, after further briefing by the parties (ECF 214, 215, 216, 219, 220, 221), the SM filed an Order Requiring Further Development of the Record Re:

Grand Jury Material and Petitions. (ECF 228.) After a March 21, 2023, status conference, the parties filed proposals regarding the resolution of outstanding legal issues (ECF 232, 233, 234-1, 235) and, on May 16, 2023, the SM issued an Order Re: Resolution of the Outstanding Legal Issues directing the parties to brief specific issues. (ECF 239). After the parties filed their briefs (ECF 240, 241, 242, 246, 247, 248), the Special Master held a status conference on September 8, 2023. At that conference, Plaintiff objected to any discussion of the merits. No hearing was set on the matter.

On November 28, 2023, the SM issued the Revised R&R. On December 8, 2023, the SM issued an Order extending the briefing schedule. (ECF 256-1.)

## II.   THE COURT SHOULD GRANT THE PETITIONS

Defendant objects to the recommendation that the Petitions be denied.[3] The SM erred in finding that releasing the Records would not "reveal any information about the grand jury" or "compromise the secrecy of the grand jury process." Revised R&R at 18.

The SM found that "DOJ obtained the requested materials" through "the grand jury investigation," and that they were produced "pursuant to a grand jury subpoena." Revised R&R at 1, 9. The vast majority are labeled "FOIA Confidential—Produced Pursuant to Rule 6(e)." (ECF 111-1, at 4 ¶ 6; ECF 71-1, at 24-25 ¶ 85.)  The nexus between the Records and the grand jury investigation is evidenced by the context of the request – which seeks all records that a corporate defendant's *criminal counsel produced to the government attorneys* prosecuting that defendant and *only* those records. Thus, releasing the Records would both identify records that the grand jury subpoenaed *and* publicly disclose information about the nature and direction of the grand jury's investigation. The case law confirms that Rule 6(e) bars release under FOIA of records

---

[3] DOJ also objects to the Revised R&R to the extent it suggests that Rule 6(e) does not protect *any* of the Records. *See* Revised R&R at 18. Rejecting DOJ's argument that Rule 6(e) protects *all* the Subpoenaed Records does not imply that *none* are protected. And the analysis in the Revised R&R suggests that disclosing grand jury-subpoenaed records central to an investigation could disclose the "inner workings of the grand jury." *Id.*

that could readily be identified as having been subpoenaed by a grand jury. None of the cases cited in the Revised R&R hold otherwise.

    A.    <u>Rule 6(e) and FOIA</u>

    Rule 6(e) bars government attorneys from "disclos[ing] a matter occurring before the grand jury," unless authorized under the Rule itself. Fed. R. Crim. P. 6(e)(2)(B), (3). FOIA does not authorize the release of records that are "specifically exempted from disclosure by statute." 5 U.S.C. § 552(b)(3).

    The SM recognized that the "scope of a court's analysis when the government invokes Rule 6(e) depends on the context in which disclosure is sought and the identity of the entity or person seeking disclosure." Revised R&R at 12. Courts "will attempt to balance the competing interests of disclosure and secrecy" when an agency seeks grand jury-subpoenaed records for its own investigation or a civil litigant does so in discovery. *Id.* at 13-15 (citing as examples *United States v. Dynavac*, 6 F.3d 1407 (9th Cir. 1993), and *In re Optical Disk Drive Antitrust Litigation*, 801 F.3d 1072 (9th Cir. 2015)).

    But balancing is inappropriate when grand jury records are sought *under FOIA*. Revised R&R at 12. In this context, Rule 6(e) bars the government from publicly disclosing any and all grand jury matters, *with no exceptions*. *See*, *e.g.*, *Fund for Const. Gov't v. Nat'l Archives & Records Serv.*, 656 F.2d 856, 868-69 (D.C. Cir. 1981); *McDonnell v. United States*, 4 F.3d 1227, 1247-48 (3d Cir. 1993). The "motive" for a FOIA request is not relevant to whether records are releasable. Revised R&R at 15. And there is no need to "balance" the need for grand jury secrecy against any alleged countervailing need: Congress has already determined, by incorporating statutory bans on disclosure into FOIA, that the public interest in disclosure, as reflected in FOIA, cannot justify releasing *any* matters protected by Rule 6(e). *Kuzma v. DOJ*, 692 Fed. Appx. 30, 33-34 (2d Cir. 2017) (In FOIA cases, materials "within Rule 6(e)'s protection" are properly withheld, and any claim of "exceptional circumstances" is thus "beside the point."); *Hiss v. DOJ*, 441 F.Supp. 69, 70 (S.D.N.Y. 1977).

    Thus, in a FOIA case, the question for the Court is: Would public release of the

requested records disclose any protected grand jury matters? The Ninth Circuit has not considered whether FOIA permits release of *any* grand-jury subpoenaed records, much less those that – like the Subpoenaed Records here – are readily identified as grand jury-subpoenaed records. The Ninth Circuit has, however, made clear that the "institutional concerns" underlying grand jury secrecy "*are implicated*" by disclosing such records, though these concerns are "reduced" for these, as compared to other types of, grand jury records. *Dynavac*, 6 F.3d at 1412 (emphasis added). Thus, the Ninth Circuit rejected an interpretation of Rule 6(e) that would have excluded all third-party records obtained under grand jury subpoena from the Rule's protections. *Id*. at 1412-13 (citing cases criticizing rule as "inattentive" to "the important privacy and confidentiality purposes embodied in rule 6(e)" and noting that "examination of all documents subpoenaed and reviewed by the grand jury can reveal a great deal" about protected aspects of the investigation). *See also* ECF 241, at 15-16, and authorities cited therein; ECF 142, at 14-25 and authorities cited therein; ECF 214, at 18-25 and authorities cited therein.

      B.    <u>Rule 6(e) Protects the Subpoenaed Records from Release Under FOIA.</u>

DOJ objects to the Revised R&R's conclusion that the government did not make a "sufficient showing that the records would somehow elucidate the inner workings of the grand jury." Revised R&R at 18. This conclusion seems premised on the mistaken view that the government argued for a "*per se* rule" that "materials produced pursuant to a grand jury subpoena are necessarily barred from disclosure." *Id*. at 16-17. In fact,

> The Department has *never claimed* that records subpoenaed by a grand jury are thereby protected *from all future disclosure*. Rather, the Department is arguing that Rule 6(e) bars the government from *publicly releasing under FOIA* records that the government obtained under grand jury subpoena *where such disclosure would reveal information about the grand jury process*, including—as is the case here—the fact that the grand jury had subpoenaed the records.

ECF 214, at 22 (emphases added).

The Revised R&R does not properly consider DOJ's position, which is that releasing the Subpoenaed Records under the present circumstances – where Plaintiff asks federal *prosecutors to publicly release all documents received from VW's criminal counsel*, and where the government obtained those records under grand jury subpoena, labeled as grand jury records – would reveal protected information about the grand jury process. The contrary conclusion in the Revised R&R cannot be reconciled with the uncontroverted facts and is erroneous.

DOJ has shown that release of the Subpoenaed Records would impermissibly compromise the secrecy of the grand jury proceedings, and none of the cases cited in the Revised R&R suggests otherwise. The Revised R&R relies primarily on decisions of the First Circuit and the D.C. Circuit for its analysis. Revised R&R at 18 (citing *Church of Scientology Int'l v. DOJ*, 30 F.3d 224, 236 (1st Cir. 1994), and *Senate of Puerto Rico v. DOJ*, 823 F.2d 574, 581 (D.C. Cir. 1987)). A brief examination of those cases confirms that DOJ has provided adequate support for its withholdings.

In *Church of Scientology*, the First Circuit held that agencies could justify withholding records "created for purposes independent of grand jury investigations" or other records "located in grand jury files" by providing "some basis for a claim that releasing them will implicate the secrecy concerns protected by Rule 6(e)." *Church of Scientology*, 30 F.3d at 235-36. It went on to explain that the government could withhold "any document containing a grand jury exhibit sticker or that is otherwise explicitly identified on its face as a grand jury exhibit." *Id*. at 235 n.15 (citing *Fund for Const. Gov't*, 656 F.2d at 869). The First Circuit also noted that the government's obligation to provide "some support" for its Rule 6(e) withholdings was "*minimal except for* materials assertedly connected to a grand jury investigation that bear *no facial connection to grand jury proceedings*." *Id.* at 236 n.18 (emphases added). The First Circuit thus recognized that Rule 6(e) concerns would be implicated by release of records that display a "facial connection to grand jury proceedings." *Id*.; *see also id.* at 236 n.17 (suggesting that Rule 6(e) would not require withholding independently generated records if they "would not

be labeled as grand jury material upon release" or "identifiable as connected to a grand jury proceeding at all").

The D.C. Circuit similarly emphasized the need to consider whether releasing records under FOIA would disclose their nexus to the grand jury. *Senate of Puerto Rico*, 823 F.2d at 583. The court held that releasing grand jury exhibits in response to a FOIA request could "elucidate the inner workings of the grand jury" if the public "would have been able to determine *which* documents had been submitted to the grand jury." *Id.* at 583. That case concerned a request from the Senate of Puerto Rico for "all evidence" DOJ had obtained related to a "politically-inspired homicide," which expressly sought evidence "*including, but not limited to, evidence submitted for the consideration of any Grand Jury.*" *Id*. at 577, 581-82 (emphasis in original). Recognizing that DOJ had released "over 1,000 pages of non-grand jury material" in response to the request, the court questioned whether, had the grand jury exhibits been released simultaneously, there would have been any indication that those exhibits related to the grand jury investigation. *Id.* at 583 ("Absent that identifying information, it is difficult to see how disclosure would reveal anything concerning the inner workings of the grand jury."). By contrast, the D.C. Circuit noted that Rule 6(e) protected "an *inventory* of *all documents subpoenaed by* the grand jury investigating" a particular case, even where the Senate requested it for use in its own investigation, since the inventory would "reveal a great deal about the scope and focus of the grand jury's investigation." *Id.* at 583 n.30 (citing *In re Grand Jury Impaneled October 2, 1978 (79-2)*, 510 F.Supp. 112 (D.D.C. 1981), and noting that the "court left open the possibility" that Rule 6(e) might permit DOJ to provide an inventory of *all* records related to the case, but only if the inventory were not limited to and *did not identify* which records the grand jury had subpoenaed).

The D.C. Circuit returned to the issue of how an agency may justify withholding grand jury-subpoenaed records under FOIA in *Labow v. DOJ*, 831 F.3d 523 (D.C. Cir. 2016). There, DOJ argued "that documents subpoenaed by a grand jury are *more revealing than* documents merely presented to a grand jury, because they reveal the

8

direction of the grand jury's investigation." *Labow*, 831 F.3d at 529 (emphasis added). The court confirmed that it "would agree," but only if "the documents would reveal to the requester *that they had been subpoenaed*." *Id.* (emphasis added). The D.C. Circuit remanded for the district court to "consider whether the documents would have revealed something about the workings of the grand jury had they been released with other requested documents." *Id.* at 530. On remand, DOJ supplemented the record, and the district court affirmed the withholdings. *Labow v. DOJ*, 278 F.Supp.3d 431, 433-35 (D.D.C. 2017). The court concluded that "returns on subpoenas, *if identified as such on the document*," disclose "something critical about the grand jury's investigation," and, after an *in camera* review, withheld the grand jury-subpoenaed records.[4] *Id.* at 444.

Here, too, the government has established that the records at issue were produced under grand jury subpoena and are labeled as such. Moreover, the context of the FOIA request further demonstrates the nexus between the records and the grand jury investigation. Plaintiff's FOIA request provides no *substantive* description of the records he is seeking, and it identifies the records only as "factual evidence" that VW's attorneys produced to DOJ, while the Department was investigating and prosecuting VW. (ECF 71-8, 71-21.) That Plaintiff's request seeks *only* evidence that VW's criminal counsel provided to DOJ means that it was entirely predictable that all responsive records were produced under grand jury subpoena. *Cf. Grynberg v. DOJ*, 302 F.Supp.3d 532, 538 (S.D.N.Y. 2018) ("In the context of this criminal investigation, the Government's possession of these records establishes a strong likelihood that they were produced pursuant to a grand jury subpoena."). This is clearly not a case where records could be released without disclosing their connection to a grand jury investigation. Under the standards set forth in *both* the cases that the Revised R&R applies, then, DOJ has met its

---

[4] The court also explained that Rule 6(e) did not permit the government to redact grand jury labels and release the records. *Labow*, 278 F.Supp.3d at 445 (When a FOIA request seeks information with "a logical nexus to a potential criminal investigation," an agency would need to cite Rule 6(e) to justify redacting grand jury references, which "would necessarily evince the documents' connection to a grand jury.").

burden of justifying withholding the Subpoenaed Records.

Despite this, the Revised R&R concludes that DOJ failed to make "a sufficient showing" that releasing the Subpoenaed Records would implicate Rule 6(e), apparently because DOJ has not disclosed "which of the millions of records were actually presented to and/or considered by the grand jury, rendering it virtually impossible for the public to glean any information about the grand jury's investigation or deliberation." Revised R&R at 18. It is error to suggest that DOJ must establish which grand jury-subpoenaed records were *also* grand jury exhibits in order for Rule 6(e) to protect the records. The government is not aware of any court that has required such a showing. On the contrary, courts have consistently held that Rule 6(e) protection does not hinge on what the grand jury itself saw, but on what would be *publicly disclosed* if records were released under FOIA, and that releasing grand jury-subpoenaed records, identifiable as such, would implicate Rule 6(e) concerns. *See generally*, *e.g.*, ECF 111-1, at 14-22; ECF 159, at 15-19; ECF 214, at 12-20. Here, the link between the records and the grand jury is apparent from the face of each record, and the context of the request confirms the records are linked to a grand jury investigation. That is sufficient justification for withholding the Subpoenaed Records.

The Revised R&R seems to suggest that the very breadth of the disclosure here obviates any Rule 6(e) concerns, but that is not the law. On the contrary, courts – including the Ninth Circuit – have recognized that the greater the release, the more problematic. Releasing an extensive set of records is *more* revealing than releasing a narrow set because considering records "in the aggregate and in their relationship to one another" allows "inferences about the nature and direction of the grand jury inquiry." *In re Grand Jury Proceedings*, 851 F.2d 860, 865 (6th Cir. 1988); *see also Dynavac*, 6 F.3d at 1412 n.2, 1413; *In re Grand Jury Disclosure*, 550 F.Supp. 1171, 1178 (E.D. Va. 1982) ("It is inconceivable that the disclosure of nearly 40 boxes of subpoenaed documents would not reveal what occurred before the grand jury."). In fact, grand jury secrecy concerns are *exacerbated*, not ameliorated, by disclosing records that include substantial

10

information going well beyond the criminal conduct under investigation. *See*, *e.g.*, *In re Grand Jury Proceedings*, 851 F.2d at 865-66 ("[T]hese secrecy concerns spring [in part] from a recognition of the extraordinary coercive powers of the grand jury," through which grand juries "often pick up … rumor, gossip, and information of an intimate nature" that should not be released without "judicial supervision."). Indeed, the Second Circuit has concluded that requiring the government to "prove that the grand jury actually received the documents it subpoenaed before it can invoke the protection of Rule 6(e) is … inconsistent with the grand jury subpoena's very raison d'être." *Grynberg v. DOJ*, 758 Fed. Appx. 162, 164 (2d Cir. 2019) (citing discussion of the grand jury's "wide ranging authority … to compel the production of documentary evidence" in *United States v. Davis*, 702 F.2d 418, 421-22 (2d Cir. 1983)).

## III. PLAINTIFF'S FOIA REQUEST IS UNREASONABLY BURDENSOME

DOJ argued that this FOIA request exceeds the scope of a permissible request and therefore need not be processed. The SM implicitly recognized that the request imposed unreasonable burdens but suggested that the parties create undefined "protocols" to reduce the processing burdens. Revised R&R at 18, 28. That was error. Processing the Request would unavoidably require a detailed parsing of millions of pages of corporate documents, estimated to require decades of work and millions of dollars. The government's evidence that the Request imposes fundamentally unreasonable burdens is uncontroverted. DOJ thus objects to the proposal that the parties develop "protocols" to address these burdens, and asks that the Court find Plaintiff's request unduly burdensome and dismiss his claims.

### A.   A FOIA Request May Be Overly Burdensome Based on Processing Burdens

The Revised R&R suggests that, if a FOIA request identifies a clear set of records, then the request must be processed, irrespective of the volume of documents and the burdens it imposes. Revised R&R at 24; *see also* ECF No. 246, at 6 (Plaintiff asserting "there is no limit to the number of records that can be requested"). That is incorrect. A

11

FOIA request can be unreasonable for any number of reasons, including the difficulty of identifying or locating records or of reviewing a voluminous set of records for FOIA-exempt information (including exemptions that protect interests that the government cannot waive, such as grand jury secrecy or the interests of private parties).

In FOIA cases, the "touchstone is reasonableness." *Ctr. for Immigr. Stud. v. USCIS* ("*CIS*"), 628 F.Supp.3d 266, 271 (D.D.C. 2022); *see Marks v. DOJ*, 578 F.2d 261, 263 (9th Cir. 1978) (holding the FBI need not comply with a request requiring "an all-encompassing search … of every field office"). "An agency need not honor a request that [is] so broad as to impose an unreasonable burden upon the agency.'" *Am. Fed'n of Gov't Emps., Loc., 2782 v. Dep't of Com.* ("*AFGE*"), 907 F.2d 203, 209 (D.C. Cir. 1990); *accord Halpern v. FBI*, 181 F.3d 279, 288 (2d Cir. 1999). If a FOIA request would require an agency to "locate, review, redact, and arrange for inspection a vast quantity of material," the agency "need not comply" with that request. *AFGE*, 907 F.2d at 209. That is true even when the records are reasonably described. *Nat'l Sec. Couns. v. CIA*, 960 F.Supp.2d 101, 153 (D.D.C. 2013). In short, "the post-search burden matters to the reasonableness of a FOIA request," since it "can be so heavy that the agency need not respond." *CIS*, 628 F.Supp.3d at 272 (discussing *AFGE*); *see also ACLU Found. of Ariz. v. DHS*, 2017 WL 8895339, at *12 (D. Ariz. Jan. 26, 2017) (R&R).

Accordingly, courts have declined to require agencies to process unreasonably burdensome requests. For example, the Seventh Circuit found that where the segregation of a limited amount of non-exempt information in an agency's investigatory files "would require eight work-years," the request "would impose an inordinate burden" and need not be processed. *Solar Sources, Inc. v. United States*, 142 F.3d 1033, 1039 (7th Cir. 1998) ("Imposing this burden upon the Government, as well as the reviewing courts, would conflict with the 'practical approach' that courts have taken."). Likewise, courts within this circuit have concluded that agencies need not process unreasonable FOIA requests in a variety of circumstances. *See O'Harvey v. Office of Workers' Comp. Programs*, No. 95-0187, slip op. at *4 (E.D. Wash. Dec. 29, 1997) (request "would

entail review of millions of pages of hard copies"), *aff'd on other grounds*;[5] *ACLU Found. of Ariz.*, 2017 WL 8895339 at *12 (agency "would need to 'bleep[] out' exempt information and alter voices"); *Weirich v. Bd. of Governors of Fed. Rsrv. Sys.*, 2010 WL 4717211, at *4 (E.D. Wash. Nov. 15, 2010) (request sought "all documents pertaining to all meetings between all members of the Board"); *cf. ACLU of N. Cal. v. Dep't of Just.*, 2014 WL 4954121, at *8 (N.D. Cal. Sept. 30, 2014) (noting "manual search" of files relating to 12,699 matters in a U.S. Attorney's office "could be unduly burdensome"). Courts elsewhere have reached similar results. *See, e.g.*, *Vietnam Veterans of Am. Conn. Greater Hartford Ch. 120 v. DHS*, 8 F.Supp.3d 188, 203-04 (D. Conn. 2014) (agency need not review 26,000 packets, averaging 50 pages and needing heavy redaction).

   None of the cases discussed in the Revised R&R require the conclusion that, if a FOIA request clearly identifies the documents at issue, then the agency must process it regardless of burden. The Special Master cites, for example, *Yagman v. Pompeo*, 868 F.3d 1075 (9th Cir. 2017). Revised R&R at 20. There, the Ninth Circuit found a request improper due to vagueness and noted that it was "not … say[ing] that [the] request fails simply because it may encompass a large number of documents." *Yagman*, 868 F.3d at 1081 & n.6. The issue of burdensomeness was not before that court. *Id*. And, while a FOIA request seeking a "large number of documents" may be proper, it does not follow that there can be *no limit* to what a single FOIA requester can demand. The subsequent history of *Yagman* confirms this. In a later appeal, the government argued that a revised version of the request would be "overly burdensome" to process. The Ninth Circuit noted that this question was distinct from the vagueness inquiry before it but that the government could raise it on remand. *Yagman v. Haspel*, 769 Fed. App'x. 484, 487 n.2 (9th Cir. 2019) (unpublished); *see Yagman v. Brennan*, 2020 WL 4341592, at *2 (C.D. Cal. June 9, 2020) ("The Ninth Circuit left open the possibility that the CIA could argue that the request was unreasonably burdensome.").

---

[5] ECF 241-3.

Nor do the other cases discussed in the Revised R&R support the proposition that a FOIA request may impose limitless burdens. For example, in *Long v. IRS*, the Ninth Circuit held that a FOIA request that was estimated to cost the government $160,000 was not unreasonable. 596 F.2d 362, 366-67 (9th Cir. 1979). The court of appeals stated that "[i]t can be argued with some persuasiveness that … [Congress] did not intend to foreclose the possibility that at some point the cost of segregation might be so extreme that the request would have to be dismissed as unreasonable," but expressly declined to reach that issue. *Id.* at 367; *see also Public.Resource.org v. IRS*, 78 F.Supp.3d 1262, 1266 (N.D. Cal. 2015) (cost of addressing burdens estimated at $6,200.). As for *Consumer Product Safety Commission v. GTE Sylvania, Inc.*, that case involved a question of statutory interpretation concerning whether the procedural protections of a separate statute applied to disclosures under FOIA. 447 U.S. 102, 104 (1980). The question was whether it would be unduly burdensome to apply those protections to *all* 8,000 FOIA requests the agency estimated it received per year, *id.* at 123, and the case says nothing about whether an agency must process any individual request. Finally, *Fiduccia v. DOJ* concerned *how long* it took an agency to process a request, not whether the request itself was overly burdensome. 185 F.3d 1035, 1039-41 (9th Cir. 1999) (addressing eight-year stay of case to process fewer than 2,000 documents.).

No case cited in the Revised R&R or by Plaintiff requires the conclusion that a FOIA request may impose limitless processing burdens so long as there is an identifiable set of records. By contrast, multiple courts (including within the Ninth Circuit) have reached the opposite result, recognizing that FOIA requests imposing unreasonable processing burdens upon an agency need not be complied with. *See, e.g.*, ECF 241 at 11-15 (discussing cases). The correct result here is to recognize that Plaintiff's request imposes such extreme burdens that it need not be processed.

B.    The Revised R&R Erred in Analyzing Burdens

DOJ is "not aware of any case that has required the processing of so many documents in response to a FOIA request." ECF 241, at 11. And, indeed, neither

14

Plaintiff nor the Revised R&R identifies any such case. DOJ has shown that Plaintiff's
FOIA request would impose unique and extraordinary burdens that go well beyond any
reasonable limit. *See* ECF 241, at 15-19; ECF 248, at 9-14; *see also* Harvey Decl. ¶¶ 27-
60; Butler Decl. ¶¶ 13-25. As the request has been interpreted, the Subpoenaed Records
are *per se* responsive, and thus every document will need close review for exemptions.
Harvey Decl. ¶ 27. *See generally Kalbers*, 22 F.4th at 821. Review will be particularly
difficult, for several reasons. The records were all generated by a private party, so
government employees are less familiar with the records than in the typical FOIA case
involving government documents. *Id.* ¶ 36. These documents will likely contain
substantial information implicating the personal privacy of VW employees or VW's
confidential business information, which may require protection under FOIA. *See id.* ¶¶
38-42. Reviewing for such information is especially time-intensive. *See id.* ¶¶ 38-40
(describing review process for confidential business information, including consultations
with submitter required by 28 C.F.R. § 16.7); *id.* ¶¶ 41-42 (explaining need for line-by-
line review to protect personal information, particularly where records relate to criminal
investigations). In addition, many of the records are primarily in a language other than
English. *Id.* ¶ 35.

This request surpasses any reasonable limit to the burden a FOIA request may
impose. *See* ECF 241, at 15-19. DOJ estimates that it would take hundreds of years and
cost millions of dollars to process. Harvey Decl. ¶¶ 51-54. Plaintiff adduced no contrary
evidence. Nor has he shown how his request for *millions* of third-party records produced
by VW under grand jury subpoena is tailored to his purported interest (ECF 74 at 2) in
the prosecution. *See generally AFGE*, 907 F.2d at 209 (finding the "unreasonableness"
of processing a "vast quantity of material … more obvious [where] largely unnecessary
to the appellants' purpose [and] expressed concern").

The SM did not dispute that Plaintiff's FOIA request would impose extreme
burdens, but declined to find the request improper on that basis. Revised R&R at 23-25.
Rather, the Revised R&R states that "DOJ's burden can be lessened in several ways,"

identifying five "additional methods" that it stated the government had "not [shown] are
not available in the present case." *Id*. That analysis was erroneous. DOJ's declarations
establish that, *even if* the government employed all the methods that it could to speed
processing, the request would remain unduly burdensome. *See generally* Harvey Decl. ¶¶
27-60; Butler Decl. ¶¶ 9-23.

*Limiting Scope of Request*. In his reply memorandum, Plaintiff stated – for the
first time – that he would limit the scope of his request. (ECF 246 at 8.) This tardy offer
fails for two reasons. First, it comes too late: the massive scope of Plaintiff's request and
his refusal to narrow it (*see*, *e*.*g*., ECF 117 at 3) have informed the conduct of this
litigation over the *nearly three years* since the Court found DOJ's reading of the Request
too narrow (ECF 79, and Plaintiff has fought to prevent the government from even
raising its burdensomeness argument. *See*, *e*.*g*., ECF 117, at 3; ECF 130-1, at 8-9; ECF
240, at 4.) Plaintiff cannot defend against the government's burdensomeness argument
by changing the goalposts at this late stage. *See Nat'l Day Laborer Org. Network v. ICE*,
2017 WL 1494513, at *13 (S.D.N.Y. Apr. 19, 2017) (rejecting attempt to narrow FOIA
request *after* the government raised a burdensomeness defense, and citing similar cases);
*CIS*, 628 F.Supp.3d at 274.

Second, the amended request would remain unduly burdensome even if narrowed.
Defendant estimates that the volume of tagged records is between 720,000 (using
document-based de-duplication) and 1.3 million (using family-based de-duplication).
Harvey Decl. ¶¶ 29-30. Based on the information in the declarations, the government
estimates that this would constitute between 10.4 million pages (using document-based
de-duplication) and 16.2 million pages (using family-based de-duplication).[6]

---

[6] Applying family-based de-duplication to the full set of records, the government
estimated it would need to review 5,565,431 records, comprising 69,269,343 pages
(Harvey Decl. ¶¶ 29, 33) or approximately 12.44 pages per record. With approximately
1.3 million tagged records after family-based de-duplication, *id.* ¶ 30, there would be
approximately 16.2 million pages to review. Using document-based de-duplication, the
*(footnote cont'd on next page)*

The time and resources needed to process this narrowed set of records would remain enormous. Using an estimate that 150 records could be processed per day, *see* Harvey Decl. ¶¶ 52-53, and used family-based de-duplication, it would take Defendant approximately 8,667 working days to process the documents, which corresponds to 37.7 years (assuming 230 available working days per year, *see id.* ¶ 53). "Given the complexities of this request … actual processing time may well be higher." *Id.* ¶ 54. Indeed, Defendant explained that the relevant entity could likely process a maximum of 600 records per month in this matter, in light of resource limitations and other requests. *Id.* At that rate, it would take approximately 180 years to process the 1.3 million tagged records after family-based de-duplication.[7] Similarly, the government's estimates of personnel costs, *see id.* ¶ 53, can be updated, using the 37.7 years figure calculated above, to approximately $4.78 million in personnel costs for this single FOIA request. Even after Plaintiff's purported "narrowing," his request remains unduly burdensome.

*Family-Based De-Duplication*. The Revised R&R states that DOJ's document review software "can reduce the burden by conducting an initial review of the records and by limiting the number of records using the 'family-based' de-duplication method." Revised R&R at 25. But the government *already applied* family-based de-duplication to

---

government estimated there are 4,063,121 records, comprising an estimated 58,644,391 pages (*id.* ¶¶ 29, 33), or approximately 14.4 pages per record. Multiplying by the approximately 720,000 tagged records after document-based de-duplication, *id.* ¶ 30, there would be approximately 10.4 million pages. Because Plaintiff repeatedly refused to narrow his FOIA request – offering to do so only *after* the government submitted its declarations, and in a reply filed the same day as the government's final brief was due – the government has used pro rata calculations to update its burdens analysis.

[7] Courts recognize that government agencies have limited resources and so need not process more than a set number of records per month for any given request. *See, e.g.*, *Middle E. Forum v. DHS*, 297 F.Supp.3d 183, 185-87 (D.D.C. 2018) (ordering 500 pages per month noting "long-standing principle[]" that "courts in this Circuit have considered the effect of other FOIA requests when analyzing the burden on an agency of meeting deadlines for review and production of FOIA material in a given case"); *CIS*, 628 F.Supp.3d at 272 ("An agency should not need to spend so much time on one request … at the expense of its more critical duties.").

estimate processing times, Harvey Decl. ¶ 29, and, under the narrowed request, would still need to review approximately 16.2 million pages.

*Automated Translation*. The Revised R&R suggests that the government could use an "automated translation tool" to "greatly reduce the millions of dollars estimated for human translation." Revised R&R at 25. But DOJ has already accounted for automated software in its estimates. *See* Harvey Decl. ¶¶ 47-50; Butler Decl. ¶ 21. In fact, DOJ assumed that automated translations would be sufficient to review approximately 95% of the non-English records. Harvey Decl. ¶ 50. But in some cases, the government explained, such translations may be inadequate (e.g., when evaluating complex business information), and the government anticipates needing to hire translators to properly process such records. *Id.* ¶ 49. The extraordinary costs of this*, see id*. ¶ 50 (estimating costs of $60 to $129 million to translate only 5% of the foreign-language documents), would be *in addition to* the millions of dollars in processing costs. *Id*

*Hiring Staff*.  The SM found that "DOJ has the option of hiring additional staff and/or outside contractors to process the documents." Revised R&R, at 25. This would not, however, reduce the burden on the government – while extra staff may allow processing to occur faster, the government would still need to review millions of pages of documents (and, of course, to pay the additional staff). Moreover, there are significant resource limitations in the relevant FOIA offices, which must balance the time spent on any individual FOIA request with the needs of other requesters. Harvey Decl. ¶¶ 54, 57-60; Butler Decl. ¶¶ 20, 23.

*Representative Sampling*. The SM incorrectly concluded that "neither party has adequately addressed the option of sampling or creating categories of documents for review as potential methods for reducing the burden." Revised R&R at 25. As the Court's Orders make clear (ECF 107, at 4; ECF 98, at 12 n.8), and as DOJ has explained previously (ECF 248, at 13-14 & n3; ECF 116, at 4-5), while representative sampling may reduce certain *litigation* burdens, it cannot meaningfully lessen *processing* burdens.

Representative sampling requires a reviewing agency to first "scrutinize[] an

18

entire document pool" to identify samples that "in its judgment are typical of broader classes of documents within the pool." *In re U.S. Dep't of Def.*, 848 F.2d 232, 237 (D.C. Cir. 1988); *see also* ECF 107, at 4. Then, after the court rules on the exemptions for sample records, the agency applies its decisions "to *all* of the documents at issue." *Davin v. DOJ*, 60 F.3d 1043, 1053 (3d Cir. 1995); *see* ECF 98, at 12 n.8. This means that records must be reviewed *twice*, first to establish a representative sample and then to apply the court's holdings to the *entire set* of records. Sampling would not affect the core drivers of burden here – the huge volume of documents and the processing difficulties – and so would not mitigate the undue burdens imposed by the Request.

### C.   Plaintiff's Other Arguments Are Meritless

Plaintiff raises other arguments that the Revised R&R did not analyze, but that Defendant addresses for completeness. Plaintiff argues that the government has waived this argument by failing to raise it in its answer or its summary judgment motion; that the Court's earlier orders foreclose a burdensomeness argument; and that the SM lacks authority to address burdensomeness. ECF 246 at 5-6. But DOJ has explained that it initially construed Plaintiff's request to encompass less than 300 records, and it was only after the Court found this reading too narrow that the record set exponentially increased to millions of records. *See*, *e.g.*, ECF 241, at 10-11; *Kalbers*, 22 F.4th at 819. This has therefore been DOJ's first opportunity to address burdensomeness. *See* ECF 131; ECF 239. Moreover, the Court has twice affirmed scheduling orders that provided for the SM to address this issue (ECF 143; ECF 223), and Plaintiff did not challenge the SM's order directing the parties to brief the issue (ECF 239). In any event, the issue is now squarely before the Court.

Finally, Plaintiff faults Defendant for "fail[ing] to explain why artificial intelligence ('AI') could not be used to vastly simplify [processing]." ECF 246, at 7. Plaintiff himself provides no evidence that AI *could* be used in such a way, *id.*, and the government is not aware of any way it could be used to conduct FOIA review or otherwise facilitate processing. Harvey Decl. ¶ 45.

## IV.    CONCLUSION

Accordingly, pursuant to Fed. R. Civ. P. 53(f), DOJ respectfully asks this Court to allow the parties an opportunity to be heard and to: (1) reverse the Special Master's recommendations and issue an Order granting the Petitions and protecting the grand jury records at issue from disclosure; (2) find that the Request is overly burdensome and need not be processed.

Dated:  December 19, 2023

Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, Complex and Defensive Litigation
Section

*/s/ Alarice M. Medrano*

ALARICE M. MEDRANO
Assistant United States Attorney

Attorneys for Defendant, United States
Department of Justice

### LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant, certifies that this brief contains 6986 words, which complies with the word limit of L.R. 11-6.1.

Dated: December 19, 2023

*/s/ Alarice M. Medrano*
ALARICE M. MEDRANO