1  Michael H. Steinberg (CSB No. 134179)
2  steinbergm@sullcrom.com
   SULLIVAN & CROMWELL LLP
3  1888 Century Park East, Suite 2100
   Los Angeles, California  90067
4  Telephone:  (310) 712-6600
5  Facsimile:  (310) 712-8800

6  *Attorneys for Defendant Volkswagen AG*

7  [Additional Counsel on Signature Page]

8
9              **UNITED STATES DISTRICT COURT**
10            **CENTRAL DISTRICT OF CALIFORNIA**
11

12 LAWRENCE P. KALBERS,              Case No. 2:18-CV-8439 FMO (PJWx)

13        Plaintiff,                 **VOLKSWAGEN AG'S OBJECTION
                                     TO SPECIAL MASTER'S REVISED
14     vs.                          REPORT AND RECOMMENDATION
                                     RE: DEFENDANT'S PETITIONS
15                                   REGARDING GRAND JURY
   U.S. DEPARTMENT OF JUSTICE,      MATERIAL SOUGHT IN FOIA
16                                   LITIGATION**

17        Defendant.                 Hon. Fernando M. Olguin
                                     United States District Judge
18                                   Courtroom:  6D, 6th Floor
19
20                                   Hon. Suzanne H. Segal
                                     Special Master
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

*Page*

**INTRODUCTION** ........................................................................................... 1

**BACKGROUND** ............................................................................................. 5

**STANDARD OF REVIEW** ............................................................................ 6

**ARGUMENT** ................................................................................................... 7

I.     RULE 6(e) APPLIES TO VW'S RECORDS THAT DOJ OBTAINED
       PURSUANT TO A GRAND JURY SUBPOENA .......................................... 7

       A.     Disclosure of VW's Records Would Reveal Matters Before the
              Grand Jury and Is Thus Barred by Rule 6(e) ...................................... 8

       B.     No Court Has Ever Required the Government to Disclose
              Records Produced Pursuant to Grand Jury Subpoena in
              Response to a FOIA Request ............................................................ 14

II.    IF VW'S RECORDS ARE NOT GRAND JURY MATERIAL, THEY
       ARE NOT AGENCY RECORDS SUBJECT TO FOIA ............................ 17

III.   PLAINTIFF'S FOIA REQUEST IMPOSES A SUBSTANTIAL
       BURDEN ON DOJ AND VW ........................................................... 19

**CONCLUSION** ............................................................................................ 21

# TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*Ayuda, Inc.* v. *Fed. Trade Comm'n*,
   70 F. Supp. 3d 247 (D.D.C. 2014) ...................................................................... 20

*Brunetti* v. *FBI*,
   357 F. Supp. 2d 97 (D.D.C. 2004) ...................................................................... 11

*Church of Scientology Int'l* v. *U.S. Dep't of Justice*,
   30 F.3d 224 (1st Cir. 1994) ...................................................................... 15, 16

*Ctr. for Immigr. Stud.* v. *U.S. Citizenship & Immig. Servs.*,
   628 F. Supp. 3d 266 (D.D.C. 2022) ...................................................................... 19

*Ctr. for Investigative Reporting* v. *U.S. Dep't of Justice*,
   14 F.4th 916 (9th Cir. 2021) ...................................................................... 17

*Douglas Oil Co. of Cal.* v. *Petrol Stops Nw.*,
   441 U.S. 211 (1979) ...................................................................... 7

*First Amendment Coalition* v. *U.S. Dep't of Justice*,
   2021 WL 4926977 (N.D. Cal. Mar. 31, 2021) ...................................................................... 7

*Fund for Constitutional Gov't* v. *Nat'l Archives & Records Serv.*,
   485 F. Supp. 1 (D.D.C. 1978) ...................................................................... 12

*Fund for Constitutional Gov't* v. *Nat'l Archives & Records Serv.*,
   656 F.2d 856 (D.C. Cir. 1981) ...................................................................*passim*

*Int'l Counsel Bureau* v. *U.S. Dep't of Defense*,
   723 F. Supp. 2d 54 (D.D.C. 2010) ...................................................................... 20

*Judicial Watch, Inc.* v. *U.S. Secret Serv.*,
   726 F.3d 208 (D.C. Cir. 2013) ...................................................................... 18

*Long* v. *Immigr. & Customs Enf't*,
   149 F. Supp. 3d 39 (D.D.C. 2015) ...................................................................... 19

*McAtee* v. *U.S. Dep't of Homeland Security*,
   2016 WL 4250267 (D. Mont. Aug. 10, 2016) ...................................................................... 3, 12, 13

**TABLE OF AUTHORITIES**
(*continued*)

*Page(s)*

*Nat'l Day Laborer Org. Network* v. *U.S. Immigr. & Customs Enf't*,
  2017 WL 1494513 (S.D.N.Y. Apr. 19, 2017).....................................20

*Nat'l Sec. Counselors* v. *Cent. Intelligence Agency*,
  969 F.3d 406 (D.C. Cir. 2020) .........................................................19

*In re Optical Disk Drive Antitrust Litig.*,
  801 F.3d 1072 (9th Cir. 2015).........................................................10

*Proctor* v. *Nat'l Archives & Records Admin.*,
  331 F.R.D. 508 (N.D. Cal. 2019) ....................................................11

*Rojas* v. *Fed. Aviation Admin.*,
  941 F.3d 392 (9th Cir. 2019).......................................................4, 18

*SEC* v. *Dresser Indus., Inc.*,
  628 F.2d 1368 (D.C. Cir. 1980) .......................................................10

*Senate of Puerto Rico* v. *U.S. Department of Justice*,
  823 F.2d 574 (D.C. Cir. 1987) .........................................................16

*Standley* v. *U.S. Dep't of Justice*,
  835 F.2d 216 (9th Cir. 1987).............................................................7

*U.S. Dep't of Justice* v. *Tax Analysts*,
  492 U.S. 136 (1989) ....................................................................4, 17

*United States* v. *Dynavac*,
  6 F.3d 1407 (9th Cir. 1993)......................................................*passim*

*United States* v. *Merrill*,
  685 F.3d 1002 (11th Cir. 2012) .......................................................18

*United States* v. *State of Wash.*,
  730 F.2d 1314 (9th Cir. 1984)............................................................6

*Vietnam Veterans of Am. Conn. Greater Hartford Ch. 120* v.
  *U.S. Dep't of Homeland Sec.*,
  8 F. Supp. 3d 188 (D. Conn. 2014) .................................................20

-ii-

# TABLE OF AUTHORITIES
(*continued*)

*Page(s)*

*Wright* v. *U.S. Dep't of Justice*,
   379 F. Supp. 3d 1067 (S.D. Cal. 2019) ................................................ 7

*Yagman* v. *U.S. Dep't of Justice*,
   2014 WL 1245305 (C.D. Cal. Mar. 22, 2014) ................................. 2, 7

**Statutes & Regulations**

5 U.S.C. § 552 ............................................................................... 1, 7, 20

28 C.F.R. § 16.7 ................................................................................. 5, 20

**Rules**

Federal Rule of Criminal Procedure 6 .............................................*passim*

Fedederal Rule of Civil Procedure 53 ..................................................... 6

**Other Authority**

Sara Sun Beale, *et. al*, *Grand Jury Law and Practice* (2d ed. 2018) ................ 4, 19

Pursuant to Federal Rule of Civil Procedure 53(f)(2), Volkswagen AG ("VW") respectfully objects to the Special Master's Revised Report and Recommendation (the "Revised Report") (ECF No. 253-1) regarding the Department of Justice's ("DOJ") Petitions Regarding Grand Jury Material Sought in Freedom of Information Act Litigation (the "Petitions") (ECF No. 111-1). The Petitions ask this Court to uphold the application of Federal Rule of Criminal Procedure 6(e) and preclude DOJ from publicly disclosing under the Freedom of Information Act ("FOIA") the material it obtained from VW pursuant to a grand jury subpoena. The record developed before the Special Master demonstrates that (i) the documents that a grand jury subpoenaed from VW are exempt from disclosure under Rule 6(e) and FOIA Exemption 3; (ii) if the documents are not protected grand jury materials, they are not DOJ agency records at all; and (iii) Plaintiff's FOIA request is unduly burdensome.

## INTRODUCTION

This is the second time that the Special Master has issued a report and recommendation on the Petitions. After extensive briefing and further development of the factual record, two things are clear: (1) all of the millions of VW's confidential business records that DOJ has identified as responsive to the relevant FOIA request are in DOJ's possession *solely* pursuant to a grand jury subpoena issued in the United States District Court for the Eastern District of Michigan; and (2) Plaintiff has no independent right to seek those documents, including through civil discovery. Those two facts should end this case. Neither the parties nor the Revised Report has identified a single decision anywhere in the country allowing a member of the public to use FOIA to obtain from the government confidential private business records produced pursuant to a grand jury subpoena. This Court should not be the first.

Rule 6(e), which applies to this case via FOIA Exemption 3, 5 U.S.C. § 552(b)(3), mandates that DOJ and other participants in grand jury proceedings

---

1   "must not disclose a matter occurring before the grand jury," with limited exceptions
2   not relevant here.  Fed. R. Crim. P. 6(e)(2)–(3); *Yagman* v. *U.S. Dep't of Justice*,
3   2014 WL 1245305, at *10 (C.D. Cal. Mar. 22, 2014) (finding the government
4   correctly "asserted Exemption 3, as prescribed in Rule 6(e) of the Federal Rules of
5   Criminal Procedure, to withhold Federal Grand Jury information").  Where, as here,
6   a FOIA requester "seeks information from an entity whose possession of that
7   information is directly linked to its role relating to the grand jury investigations,"
8   disclosure of that information, by definition, "would reveal matters occurring before
9   the grand jury."  *Fund for Constitutional Gov't* v. *Nat'l Archives & Records Serv.*,
10  656 F.2d 856, 869-70 (D.C. Cir. 1981).  That is the whole point of Plaintiff's request:
11  Plaintiff wants to know what information prosecutors sought and received in
12  connection with a grand jury investigation.  The grand jury proceedings are thus not
13  segregable or incidental; they are the *direct subject* of Plaintiff's FOIA request.

14          The Revised Report properly acknowledges that the millions of
15  documents responsive to Plaintiff's FOIA request are in DOJ's possession solely
16  "pursuant to a grand jury subpoena," and that Plaintiff has no independent
17  entitlement to their discovery.  (Revised Report at 2.)  Nevertheless, the Revised
18  Report recommends that the Petitions be denied because VW did not create the
19  documents in response to the grand jury subpoena, and DOJ did not sufficiently
20  demonstrate "that release of the sought-after documents would compromise the
21  secrecy of the grand jury process."  (Revised Report at 19.)  The Revised Report
22  should not be adopted.

23          *First*, the Revised Report's ruling on Rule 6(e) rests on a misapplication
24  of law.  The Special Master found that the documents that VW produced pursuant
25  to a grand jury subpoena are "agency records" because "DOJ obtained the requested
26  materials in the legitimate conduct of its official duties – i.e., the grand jury
27  investigation."  (Revised Report at 10.)  The Special Master nevertheless concluded
28  that those documents are not protected from disclosure under Rule 6(e) because VW

-2-

1   "*created* [them] for purposes independent of grand jury investigations." (*Id.* at 19
2   (quoting *United States* v. *Dynavac*, 6 F.3d 1407, 1412 (9th Cir. 1993)).)  But the
3   relevant test is not whether documents were created for the grand jury proceeding or
4   for another reason; it is whether the document is sought "to learn what took place
5   before the grand jury," and if its disclosure would "compromise the integrity of the
6   grand jury process." *Dynavac*, 6 F.3d at 1411-12.  And when the documents are
7   identified by their production to a grand jury and are in the government's possession
8   only because of a grand jury subpoena, they necessarily reveal something about the
9   grand jury.  *Fund for Constitutional Gov't*, 656 F.2d at 870 (disclosure of
10  information by an entity "whose possession of that information is directly linked to
11  its role relating to the grand jury investigations" is prohibited under Rule 6(e));
12  *McAtee* v. *U.S. Dep't of Homeland Security*, 2016 WL 4250267, at *2 (D. Mont.
13  Aug. 10, 2016) (holding a requester "cannot use FOIA . . . to obtain the records" of
14  a private entity from a government agency "which has the records as a result of a
15  grand jury investigation").

16         By contrast, the Special Master relied on inapposite cases in which an
17  entitlement to documents existed independent from the grand jury proceedings—
18  including cases where an agency sought information from a private party for a
19  separate investigation that "[was] being conducted parallel to a criminal
20  investigation" (Revised Report at 13), or "cases where a civil litigant attempt[ed] to
21  obtain grand jury materials through [civil] discovery" (*id.* at 15).  That is clearly not
22  the case here.  Plaintiff is not a government agency or a civil litigant with the right
23  to obtain discovery from VW, directly or indirectly.  Plaintiff's sole path to obtaining
24  these documents is that VW gave them to prosecutors pursuant to a grand jury
25  subpoena—and now that they are in the prosecutors' hands, Plaintiff is asking for
26  them under FOIA.  FOIA and Rule 6(e) do not allow that maneuver.

27         *Second*, and alternatively, if the requested documents are not
28  sufficiently tied to the grand jury proceedings to trigger Rule 6(e), then they are not

1   "agency records" subject to FOIA at all.  For documents to be "agency records,"

2   they must have been (i) "create[d] or obtain[ed]" by an agency, and (ii) "in [the]

3   control" of the agency "at the time the FOIA request [was] made."  *U.S. Dep't of*

4   *Justice* v. *Tax Analysts*, 492 U.S. 136, 144-45 (1989).  For an agency to "control" a

5   document under the second prong, that document must come "into the agency's

6   possession in the legitimate conduct of its official duties" or "in connection with the

7   transaction of public business."  *Rojas* v. *Fed. Aviation Admin.*, 941 F.3d 392, 408

8   (9th Cir. 2019) (quoting *Tax Analysts*, 492 U.S. at 145).  In *Dynavac*, the Ninth

9   Circuit recognized that documents produced by parties like VW in response to a

10  grand jury subpoena "remain the property of" the producing party, *Dynavac*, 6 F.3d

11  at 1415, and "materials subpoenaed by the grand jury are regarded as being held by

12  the grand jury only temporarily and under a limited authority," Sara Sun Beale, *et*

13  *al.*, *Grand Jury Law and Practice* § 5.18 (2d ed. 2018).  If, as the Special Master

14  found, the documents here are not protected grand jury materials because they may

15  not have been "actually presented to and/or considered by the grand jury" (Revised

16  Report at 19), then they constitute nothing more than VW's private information

17  obtained but not used by the government.  Put differently, the Revised Report cannot

18  be right on both points:  either the documents were defined by their role in the grand

19  jury proceedings and are protected by Rule 6(e), or the documents were

20  insufficiently related to the actual prosecution and are not "agency records" in DOJ's

21  control subject to FOIA.

22          *Third*, even if Rule 6(e) did not apply and the documents were agency

23  records, the Revised Report does not adequately consider the massively burdensome

24  line-by-line review required before any documents may be logged in a *Vaughn* index

25  or produced.  These documents are internal VW emails and other business records

26  with confidential commercial and personal identifying information.  As part of

27  DOJ's processing of the documents, VW will be required to review and raise any

28  objections to disclosure under FOIA Exemption 4, which protects confidential

-4-

commercial or financial information, and FOIA Exemption 6, which protects personal privacy. 28 C.F.R. § 16.7(e). Although the Special Master proposes the use of technology-assisted de-duplication, technology-assisted translation, and representative sampling (Revised Report at 25-26), none of these strategies would relieve DOJ or VW of the obligation to conduct a manual line-by-line review of each document. Even with Plaintiff's agreement to limit his request to between 720,000 and 1.3 million documents, this review would be overly burdensome and is unwarranted under FOIA.

## BACKGROUND

On May 24, 2021, DOJ filed Petitions in two pre-existing criminal cases in the United States District Court for the Eastern District of Michigan, seeking a determination of whether the "millions of records" VW produced "in response to a grand jury subpoena" may be released pursuant to Rule 6(e)(3)(E)(i) in response to Plaintiff's FOIA request. (Petitions at 46-48.) On May 27, 2021, the United States District Court for the Eastern District of Michigan *sua sponte* transferred the Petitions to this Court in sealed orders, and the transferred actions were assigned the civil docket numbers 2:21-cv-04558 (*United States* v. *Liang*) and 2:21-cv-04559 (*United States* v. *Bauder*). On July 6, 2021, this Court consolidated *Liang* and *Bauder*—which are the relevant cases here—with the *Kalbers* FOIA case, and referred the Petitions and other pending matters to the Special Master. (ECF No. 125.) Since then, Plaintiff, DOJ, and VW have litigated the Petitions as a threshold matter, given the statutory secrecy restrictions imposed by Rule 6(e).

On November 5, 2021, the Special Master issued a Report and Recommendation, which recommended that the Petitions be denied and that the Court authorize disclosure of all documents responsive to Plaintiff's FOIA request subject to the submission of a *Vaughn* index consistent with the Court's February 5, 2021 order. (ECF No. 152.) On August 31, 2022, the Court issued a Minute Order referring the Report to the Special Master for reconsideration. (ECF No. 190.) The

1  Minute Order stated that the "Special Master shall direct the parties to address the

2  governing law for determining whether the documents at issue are protected from

3  disclosure under Rule 6(e)" and directed DOJ to "show via a revised *Vaughn* Index

4  that the documents at issue are protected from disclosure under Rule 6(e)." (*Id.*)

5      Accordingly, on October 17, 2022, the Special Master directed the

6  parties to file additional briefing. (ECF No. 204-1 at 1-2.)[1]  On May 16, 2023, the

7  Special Master ordered further briefing on five "outstanding legal issues," including

8  (i) "whether the records at issue constitute 'agency records' within the meaning of

9  FOIA"; (ii) how Rule 6(e) is "construed when records are requested under FOIA";

10  and (iii) whether "the FOIA Request, interpreted to seek millions of records, [is]

11  unduly burdensome." (ECF No. 239 at 1-2.)[2]  On November 28, 2023, the Special

12  Master issued the Revised Report, recommending that the Petitions be denied.

13  (Revised Report at 29.)

14                    **STANDARD OF REVIEW**

15      In reviewing the Revised Report, this Court "must decide *de novo*" all

16  objections to findings of fact and conclusions of law made or recommended by the

17  Special Master. Fed. R. Civ. P. 53(f)(3) & (4); *United States* v. *State of Wash.*, 730

18  F.2d 1314, 1317 (9th Cir. 1984) ("Where a Special Master resolves a mixed question

19  of law and fact," that determination "is subject to de novo review.").

20

21

22  [1]    *See* ECF Nos. 216 & 220 (VW's briefs); ECF Nos. 214 & 221 (DOJ's

23  briefs); ECF Nos. 215 & 219 (Plaintiff's briefs).

    [2]    *See* ECF Nos. 242 & 247 (VW's briefs); ECF Nos. 241 & 248 (DOJ's

24  briefs); ECF Nos. 240 & 246 (Plaintiff's briefs).  On August 4, 2023, Plaintiff

25  agreed to "voluntarily exclude[]" from his FOIA request approximately "3.3-4.3

    million [untagged] records . . . not identified for review by government

26  prosecutors." (*See* Pl.'s Reply Br. (ECF No. 246), at 9.)  Plaintiff continues to

27  seek VW's documents provided to DOJ pursuant to the grand jury subpoena that

    were reviewed and tagged by the government during its investigation. (*Id.* at 9-

28  10.)  DOJ estimates that, after de-duplication, there are between 720,000 and 1.3

    million "tagged" documents. (Declaration of Judy Harvey ¶ 30, ECF No. 241-1.)

-6-

**ARGUMENT**

## I.  RULE 6(e) APPLIES TO VW'S RECORDS THAT DOJ OBTAINED PURSUANT TO A GRAND JURY SUBPOENA.

FOIA Exemption 3 protects from disclosure any information "specifically exempted from disclosure by statute . . . if that statute . . . requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue." 5 U.S.C. § 552(b)(3).  There is no dispute that Rule 6(e) is one of the statutes covered by FOIA Exemption 3.  *First Amendment Coalition* v. *U.S. Dep't of Justice*, 2021 WL 4926977, at *17 n.13 (N.D. Cal. Mar. 31, 2021) ("Courts have recognized that Rule 6(e) qualifies as an exempting statute for purposes of Exemption 3." (citing *Fund for Constitutional Gov't*, 656 F.2d at 867)).

Rule 6(e) codifies a long-standing presumption that grand jury proceedings should be kept secret.  That presumption of secrecy, adopted by the Supreme Court, reflects the principle that "the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings." *Douglas Oil Co. of Cal.* v. *Petrol Stops Nw.*, 441 U.S. 211, 218 (1979).  The Ninth Circuit has recognized that a "matter[] occurring before the grand jury" under Rule 6(e) has a necessarily broad scope that "extends to 'anything which may reveal what occurred before the grand jury,'" including but not limited to "information which would reveal 'the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations or questions of the jurors, and the like.'" *Standley* v. *U.S. Dep't of Justice*, 835 F.2d 216, 218 (9th Cir. 1987); *see also Yagman*, 2014 WL 1245305, at *10 ("Rule (6)(e) embodies a broad policy of preserving the secrecy of grand jury material."); *Wright* v. *U.S. Dep't of Justice*, 379 F. Supp. 3d 1067, 1074-75 (S.D. Cal. 2019) ("Documents related to grand jury investigations enjoy broad protection from public disclosure.").

**A. Disclosure of VW's Records Would Reveal Matters Before the Grand Jury and Is Thus Barred by Rule 6(e).**

Contrary to the Revised Report, VW's documents produced to DOJ in response to a grand jury subpoena fall squarely within the ambit of Rule 6(e) and are therefore exempt from disclosure under FOIA Exemption 3.  As the Special Master found, the *only* reason the records at issue are even in DOJ's possession and considered "agency records" is because of "the grand jury investigation."  (*See* Revised Report at 10 ("DOJ obtained the requested materials in the legitimate conduct of its official duties — i.e., the grand jury investigation.").)  Thus, as a factual matter, VW's subpoenaed records will show precisely what the grand jury obtained from VW as part of its investigation.[3]

As a legal matter, protection under Rule 6(e) should necessarily flow from that factual determination.  Disclosure of documents that DOJ obtained solely for grand jury proceedings would by definition reveal the "direction and strategy of the [grand jury] investigation," which Rule 6(e) is supposed to preclude.  *Fund for Constitutional Gov't*, 656 F.2d at 870.  Indeed, Plaintiff himself has said he wishes to use his FOIA request for just that reason—to reveal exactly what materials prosecutors reviewed and how the grand jury investigation unfolded.  (Pl.'s Mot. for Review of Special Master's Order (ECF No. 209), at 4 (characterizing Professor Kalbers as a "researcher" seeking "access to the evidence of the crimes" considered by the grand jury).)  Plaintiff's latest attempts to narrow his request only underscore that objective, as he proposes to limit his request to documents specifically "tagged"

---

[3]   Although the Court interpreted Plaintiff's FOIA request to cover documents that VW produced to DOJ "regardless of whether they were produced in response to a grand jury subpoena or other court-ordered process" (ECF No. 98 at 4), this finding by the Special Master confirms that there was never any "other court-ordered process."  It is now undisputed that VW produced millions of its confidential business records pursuant only to a grand jury subpoena.

1   and reviewed by prosecutors as part of the grand jury investigation. (Pl.'s Reply Br.

2   (ECF No. 246), at 9.)

3         Courts undertake different analyses (i) when materials otherwise before

4   a grand jury are simultaneously sought for a separate government investigation or

5   through civil discovery (*see* Revised Report at 13, 15), and (ii) as here, when

6   materials are in the government's possession and theoretically available under FOIA

7   only *because* they were before the grand jury (*see id.* at 16-17). In the first scenario,

8   unlike here, a requester seeks records from a party that "independently generated"

9   those records, and the records are "sought for legitimate purposes" for a separate

10  proceeding *via an agency subpoena or civil discovery request*. *See Dynavac*, 6 F.3d

11  at 1412. In those cases, if the requested records also happen to be before a grand

12  jury, the Ninth Circuit has held that courts must weigh whether disclosure in the

13  other proceeding would "seriously compromise the secrecy of the grand jury's

14  deliberations." *Dynavac*, 6 F.3d at 1412 (quoting *DiLeo* v. *Comm'r of Internal*

15  *Revenue*, 959 F.2d 16, 19 (2d Cir. 1992)). Put differently, in those cases, one party

16  has some distinct entitlement to a set of records from the party that created them, but

17  the party that created them raises the separate existence of a grand jury proceeding

18  in an attempt to block disclosure of documents to which the other party is otherwise

19  entitled.

20        In the Revised Report, the Special Master mistakenly followed the

21  approach that courts apply in the first scenario, where grand jury materials are

22  simultaneously sought for a separate government investigation or through civil

23  discovery. For example, in *Dynavac*, the IRS issued *administrative summonses* to

24  Dynavac and three individuals, seeking the company's business books and records,

25  which earlier had been produced to a grand jury. 6 F.3d at 1410. The Ninth Circuit

26  held that because the "IRS ha[d] a legitimate interest in the documents as part of its

27  authority to assess civil tax liabilities," and because "the records were subpoenaed

28  directly from respondents, without mention of the grand jury," "the integrity of the

1  grand jury's deliberative process would not be compromised by their disclosure" in

2  the ordinary IRS investigative process.  *Id.* at 1414 (citations omitted).   As the

3  Special Master observed, in that case, the court "balance[d] the competing interests

4  of disclosure and secrecy" (Revised Report at 13) to find that "disclosure of business

5  records independently generated and sought for legitimate purposes[] would not

6  'seriously compromise the secrecy of the grand jury's deliberations.'"  (*Id.* at 14-15

7  (quoting *Dynavac*, 6 F.3d at 1412).)

8         Likewise, in *Securities and Exchange Commission* v. *Dresser*

9  *Industries, Inc.*, the D.C. Circuit held that Rule 6(e) did not preclude a corporation

10 from turning over copies of financial statements and other business records

11 *subpoenaed* by the SEC, even though those records had also been sought by a grand

12 jury subpoena issued around the same time.  628 F.2d 1368, 1373, 1384 (D.C. Cir.

13 1980).  The court explained that the SEC was free to fulfill its "civil enforcement

14 responsibilities" and that, because the "SEC has subpoenaed [the records] directly

15 from [the corporation], without mention of the grand jury[, t]hey do not reveal what

16 has occurred before the grand jury[.]"  *Id.* at 1380, 1383.  Thus, as in *Dynavac*, the

17 court's holding rested on the findings that (i) the records at issue were sought from

18 a private party pursuant to a "lawful [agency] subpoena" that did not "mention . . .

19 the grand jury," and (ii) their disclosure would not "reveal what has occurred before

20 the grand jury."  *Id.* at 1383.

21        Similarly, in *In re Optical Disk Drive Antitrust Litigation*, the Ninth

22 Circuit found that grand jury secrecy would not be compromised by the FBI's

23 disclosure of the agency's tape recordings in response to a *third-party subpoena*

24 from civil antitrust plaintiffs when those recordings were not "a product of the grand

25 jury's investigation."  801 F.3d 1072, 1078 (9th Cir. 2015).  In particular, the Ninth

26 Circuit found that even though those recordings may have been "developed with an

27 eye toward ultimate use in a grand jury proceeding," the FBI created them before

28 the grand jury was empaneled, and the recordings "exist[ed] apart from and [were]

-10-

VOLKSWAGEN AG'S OBJECTION TO SPECIAL MASTER'S REVISED REPORT AND RECOMMENDATION
RE: DEFENDANT'S PETITIONS REGARDING GRAND JURY MATERIAL SOUGHT IN FOIA LITIGATION

1 developed independently of grand jury processes." *Id.* (quoting *In re Grand Jury*

2 *Matter*, 682 F.2d 61, 64 (3d Cir. 1982)). As the Special Master observed, the *Optical*

3 *Disk Drive* court "balance[d] the competing interests of disclosure and secrecy" in

4 the civil discovery context of that case. (Revised Report at 15.)

5        The scenario here is different from *Dynavac*, *Dresser*, and *Optical Disk*.

6 Plaintiff is not part of a lawful administrative investigation operating separately from

7 the grand jury proceedings, and DOJ did not generate VW's records independently

8 of the grand jury investigation. Nor does Plaintiff have a claim against VW that

9 entitles him to civil discovery from VW. He has no other path to these documents

10 apart from the grand jury investigation; he wants the grand jury investigation itself.

11 Where, as here, a FOIA requester "seeks information from an entity whose

12 possession of that information is directly linked to its role relating to the grand jury

13 investigations," "[t]he relevant inquiry is not whether the party seeking the

14 information has an interest other than in its role in a grand jury investigation but

15 whether revelation in the particular context would in fact reveal what was before the

16 grand jury." *Fund for Constitutional Gov't*, 656 F.2d at 870.[4]

17        This Court has never confronted the scenario here, but the D.C. Circuit

18 has. In *Fund for Constitutional Government*, the D.C. Circuit considered whether

19 "approximately five hundred thousand pages of documents generated in the course

20 of six investigations conducted by the Watergate Special Prosecution Force" were

21 subject to disclosure pursuant to a FOIA request. 656 F.2d at 860. Specifically, the

22 government had withheld documents "contain[ing] . . . . discussions of the scope,

23

24 _____

[4]     *See also Proctor* v. *Nat'l Archives & Records Admin.*, 331 F.R.D. 508, 513-
25 15 (N.D. Cal. 2019) (observing that courts have found that "testimony and other
   interviews obtained pursuant to grand jury subpoenas or by grand jury
26 investigators are materials subject to secrecy under Rule 6(e)" and protected from
   disclosure under FOIA Exemption 3); *Brunetti* v. *FBI*, 357 F. Supp. 2d 97, 105
27 (D.D.C. 2004) (disclosure of "records subpoenaed by the grand jury . . . would
   reveal the substance of the grand jury's investigation" and such "information [is]
28 properly withheld . . . pursuant to" Exemption 3).

1  focus and direction of grand jury investigations; identification of documents
2  considered by the grand jury; and conclusions reached by the grand jury" pursuant
3  to Exemption 3.  *Fund for Constitutional Gov't* v. *Nat'l Archives & Records Serv.*,
4  485 F. Supp. 1, 10 (D.D.C. 1978).  In analyzing the application of Rule 6(e) to these
5  materials, the D.C. Circuit explained that the FOIA requester "[sought] information
6  from an entity *whose possession* of that information is directly linked to its role
7  relating to the grand jury investigations," and "documents in the possession of [the
8  government] ***were not obtained for any independent purpose but were obtained for***
9  ***use in grand jury investigations.  As such, their disclosure would reveal matters***
10  ***occurring before the grand jury*.*"  *Fund for Constitutional Gov't*, 656 F.2d at 870
11  (emphasis added).

12          Similarly, in *McAtee* v. *United States Department of Homeland*
13  *Security*, which the parties have cited but the Revised Report does not mention,[5]
14  another district court in the Ninth Circuit held that "documents produced in response
15  to grand jury subpoenas and the documents used as grand jury exhibits" may not be
16  disclosed by a law enforcement agency pursuant to a FOIA request.  2016 WL
17  4250267, at *2.  The court explained that cases—including *Dynavac* and *Dresser*—
18  (i) where "government agencies seek the production of private entities' records
19  directly from the private entities, and the private entities attempt to prevent
20  disclosure of their records based on the fact that the records are also the subject of
21  grand jury investigations" are treated differently in the Ninth Circuit than cases
22  (ii) where, like here, a private party "seeks the records of private entities . . . from
23  the [government] which has the records as a result of a grand jury investigation."  *Id.*
24  (citing *Dynavac*, 6 F.3d 1407; *Dresser*, 628 F.3d 1368).  In the former set of cases,
25  the relevant inquiry involves a case-by-case assessment of whether the release of the
26  requested material would "disclose matters occurring before the grand jury."  *See id.*
27  
28  [5]      *See*, *e.g.*, DOJ's Br. (ECF No. 241) at 15-16; VW's Supp. Memo. (ECF No.
216) at 5, 12, 14,18.

1   (quoting Rule 6(e)).  In denying the FOIA request, the *McAtee* court found that such

2   a case-by-case inquiry did not apply because a request for the records of a private

3   entity that were in the possession of the Secret Service "as a result of a grand jury

4   investigation" would necessarily "disclose matters occurring before the grand jury."

5   *Id.*

6          Under the standard applied in *Fund for Constitutional Government* and

7   *McAtee*, Rule 6(e) bars the disclosure under FOIA of documents that VW produced

8   pursuant to a grand jury subpoena.  Just as in *Fund for Constitutional Government*,

9   there is no dispute that the documents are "in the possession of" DOJ solely "for use

10  in grand jury investigations."  656 F.2d at 870.  Indeed, the Special Master found

11  that "DOJ obtained the requested materials in the legitimate conduct of its official

12  duties – i.e. the grand jury investigation."  (Revised Report at 10.)  Specifically,

13  VW's documents were gathered at the direction of the grand jury through its

14  subpoena power.  (*Id.* at 2.)  Thus, "their disclosure would reveal matters occurring

15  before the grand jury."  *Fund for Constitutional Gov't*, 656 F.2d at 870.

16         Although the Special Master recognized that courts like the D.C.

17  Circuit have undertaken a different inquiry when grand jury materials are sought

18  "[i]n the FOIA context" as opposed to when grand jury materials are sought in a

19  "parallel" government investigation or in civil discovery (Revised Report at 13, 16),

20  the Special Master did *not* apply the relevant standard set forth in *Fund for*

21  *Constitutional Government*.  Instead, the Special Master applied the case-by-case

22  approach adopted in *Dynavac* for parallel investigations and civil discovery, rather

23  than the categorical approach appropriate for FOIA requests that directly target

24  grand jury proceedings.  This was in error.  *McAtee*, 2016 WL 4250267, at *2

25  ("[R]eliance on cases that address disclosure of grand jury materials outside of the

26  FOIA context is misplaced.").

27         The Special Master's rationale for discarding the line between (i) cases

28  with independent entitlements to records and (ii) FOIA cases that directly target

-13-

grand jury materials was misguided.  As an initial matter, the Special Master distinguished *Fund for Constitutional Government* on the ground that the records sought there were "directly linked to criminal prosecution," whereas here VW's records were "created for purposes independent of grand jury investigations." (Revised Report at 18-19.)  But as the Special Master recognized, the documents at issue in *Fund for Constitutional Government* were not only documents generated by or for the grand jury (*e.g.*, material "naming or identifying grand jury witnesses" or "summarizing grand jury testimony"), but also included "documents *considered by* the grand jury" (*id.* at 18), including "documents subpoenaed as exhibits," as well. 656 F.2d at 869.  Thus, the fact that VW's records were "created for purposes independent of [the] grand jury investigation[]" (Revised Report at 19) rather than created by or the grand jury does not remove them from the protection of Rule 6(e). More fundamentally, asking whether the documents were originally "created" *by VW* for purposes other than the grand jury investigations is the wrong question.  The proper question is whether disclosure of the documents or information would require DOJ to reveal the "scope, focus and direction of the grand jury investigation[]." 656 F.2d at 869.  Here, it clearly would.  DOJ would need to disclose what documents the grand jury obtained from VW.

### B. No Court Has Ever Required the Government to Disclose Records Produced Pursuant to Grand Jury Subpoena in Response to a FOIA Request.

A holding by this Court that would permit Plaintiff to use FOIA to demand that DOJ disclose documents it obtained through a grand jury subpoena would be unprecedented.  As explained above, similar requests have been rejected in at least two cases, *Fund for Constitutional Government* and *McAtee*.  By contrast, the Revised Report relies on two decisions, *Church of Scientology International* v. *United States Dep't of Justice* and *Senate of Puerto Rico* v. *United States Department of Justice* for the supposed proposition that "courts have routinely

-14-

1   rejected [a] *per se* rule" against disclosure of grand jury materials in response to

2   FOIA requests.  (*See* Revised Report at 17-18.)  That reliance is misplaced.

3           In *Church of Scientology*, the Church of Scientology sought to compel

4   disclosure, through FOIA, of "all records located in the U.S. Attorney's office in

5   Boston that concerned the Church, two related Church entities, or Scientology in

6   general."   30 F.3d 224, 226-27 (1st Cir. 1994).   DOJ invoked Exemption 3 to

7   withhold "grand jury materials made exempt from disclosure by Rule 6(e)," and

8   "[t]he parties *agree[d] that [DOJ] properly invoked this provision to withhold grand*

9   *jury materials*."  *Id.* at 235 (emphasis added).  However, the Church argued that "it

10  [was] impossible to determine from the *Vaughn* index . . . whether all of the

11  documents for which the [DOJ] asserted this privilege genuinely constitute 'grand

12  jury' material."   *Id.*   The court agreed with the Church, explaining that "the

13  government needs to provide some basis for a claim that releasing [withheld

14  records]," including documents that happen to be labeled "Grand Jury Materials,"

15  "will implicate the secrecy concerns protected by Rule 6(e)."  *Id.* at 235.  The court

16  clarified, however, that "[t]he government's obligation . . . is minimal except for

17  materials assertedly connected to a grand jury investigation that bear no facial

18  connection to grand jury proceedings."  *Id.* at 236 n.18.  The government simply had

19  not demonstrated how it had obtained or created the responsive records.

20          Unlike in *Church of Scientology*, the Special Master expressly found

21  that "DOJ obtained the requested materials in the legitimate conduct of its official

22  duties — i.e., the grand jury investigation."  (Revised Report at 10.)[6]  Here, *all*

23  records responsive to a FOIA request were obtained by the government solely

24

25  [6]     *See also* Declaration of Stacy R. Stoller ¶ 34, ECF No. 71-1 ("Jones Day
26  produced approximately six-and-a-half million documents in response to grand
    jury subpoena"); Declaration of Alison Anderson ("Anderson Decl.") ¶ 3, ECF
27  No. 142-1 (VW "produced millions of documents in response to grand jury
    subpoena"); Blaha Decl. ¶ 13 ("Jones Day produced millions of documents in
28  response to grand jury subpoena").)

1   pursuant to a grand jury subpoena—and are labelled as such[7]—and thus there can be

2   no question that such documents "genuinely constitute 'grand jury' material."

3   *Church of Scientology*, 30 F.3d at 235.[8]

4         Likewise, in *Senate of Puerto Rico* v. *United States Department of*

5   *Justice*, the Senate of Puerto Rico submitted a general FOIA request to DOJ for "all

6   evidence collected by DOJ and any of its sub-divisions . . . including, *but not limited*

7   *to*, evidence submitted for the consideration of any Grand Jury" in connection with

8   criminal investigations.  823 F.2d 574, 581-82 (D.C. Cir. 1987) (emphasis added).

9   In response to the request, DOJ withheld "2000 pages of Grand Jury material,"

10  including "Grand Jury transcripts" and "four boxes of Grand Jury exhibits."  *Id.* at

11  583-84.  However, as the court explained, "had the DOJ released these exhibits,

12  along with the over 1,000 pages of non-grand jury material it did release, there is

13  nothing . . . to suggest that [anyone] would have been able to determine *which*

14  documents had been submitted to the grand jury."  *Id.* at 583.  Thus, the court found

15  that DOJ's explanation as to the application of Exemption 3 was insufficient because

16  DOJ had said "little more than that the material has been presented to the grand

17  jury," and had not provided an "affirmative demonstration of a nexus between

18  disclosure and revelation of a protected aspect of the grand jury's investigation."  *Id.*

19  at 584.  The court emphasized that it had held "only that the defendants have not yet

20  supplied the information a court must have in order to intelligently make that

21  judgment."  *Id.*

22        Unlike in *Senate of Puerto Rico*, DOJ has demonstrated a direct

23  "nexus" between disclosure and the revelation of protected grand jury information:

24  Plaintiff's FOIA request seeks disclosure from DOJ lawyers of *only* the information

25  they obtained from VW and reviewed in the course of their investigation for the

26   

---

27  [7]   Jones Day marked documents produced to DOJ "FOIA CONFIDENTIAL – PRODUCED PURSUANT TO RULE 6(e)."  (Declaration of Jason M.

28  Weinstein ("Weinstein Decl.") ¶ 7, ECF No. 180-1.)

[8]   *See* Weinstein Decl. ¶ 7.

grand jury and nothing else—that is, the direction of the grand jury investigation itself.  (Petitions at 14-15.)  DOJ has not identified any other records responsive to the relevant FOIA request with which grand-jury-subpoenaed material could be combined.

Simply put, because Plaintiff seeks VW's documents that are solely in DOJ's possession because a grand jury subpoenaed them, his FOIA request effectively seeks "materials submitted by VW pursuant to a grand jury subpoena." The disclosure of such materials—including documents tagged by prosecutors as part of the grand jury investigation—would necessarily "reveal matters occurring before the grand jury" under Rule 6(e), and such documents are thus exempt from FOIA under Exemption 3.  *Fund for Constitutional Gov't*, 656 F.2d at 870.  (*See also* VW's Br. on Outstanding Legal Issues Related to Petitions (ECF No. 242), at 9-13; DOJ's Obj. to Report (ECF No. 159), at 20-25; VW's Obj. to Report (ECF No. 161), at 26-29; DOJ's Response to Pl.'s Obj. to Report (ECF No. 179), at 19-21.) Accordingly, the Petitions should be granted, and DOJ should be precluded from disclosing additional information about what it learned from VW during the course of the grand jury investigation.

## II. IF VW'S RECORDS ARE NOT GRAND JURY MATERIAL, THEY ARE NOT AGENCY RECORDS SUBJECT TO FOIA.

In the alternative, to the extent that the Court finds that any of VW's documents do not fall within the ambit of Rule 6(e), DOJ does not have sufficient control over those documents for them to be deemed agency records subject to FOIA at all.  This is because "FOIA establishes a right of access to existing agency records only," *Ctr. for Investigative Reporting* v. *U.S. Dep't of Justice*, 14 F.4th 916, 937 (9th Cir. 2021), and to constitute "agency records," documents must have been (i) "create[d] or obtain[ed]" by an agency, and (ii) "in [the] control" of the agency "at the time the FOIA request [was] made." *Tax Analysts*, 492 U.S. at 144-45.  An agency "controls" a document when "the material[] [came] into the agency's

-17-

possession in the legitimate conduct of its official duties" or "in connection with the transaction of public business." *Rojas* v. *Fed. Aviation Admin.*, 941 F.3d 392, 408 (9th Cir. 2019) (quoting *Tax Analysts*, 492 U.S. at 145). Among the factors that courts consider to determine whether records are in the "control" of an agency are (i) "any reliance on the documents by agency employees," *id.* at 409, (ii) the agency's "system for preserving, retrieving, or disposing of the documents," *id.*, and (iii) "the ability of the agency to use and dispose of the record[s] as it sees fit," *Judicial Watch, Inc.* v. *U.S. Secret Serv.*, 726 F.3d 208, 218 (D.C. Cir. 2013) (quoting *Tax Analysts*, 845 F.2d 1060, 1069 (D.C. Cir. 1988)).

If the Court were to find, contrary to the Revised Report, that DOJ did not "obtain[] the requested materials in the legitimate conduct of its official duties – i.e., the grand jury investigation" (Revised Report at 10), then DOJ did not have sufficient control of VW's confidential business records to turn them into "agency records." Only if the documents were part of the grand jury investigation could DOJ have obtained those records "in the legitimate conduct of its official duties" or "in connection with the transaction of public business." *Rojas*, 941 F.3d at 408. This is because there is no other "official dut[y]" pursuant to which DOJ could have received these documents. *United States* v. *Merrill*, 685 F.3d 1002, 1013 (11th Cir. 2012) ("The grand jury subpoena power may not be used by the United States Attorney's Office as part of its own investigative process."). It must be one or the other: Either VW's documents were part of the grand jury investigation and are thus protected under Rule 6(e), or they are separate from that investigation and are thus not "agency records" under FOIA. (*See also* VW's Br. on Outstanding Legal Issues Related to Petitions (ECF No. 242), at 14-18.)

Finally, the Special Master ignored Ninth Circuit law in holding that there was "no basis to find that DOJ's control of the records was limited in any way." (Revised Report at 10.) In *Dynavac*, the Ninth Circuit recognized that grand jury-subpoenaed records in its "possession" "remain the property" of the producing

-18-

1  party.  6 F.3d at 1415.  Moreover, Rule 6(e) itself imposes substantial constraints on
2  the government's use of the records: DOJ cannot disclose them, except "as necessary
3  in the conduct of . . . official duties," or as otherwise permitted under the Rule itself.
4  Fed. R. Crim. P. 6(e)(2)-(3); *see also* Sara Sun Beale, *et al.*, *Grand Jury Law and*
5  *Practice* § 5.18 (2d ed. 2018) ("[M]aterials subpoenaed by the grand jury are
6  regarded as being held by the grand jury only temporarily and under a limited
7  authority.").[9]  Thus, to the extent that the Court holds that Rule 6(e) does not apply,
8  DOJ lacks sufficient control over VW's documents for them to be deemed agency
9  records subject to FOIA.

10  **III.  PLAINTIFF'S FOIA REQUEST IMPOSES A SUBSTANTIAL**
11  **BURDEN ON DOJ AND VW.**

12       When a FOIA request "would require an agency to undertake an
13  unreasonably burdensome search, the agency can decline to process the request."
14  *Nat'l Sec. Counselors* v. *Cent. Intelligence Agency*, 969 F.3d 406, 410 (D.C. Cir.
15  2020).  "Among the factors that a court may consider in assessing the claimed burden
16  are the amount of time, expense, and personnel that would be required to complete
17  document searches and production."  *Long* v. *Immigr. & Customs Enf't*, 149 F. Supp.
18  3d 39, 55 (D.D.C. 2015).   Because "the post-search burden matters to the
19  reasonableness of a FOIA request," the "burden of production can be so heavy that
20  the agency need not respond" "[e]ven when [the] request reasonably describes [the
21  requested] documents."  *Ctr. for Immigr. Stud.* v. *U.S. Citizenship & Immigr. Servs.*,
22  628 F. Supp. 3d 266, 272 (D.D.C. 2022).

23       Although the Special Master correctly found that "Plaintiff's FOIA
24  request imposes a burden" on DOJ and VW and referred to technology-assisted
25  translation and representative sampling (Revised Report at 26), the Special Master

26  _____

27  [9]     This is precisely why, contrary to the Revised Report, documents VW
produced have been stored in a special database with access limited to members
28  of the prosecution team and their support staff.  (Anderson Decl. ¶ 4; *see* Revised
Report at 9.)

did not meaningfully address that burden.  In particular, the Revised Report did not address the fact that *even with* technology-assisted translation and sampling DOJ *and* VW would need to conduct a line-by-line, page-by-page review of *each* of the millions of documents (or hundreds of thousands, depending on limitations proposed) to determine whether and to what extent any FOIA exemption applies, including FOIA Exemption 4.[10]  (*See* ECF No. 242 at 18-19.)  Courts have found similarly voluminous reviews to be unreasonably burdensome.  *Vietnam Veterans of Am. Conn. Greater Hartford Ch. 120* v. *U.S. Dep't of Homeland Sec.*, 8 F. Supp. 3d 188, 203-04 (D. Conn. 2014) (explaining that review of 26,000 personnel files at an estimated length of 50 pages each "would take approximately 27 years and cost $571,912 in search fees and $194,985 in duplication fees . . . at a rate of 80 packets per month," and that such a request would "impose[] an unreasonable burden on" the government); *Nat'l Day Laborer Org. Network* v. *U.S. Immigr. & Customs Enf't*, 2017 WL 1494513, at *15 (S.D.N.Y. Apr. 19, 2017) ("[T]he total volume of pages could range from about 436,000 to 1.3 million pages[, and] . . . searching for and producing [the requested documents] would be unreasonably burdensome.").[11]  A similar finding is warranted here.

---

[10]     Exemption 4 covers "trade secrets and commercial or financial information obtained from a person [that is] privileged or confidential."  5 U.S.C. § 552(b)(4).  The Second Amended Order provides that VW may object to the disclosure of any records that DOJ determines that it may be required to disclose and that contain VW's confidential commercial information.  (ECF No. 204-1 at 2, 4, 6; 28 C.F.R. § 16.7)  VW's Exemption 4 review of approximately 450 pages of documents listed in DOJ's initial *Vaughn* index required approximately 80 attorney hours to complete.  (ECF No. 242 at 19.)  A similar level of review of 1 million pages of tagged documents (approximating the 720,000 to 1.3 million tagged documents to which Plaintiff purports to limit his request (Pl.'s Reply Br. (ECF No. 246), at 9)) could require VW to spend tens of thousands of attorney hours.

[11]     *See also Ayuda, Inc.* v. *Fed. Trade Comm'n*, 70 F. Supp. 3d 247, 275-76 (D.D.C. 2014) (estimated 8,000 hours of manual redaction deemed unreasonably burdensome); *Int'l Counsel Bureau* v. *U.S. Dep't of Defense*, 723 F. Supp. 2d 54,

**CONCLUSION**

For the foregoing reasons, VW respectfully requests that this Court reject the Revised Report's recommendations and enter an order granting the Petitions and affirming that DOJ should not disclose further information about documents obtained from VW pursuant to a grand jury subpoena in the Eastern District of Michigan under Federal Rule of Criminal Procedure 6(e) and FOIA Exemption 3.

Dated:  December 19, 2023                    Respectfully submitted,

                                             /s/  *Andrew J. Finn*
                                             Robert J. Giuffra, Jr. (*pro hac vice*)
                                             giuffrar@sullcrom.com
                                             Suhana S. Han (*pro hac vice*)
                                             hans@sullcrom.com
                                             Andrew J. Finn (*pro hac vice*)
                                             finna@sullcrom.com
                                             SULLIVAN & CROMWELL LLP
                                             125 Broad Street
                                             New York, New York  10004
                                             Telephone:  (212) 558-4000
                                             Facsimile:  (212) 558-3588

                                             Michael H. Steinberg (CSB No. 134179)
                                             steinbergm@sullcrom.com
                                             SULLIVAN & CROMWELL LLP
                                             1888 Century Park East, Suite 2100
                                             Los Angeles, California  90067
                                             Telephone:  (310) 712-6600
                                             Facsimile:  (310) 712-8800

                                             *Attorneys for Volkswagen AG*

---

69 (D.D.C. 2010) ("[E]nlisting a full-time staff of twelve for a year to review hundreds of thousands of unsorted images would impose . . . an undue burden.").

-21-

## <u>LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Volkswagen AG, certifies that this brief contains 6,999 words, which complies with the word limit of L.R. 11-6.1.

Dated: December 19, 2023

/s/ *Andrew J. Finn*
Andrew J. Finn

-22-